

**Phillips Lytle LLP**

Hon. Kenneth M. Karas  March 10, 2023
United States District Court
for the Southern District of New York
The Hon. Charles L. Brieant Jr. Federal Building
and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:   *Lane, et al. v. James, et al.,* Case No.: 7:22-cv-10989 (Karas, J.)

Dear Judge Karas:

    We represent Plaintiffs J. Mark Lane and James Sears in this action. This letter serves two purposes: (1) pages 2-4 respond to the pre-motion to dismiss letters filed by Defendants on March 3, 2023, Dkts. 20, 21; and (2) pages 5-6 outline Plaintiffs' intended cross-motion for summary judgment. We respectfully request a pre-motion conference at the Court's convenience.

    Plaintiffs bring this action under the Second and Fourteenth Amendments of the United States Constitution, to permanently enjoin enforcement of New York State's ban on certain common firearms (the "Firearms Ban"). The Firearms Ban prevents Plaintiffs from acquiring the modern rifles they wish to possess, which are of the type owned by millions of law-abiding, peaceable citizens throughout the nation for self-defense and other lawful purposes. The Firearms Ban makes it a crime to acquire, purchase, receive, transport, possess, or use many common semiautomatic firearms—misleadingly defined by the statute as "assault weapons"—with modern features including detachable magazines, pistol grips, folding stocks, and muzzle devices. N.Y. Penal Law §§ 265.00(22)(a)-(f); 265.02(7), 265.10, 70.02.

    Defendants intend to seek Rule 12(b)(1) dismissal on the grounds that (1) Plaintiffs have purportedly suffered no injury to a legally protectable interest, Dkt. 20, at 1-2; Dkt. 21, at 2; (2) Defendants DA Rocah and AG James did not cause Plaintiffs'

ATTORNEYS AT LAW
─────────
NICOLAS J. ROTSKO   PARTNER   DIRECT 716 847 5467   NROTSKO@PHILLIPSLYTLE.COM
─────────
ONE CANALSIDE 125 MAIN STREET BUFFALO, NEW YORK 14203-2887 PHONE (716) 847-8400 FAX (716) 852-6100 | PHILLIPSLYTLE.COM
NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | CHICAGO, IL | WASHINGTON, DC | CANADA: WATERLOO REGION



Hon. Kenneth M. Karas                                                              March 10, 2023
Page 2

injury, Dkt. 20, at 2-3; Dkt. 21, at 3; and (3) AG James is not a proper party to this lawsuit, Dkt. 21, at 3.  Plaintiffs are not inclined to amend their complaint in response to the first two grounds.  Plaintiffs, however, are willing to drop AG James from the lawsuit.  We propose discussing at the pre-motion conference whether it is preferable to amend the complaint to remove AG James, or simply not oppose her motion to dismiss.

1. **Plaintiffs have and continue to suffer concrete, intangible constitutional injury because the Firearms Ban prohibits them from exercising their Second Amendment right to keep and bear commonly used firearms.**

Both Mark Lane and James Sears allege that New York's Firearms Ban prevents them from exercising their fundamental individual right to keep and bear commonly used firearms.  Compl. ¶¶ 3, 39–40.  Mr. Lane "intend[ed] and desire[d] . . . to keep and bear a so-called 'assault weapon.'"  *Id.* ¶ 39.  His intent has not changed: "Lane would purchase [a Springfield Armory Saint] *now*."  *Id.* (emphasis added).  Mr. Lane further alleges that he is "a resident of Westchester County . . . over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess firearms." *Id.*  Similarly, Mr. Sears also intended and intends to keep and bear an "assault weapon."  *Id.* ¶ 40.  He "would purchase [an LMT MARS-L rifle] *now*."  *Id.* (emphasis added).  As with Mr. Lane, Mr. Sears is "a resident of Westchester County . . . over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess firearms."  *Id.*

Thus, Messrs. Lane and Sears plausibly allege facts that show: 1) they have chosen specific rifles to purchase, which are of a type commonly owned throughout the nation, 2) they would purchase those common modern rifles, and would have done so already, if not for the Firearms Ban, 3) they are residents of the state and Westchester County, subject to the state's laws, and can neither purchase nor "keep" these common modern rifles due to the Firearms Ban, and 4) their intent to purchase and keep these modern rifles is unflagging.  *Id.* ¶¶ 3, 39–40.  At the pleading stage, a plaintiff need only "clearly . . . allege facts demonstrating" each element of standing.  *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.").

Because the Second Amendment guarantees an individual right to keep and bear the common rifles at issue here, the fact that Plaintiffs cannot exercise that constitutional



Hon. Kenneth M. Karas                                                                                       March 10, 2023
Page 3

right because of the Firearms Ban is a concrete injury sufficient for standing. *E.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (intangible injury to constitutional rights sufficient for standing); *N.Y. Youth Club v. Town of Harrison*, 150 F. Supp. 3d 264, 277 (S.D.N.Y. 2015) ("It is well-established that impairment of rights guaranteed by the Constitution is an injury sufficient to confer standing."); *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011) (finding the "injuries easily support Article III standing" for the plaintiffs' claim that Chicago's gun law "interferes with [plaintiffs'] right to possess firearms for self-defense").

Defendants contend that Messrs. Lane and Sears do not have legally protected interests in owning "assault weapons," because "they have not alleged that they currently hold or have applied for [semi-automatic rifle] licenses." Dkt. 20, at 2; Dkt. 21, at 2. This is incorrect for at least two reasons. First, by its own terms, New York's recently enacted semi-automatic rifle licensing scheme expressly does not apply to so-called "assault weapons," *i.e.*, the modern rifles Plaintiffs intend to acquire:

> A license for a semiautomatic rifle, **other than an assault weapon** or disguised gun, shall be issued to purchase or take possession of such a semiautomatic rifle when such transfer of ownership occurs on or after the effective date of chapter two hundred twelve of the laws of two thousand twenty-two that amended this subdivision.

Penal Law § 400.00(2) (emphasis added). The licensing scheme on which Defendants hang their standing argument does not even apply to the rifles at issue in this case.

Second, it is clearly the Firearms Ban that blocks Plaintiffs from acquiring these rifles, not the licensing scheme. By its own terms, the licensing scheme is a "shall issue" regime, *id.*, and there is no reason why it would pose an impediment to the Plaintiffs acquiring these rifles. Further, even if a semi-automatic rifle license were required, Plaintiffs need not obtain that permit first to have standing to challenge the "absolute barrier" created by the Firearms Ban. *E.g.*, *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977) (sufficient standing to challenge "absolute barrier" to party's objectives, even where other permits might be required); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016) (plaintiff "need not show with absolute certainty that a project will succeed in order to establish standing").



Hon. Kenneth M. Karas  March 10, 2023
Page 4

    Defendants also contend that Plaintiffs' intentions are too remote or speculative, and therefore constitute "some-day intentions" insufficient for standing. Dkt. 20, at 2; Dkt. 21, at 2. Plaintiffs made clear, however, that they would have already bought specifically identified rifles but for the Firearms Ban, and "would immediately acquire, purchase or receive, and lawfully use" these firearms "were it not for Defendants' enforcement of" the Firearms Ban. Compl. ¶¶ 39–40. This is not speculative. Plaintiffs' intentions are yesterday, today, and tomorrow intentions, and certainly cannot "be equated with the speculative 'some-day intentions' to visit endangered species halfway around the world that [the Supreme Court] held insufficient to show injury in fact in *Defenders of Wildlife*." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000).

    Defendants further contend that Plaintiffs have failed to allege a credible threat of prosecution. As an initial matter, Plaintiffs have alleged that "[d]efendants have . . . enforced a flat prohibition on . . . assault weapons." Compl. ¶ 2. Both plaintiffs have alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [where] there exists a credible threat of prosecution or enforcement thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014). Defendants have not disavowed enforcement of the Firearms Ban, nor has it become moribund; accordingly, Plaintiffs' pre-enforcement challenge must be weighed in light of the present factual circumstances (*i.e.*, that they live within Defendants' jurisdiction of enforcement). That Plaintiffs need not expose themselves to criminal sanction to establish standing is well-settled. *E.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

    Finally, Defendants claim that any injury caused by the Firearms Ban is not fairly traceable to their conduct, because they were not involved in enacting the Firearms Ban. Dkt. 20, at 2-3; Dkt. 21, at 3. It is unquestionable, however, that Defendants Nigrelli and Rocah are responsible for enforcing the Firearms Ban in the jurisdiction relevant here, and are therefore proper defendants. *E.g.*, *Hardaway v. Nigrelli*, 2022 WL 16646220, at *1 (W.D.N.Y. Nov. 3, 2022) (Nigrelli and County DAs enjoined from enforcing firearms restriction); *Christian v. Nigrelli*, 2022 WL 17100631, at *4 (W.D.N.Y. Nov. 22, 2022) (same); *see also Antonyuk v. Hochul*, 2022 WL 16744700, at *14 (N.D.N.Y. Nov. 7, 2022).



Hon. Kenneth M. Karas  March 10, 2023
Page 5

### 2. Plaintiffs are entitled to summary judgment because it is unconstitutional to ban firearms commonly used for lawful purposes.

This case turns on pure questions of law well-suited for summary judgment. Binding Supreme Court precedent, including the recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), makes clear that the Firearms Ban is unconstitutional. Previously, the Second Circuit upheld the Firearms Ban under intermediate scrutiny. *New York State Rifle & Pistol Ass'n, Inc. ("NYSRPA") v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015). That holding is no longer binding, however, because in *Bruen* the Supreme Court expressly rejected intermediate scrutiny in Second Amendment challenges. *Bruen*, 142 S. Ct. at 2127.

Instead, *Bruen* confirmed the proper test: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126. Here, Plaintiffs are "two ordinary, law-abiding, adult citizens[,]" and are therefore undisputably "part of 'the people' whom the Second Amendment protects." *Id.* at 2134 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). The modern rifles prohibited by the Firearms Ban are "Arms" within the meaning of the Second Amendment's plain text, which "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. The Constitution therefore presumptively protects Plaintiffs' acquisition, possession, and use of the firearms at issue here.

The burden thus shifts to Defendants to justify the "regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. Defendants cannot meet that burden. The Supreme Court has already identified the relevant historical tradition for "the sorts of weapons" that can be banned: "dangerous *and* unusual weapons." *Heller*, 554 U.S. at 627 (emphasis added). "[T]he Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627). The "dangerous and unusual weapons" test is "a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring). It is thus inconsistent with our nation's history and traditions to ban firearms commonly used for lawful purposes. *Bruen*, 142 S. Ct. at 2143.

Whether a firearm is "unusual," or common, depends on the practices of the American people nationwide, not just in a particular state. *E.g.*, *id.* at 2131 ("It is this



Hon. Kenneth M. Karas  
Page 6
March 10, 2023

balance—struck by the traditions *of the American people*—that demands our unqualified deference.") (emphasis added). The government may not second-guess why citizens choose certain firearms. For instance, although *Heller* identified several "reasons that a citizen may prefer a handgun," the Court held that "*[w]hatever the reason*, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." 554 U.S. at 629 (emphasis added).

Modern rifles are likewise extremely popular nationwide. Indeed, the Second Circuit recognized that the Firearms Ban prohibits guns that are in common use. *NYSRPA*, 804 F.3d at 255, *abrogated on other grounds by Bruen*, 142 S. Ct. at 2127 ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *see also Heller v. D.C.*, 670 F.3d 1244, 1261 (D.C. Cir. 2011). A 2022 survey showed that 24.6 million Americans have owned AR-15s, or similar modern rifles, for lawful purposes such as target shooting, self-defense, and hunting. Compl. ¶¶ 19-20, 23, 30. These common firearms are lawful in the vast majority of states. Compl. ¶ 35.

Since commonly owned firearms cannot be banned consistent with this nation's history and traditions, the Firearms Ban is unconstitutional. Injury to Plaintiffs' Second Amendment rights is irreparable, and Defendants have no legitimate interest in enforcing an unconstitutional law, so the remaining factors for a permanent injunction favor Plaintiffs. Plaintiffs respectfully request that the Court grant summary judgment and permanently enjoin enforcement of the Firearms Ban.

We look forward to discussing these issues at the pre-motion conference.

Respectfully submitted,

Phillips Lytle LLP

By *[signature]*

Nicolas J. Rotsko

Enclosure/

cc: Counsel of record (via CMECF)