UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                          :

J. MARK LANE and JAMES SEARS,       :
                                          :

                   Plaintiffs,     :
                                          :

           - against -         :
                                          :    Case No. 22 Civ. 10989 (KMK)

STEVEN A. NIGRELLI, in his official capacity   :
as Acting Superintendent of the New York State   :
Police, and MIRIAM E. ROCAH, in her official   :     **ORAL ARGUMENT REQUESTED**
capacity as District Attorney for the County of   :
Westchester, New York,                    :
                                          :

                   Defendants.    :
---------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF SUPERINTENDENT NIGRELLI'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

LETITIA JAMES
Attorney General
State of New York
*Attorney for Superintendent Nigrelli*
28 Liberty Street
New York, New York 10005
(212) 416-6295

Suzanna Publicker Mettham
Brenda Cooke
James M. Thompson
Yuval Rubinstein
Assistant Attorneys General
     *Of Counsel*

Dated:  May 4, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

A.   Overview of New York's Assault Weapons Ban................................................ 2

B.   Plaintiffs' Allegations ....................................................................................... 3

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT ............................................................................................................... 6

I.     PLAINTIFFS LACK STANDING BECAUSE THEY ARE NOT LICENSED TO
       CARRY ANY FIREARM IN NEW YORK STATE ........................................ 7

       A.     Plaintiffs Have No Injury Traceable to the Assault Weapons Ban or Redressable
              by a Favorable Decision.......................................................................... 7

       B.     Plaintiffs' Proposed Interpretation of Penal Law § 400.00(2), Where Licenses
              Would Be Required for Unmodified Semiautomatic Rifles but Not
              Assault Weapons, Is Absurd and Contrary to Law ................................ 10

II.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CREDIBLE AND
       PARTICULARIZED THREAT OF CRIMINAL PROSECUTION ............... 16

III.   PLAINTIFFS' CLAIMS ARE CONSTITUTIONALLY AND PRUDENTIALLY
       UNRIPE ......................................................................................................... 19

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Adam v. Barr*,
   792 F. App'x 20 (2d Cir. 2019) ...............................................................16, 17, 19

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)...............................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................5

*Azim v. N.Y. City Taxi & Limo. Comm'n*,
   No. 11 Civ. 2921, 2012 WL 399934 (S.D.N.Y. Feb. 6, 2012),
   *aff'd*, 530 F. App'x. 44 (2d Cir. 2013).............................................................9

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979)........................................................................................19

*Barnett, et al. v. Raoul, et al.*,
   No. 23 Civ. 209, 2023 WL 3160285 (S.D. Ill. Apr. 28. 2023) ........................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................5, 6

*Bellochio v. Garland*,
   614 F.Supp.3d 11 (S.D.N.Y. 2022)..............................................................17, 19

*Bevis v. City of Naperville, Illinois*,
   ___ F.Supp.3d ___, No. 22 Civ. 4775,
   2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ...................................................9

*Brokamp v. James*,
   ___ F. 4th ___, 2023 WL 3102704 (2d Cir. Apr. 27, 2023) ..............................7

*Carney v. Adams*,
   141 S.Ct. 493 (2020).........................................................................................1

*Carter v. HealthPort Techs, LLC*,
   822 F.3d 47 (2d Cir. 2016)...............................................................................5

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)......................................................................................6, 10

*Comm'r of Internal Revenue v. Engle*,
   464 U.S. 206 (1984)........................................................................................12

*Cuthill v. Blinken*,
   990 F.3d 272 (2d Cir. 2021)...........................................................................15

*Dada v. Mukasey*,
   554 U.S. 1 (2008)...........................................................................................12

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
   ___ F.Supp.3d ___, Civ. Action No. 22-951-RGA,
   2023 WL 2655150 (D. Del. Mar. 27, 2023) ...................................................9

*Does 1-10 v. Suffolk Cnty., N.Y.*,
   No. 21-1658, 2022 WL 2678876 (2d Cir. July 12, 2022).............................17

*Frey v. Nigrelli*,
   No. 21 Civ 5334, 2023 WL 2473375 (S.D.N.Y. Mar. 13, 2023) ...............7, 13

*Frontseat, LLC v. Stern, Tr. of Estate of 150 Fulton Prop., Inc.*,
   No. 18 Civ. 2208, 2020 WL 1933442 (E.D.N.Y. May 31, 2020)...................14

*Giambalvo v. Suffolk Cnty.*,
   No. 22 Civ. 4778, 2023 WL 2050803 (E.D.N.Y. Feb. 14, 2023)...............7 , 17

*Global Network Commc'ns, Inc. v. City of N.Y.*,
   562 F.3d 145 (2d Cir. 2009)............................................................................9

*Grajales v. Comm'r of Internal Revenue*,
   47 F.4th 58 (2d Cir. 2022) .........................................................................11, 12

*Griffin v. Oceanic Contractors, Inc.*,
   457 U.S. 564 (1982).......................................................................................15

*Herrera v. Raoul*,
   No. 23 Civ. 532, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) ......................9

*Jingrong v. Chinese Anti-Cult World Alliance Inc.*,
   16 F. 4th 47 (2d Cir. 2021) ............................................................................14

*Klein v. Lakeview Fire Dist.*,
   No. 21 Civ. 1468, 2022 WL 4468294 (E.D.N.Y. Sept. 26, 2022)..................8

*Kokoszka v. Belford*,
   417 U.S. 642 (1974).......................................................................................12

*Libertarian Party of Erie Cnty. v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020)............................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................6, 8

*Makarova v. United States*,
　　201 F.3d 110 (2d Cir. 2000)........................................................................5

*Marotte v. City of N.Y.*,
　　No. 16 Civ. 8953, 2019 WL 1533304 (S.D.N.Y. Feb. 7, 2019) ......................9

*McConnell v. FEC*,
　　540 U.S. 93 (2003)........................................................................................8

*McNeill v. United States*,
　　563 U.S. 816 (2011)....................................................................................15

*N.Y. Civil Liberties Union v. Grandeau*,
　　528 F.3d 122 (2d Cir. 2008)........................................................................19

*N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen*,
　　142 S.Ct. 2111 (2022)........................................................................ passim

*N.Y.S. Rifle & Pistol Ass'n, Inc. v. Cuomo*,
　　804 F.3d 242 (2d Cir. 2015)................................................................ passim

*Nat'l Org. for Marriage, Inc. v. Walsh*,
　　714 F.3d 682 (2d Cir. 2013).................................................................19, 20

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
　　538 U.S. 803 (2003)....................................................................................19

*Nat'l Rifle Ass'n of Am. v. Magaw*,
　　132 F.3d 272 (6th Cir. 1997) ......................................................................18

*Otrompke v. First Dep't Cmte. on Character & Fitness*,
　　No. 20-4107, 2021 WL 5764221 (2d Cir. Dec. 6, 2021).............................10

*People v. Bocanegra*,
　　___Cal.Rptr.3d___, No. 095234,
　　2023 WL 3142421 (Cal. Ct. App. Apr. 28, 2023) ........................................9

*Peralta-Taveras v. Att'y Gen.*,
　　488 F.3d 580 (2d Cir. 2007)........................................................................11

*Prevatt v. City of Gainesville*,
　　657 F. App'x. 905 (11th Cir. 2016) ..............................................................8

*Puello v. Bureau of Citizenship & Immig. Servs.*,
　　511 F.3d 324 (2d Cir. 2007)........................................................................14

*San Diego Cnty. Gun Rights Comm. v. Reno*,
　　98 F.3d 1121 (9th Cir. 1996) ......................................................................18

iv

*Selevan v. N.Y. Thruway Auth.*,
    584 F.3d 82 (2d Cir. 2009)........................................................................................5

*Sibley v. Watches*,
    501 F.Supp.3d 210 (W.D.N.Y. 2020) ...........................................................17, 19

*Spokeo Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................6, 8

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998) ........................................................................................6, 9, 15

*Thomas v. Morley*,
    No. 20 Civ. 7520, 2022 WL 394384 (S.D.N.Y. Feb. 9, 2022) ...............................8

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ..............................................................................................20

*United States v. Messina*,
    806 F.3d 55 (2d Cir. 2015)....................................................................................15

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................6

*Younger v. Harris*,
    401 U.S. 37 (1971)................................................................................................19

**FEDERAL STATUTES**

18 U.S.C. § 922 ............................................................................................................18

42 U.S.C. § 1983 ............................................................................................................1

**STATE STATUTES**

2000 N.Y. Laws ch. 189 (S. 8234, A. 11535)........................................................11, 12

N.Y. Penal Law
    § 70.02...............................................................................................................1, 19
    § 265....................................................................................................................13
    § 265.00(21)............................................................................................................2
    § 265.00(22) .................................................................................................. passim
    § 265.01.......................................................................................................7, 17, 18
    § 265.02 .......................................................................................................... passim
    § 265.03..............................................................................................................7, 17
    § 265.04..............................................................................................................7, 13

§ 265.10.................................................................................................................1, 19
§ 265.20(a)...............................................................................................................7, 13
§ 265.65...............................................................................................................9, 12, 13
§ 400.00................................................................................................................ passim
§ 400.00(1)...............................................................................................................11
§ 400.00(2)............................................................................................................ passim
§ 400.00(5).................................................................................................................5
§ 400.00(9).................................................................................................................5
§ 400.00(15)...............................................................................................................13
§ 400.00(17)...............................................................................................................13

## RULES

Fed. R. Evid. 201(b)....................................................................................................5, 7

Federal Rules of Civil Procedure
   Rule 8........................................................................................................................5
   Rule 12(b)(1).........................................................................................................1, 5
   Rule 12(b)(6).............................................................................................................5
   Rule 41(a)(1)(A)(ii) ...................................................................................................1

## MISCELLANEOUS AUTHORITIES

Press Release, *Governor Hochul Signs Landmark Legislative Package to
   Strengthen Gun Laws n& Protect New Yorkers*, June 6, 2022, available at
   https://on.ny.gov/410h4Jb...............................................................................7, 8

S9458 Sponsor Memo, available at
   https://www.nysenate.gov/legislation/bills/2021/S9458.......................................14

Defendant Steven A. Nigrelli, Acting Superintendent of the New York State Police ("Superintendent Nigrelli"), by his attorney, Letitia James, Attorney General of the State of New York,[1] respectfully submits this memorandum of law, along with the declaration of New York State Police ("NYSP") Deputy Counsel Michael W. Deyo, dated May 3, 2023, ("Deyo Decl."), in support of his motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs J. Mark Lane and James Sears ("Plaintiffs") claim that they wish to purchase "AR-15 style" semiautomatic rifles—used in a spate of mass shootings throughout the country, including last year's mass shooting at a supermarket in Buffalo—but are precluded from doing so by New York Law. Specifically, Plaintiffs bring a facial Second Amendment challenge to the State of New York's prohibition of semiautomatic rifles outfitted with detachable magazines and accessories, such as telescoping stocks and pistol grips. *See* N.Y. Penal Law §§ 265.00(22)(a)–(f), 265.02(7), 265.10, and 70.02. Although the Second Circuit upheld the constitutionality of these provisions in *N.Y.S. Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), Plaintiffs maintain that the Supreme Court's recent decision in *N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), now entitles them to sweeping declaratory and injunctive relief under 42 U.S.C. § 1983.

Plaintiffs, however, fail to establish that the Court has jurisdiction to address their claims, as "[t]his case begins and ends with standing." *Carney v. Adams*, 141 S.Ct. 493, 498 (2020). The sparse allegations in the Complaint fall well short of plausibly alleging Article III standing for

---

[1] Attorney General Letitia James was voluntarily dismissed as a defendant pursuant to Rule 41(a)(1)(A)(ii). ECF No. 35.

several reasons. First, Plaintiffs do not allege that they hold the license required to purchase a semiautomatic rifle, and thus fail to establish that any alleged injury-in-fact is traceable to the assault weapons ban or can be redressed by a favorable decision. Second, Plaintiffs fail to plausibly allege a credible and particularized threat of criminal prosecution. Third, Plaintiffs' claims are unripe. Because of these threshold standing deficiencies, the Court should dismiss the Complaint.

## **BACKGROUND**

### A.      **Overview of New York's Assault Weapons Ban**

New York State has long prohibited assault weapons, a limited subset of semiautomatic firearms that have specifically enumerated features designed to make the weapon particularly lethal and suitable for military use. In order to meet the statutory definition of an "assault weapon" under § 265.00(22) of the New York State Penal Law, a rifle[2] must have each of three characteristics. First the rifle must be semiautomatic, meaning a "repeating" weapon "which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge or spent shell and chamber the next round," allowing for the weapon to fire a bullet each time the trigger is pulled without the shooter needing to take any additional action. *See* N.Y. Penal Law §§ 265.00(21), (22)(a). Second, the assault rifle must have "an ability to accept a detachable magazine," allowing for reloading within seconds. *See* N.Y. Penal Law § 265.00(22)(a). And third, the assault rifle must have one or more one or more "enumerated military-style features," *Cuomo*, 804 F.3d at 262, namely (i) "a folding or telescoping stock;" (ii) "a pistol grip that protrudes conspicuously beneath the action of the weapon;" (iii) "a thumbhole stock;" (iv) "a second

---

[2] The statutory definition of an assault weapon can also include "a semiautomatic shotgun" or "a semiautomatic pistol" with such features. *See* N.Y. Penal Law §§ 265.00(22)(b)–(c). However, the Complaint alleges only that each Plaintiff wishes to purchase "an AR-15 style rifle" with the prohibited characteristics, *see* Compl. ¶¶ 39–40, and this memorandum of law accordingly focuses its discussion on assault rifles, the most prevalent and most deadly variety of assault weapon.

handgrip . . . that can be held by the non-trigger hand;" (v) "a bayonet mount;" (vi) "a flash suppressor, muzzle break, [or] muzzle compensator;" or a "threaded barrel designed to accommodate those features," or (vii) "a grenade launcher." N.Y. Penal Law § 265.00(22)(a). Only if all three criteria are met—semiautomatic fire, ability to accept a detachable magazine, and one or more military-style features—will a rifle meet the statutory definition of an assault weapon.

As the Court of Appeals for the Second Circuit has previously found, "the dangers posed by some of the military-style features prohibited by the statute[] . . . are manifest and incontrovertible." *Cuomo*, 804 F.3d at 262. "[T]he net effect of these military combat features is a capacity for lethality—more wounds, more serious, in more victims—far beyond that of other firearms in general, including other semiautomatic guns." *Id.* (quotation omitted). "These weapons are disproportionately used in crime, and particularly in criminal mass shootings." *Id.* And assault weapons "are also disproportionately used to kill law enforcement officers." *Cuomo*, 804 F.3d at 262 (citing to a study indicating that "assault weapons were used to gun down at least twenty percent of all officers killed in the line of duty").

### B.    Plaintiffs' Allegations

Plaintiffs J. Mark Lane and James Sears are both residents of Westchester County. *See* Def. Ex. A, Complaint ("Compl.") ¶¶ 8–9 ECF No. 1.[3] Plaintiffs allege that what they describe as "common semiautomatic firearms"—namely, certain permutations of the AR-15—are in common use based upon purported survey data of gun owners. *Id.* at ¶¶ 17–20. Plaintiffs also allege that assault weapons, as well as the statutory "specific features" such as flash suppressors, folding and telescoping stocks, pistols grips, and detachable magazines, are used for self-defense in the home.

---

[3] The plausible and non-conclusory factual allegations of Plaintiffs' Complaint are accepted as true only for purposes of this motion. The Superintendent does not admit the truth of Plaintiffs' allegations.

*Id.* at ¶¶ 21–29. Plaintiffs claim that assault weapons are also used for "[o]ther common, lawful uses" such as hunting and sport. *Id.* at ¶¶ 30–32.

Plaintiffs both allege that they "intend[] and desire [] to exercise [their] rights to keep and bear a so-called 'assault weapon,' for lawful purposes, especially home defense and target shooting. Compl. ¶¶ 39–40. Lane alleges that "if allowed," he would purchase a Springfield Armory Saint rifle, while Sears would purchase an LMT MARS-L 5.56 rifle. *Id.* Both rifles are "AR-15 style rifle[s] capable of accepting a detachable magazine, with a telescoping stock, pistol grip, and muzzle device." *Id.* Plaintiffs also allege that they "would immediately acquire, purchase or receive, and lawfully use" these assault weapons "were it not for Defendants' enforcement of New York's Semiautomatic Firearm Ban."[4] *Id.* Plaintiffs claim that "[i]n light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine and imprisonment," they both "continue[] to refrain from acquiring, possessing, and lawfully using" the semiautomatic rifles for "self-defense and other lawful purposes. *Id.*

However, the Complaint alleges no specific threats of prosecution made by the New York State Police. And Plaintiffs' alleged injury is neither traceable to the statute they challenge nor redressable by victory in the litigation. The database maintained by the NYSP shows that neither Plaintiff has been issued a license to possess a semiautomatic rifle, meaning that there is a separate

---

[4] Plaintiffs' Complaint frequently conflates the terms "semiautomatic rifle" or "semiautomatic firearm," with the statutorily defined term "assault weapon," and repeatedly refers to what they describe as "New York's Semiautomatic Firearm Ban." *See, e.g.*, Compl. ¶¶ 23, 34, 35, 37, 38, 39, 40, 47, 50, 52, 55, 63, 65 (all implying a ban on semiautomatic firearms in general, rather than assault weapons in specific). Plaintiffs' language is deliberately misleading, as New York only prohibits semiautomatic firearms that meet the two additional modifications enumerated in Penal Law § 265.00(22)—the ability to accept a detachable magazine and the presence of military-style features. Semiautomatic firearms without both of these modifications, including AR-15s, are both legal and broadly available to license holders in New York.

and complete barrier to Plaintiffs' lawful ownership of an assault rifle. *See* Deyo Decl. ¶¶ 2–4.[5]

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) requires that a complaint be dismissed where the court lacks subject matter jurisdiction. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In addition, the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is applicable to motions to dismiss for lack of standing under Rule 12(b)(1). *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("to survive [a] Rule 12(b)(1) motion to dismiss, [plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue") (citing *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).

Accordingly, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–57). The pleading requirements under Rule 8 of the Federal Rules of Civil Procedure "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Nor

---

[5] The Deyo Declaration is offered for the limited purpose of describing the lack of any records for either Plaintiff in the NYSP's licensing database, which is subject to judicial notice because it is a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *cf.* N.Y. Penal Law §§ 400.00(5), (9) (all successful license applications and amendments must be filed with the NYSP). Even if the NYSP's licensing database were not subject to judicial notice, the lack of any records for either Plaintiff could still be considered in the context of this motion to dismiss because the motion is brought under Federal Rule of Civil Procedure 12(b)(1), rather than Rule 12(b)(6). *See Carter v. HealthPort Techs, LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where a Plaintiff has failed to "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## ARGUMENT

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The "irreducible constitutional minimum" of standing requires a plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 568 U.S. at 338.

As demonstrated below, Plaintiffs have failed to plausibly allege in the Complaint that they suffered an injury-in-fact, the "'[f]irst and foremost' of standing's three elements." *Id.* at 338–39 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). Nor have Plaintiffs demonstrated causation in the form of a "fairly traceable" connection between the claimed injury-in-fact and the alleged actions of defendant Superintendent Nigrelli, and redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.

## I.   PLAINTIFFS LACK STANDING BECAUSE THEY ARE NOT LICENSED TO CARRY ANY FIREARM IN NEW YORK STATE

### A.   Plaintiffs Have No Injury Traceable to the Assault Weapons Ban or Redressable by a Favorable Decision

The Complaint fails as a matter of law because neither of the two named Plaintiffs holds a valid firearms license, making them ineligible to carry a weapon in New York State whether or not the ban on assault weapons is upheld.[6] "New York maintains a general prohibition on the possession of firearms without a license." *Frey v. Nigrelli*, No. 21 Civ. 5334, 2023 WL 2473375, at *1 (S.D.N.Y. Mar. 13, 2023) (citing N.Y. Penal Law §§ 265.01–04; 265.20(a)(3)). Such a license is required to "purchase or take possession of [] a semiautomatic rifle," N.Y. Penal Law § 400.00(2), as Plaintiffs allege they wish to do, and an assault weapon is by definition "a semiautomatic rifle." *See* N.Y. Penal Law § 265.00(22)(a); Compl. ¶¶ 39–40. The semiautomatic rifle licensing requirement was adopted for good reason, after a man legally purchased an AR-15 from a New York gun shop, modified it to accept a detachable magazine in violation of the assault weapons ban, and used it in the racially motivated murder of ten people at a Buffalo supermarket.[7]

---

[6] Notably, Plaintiffs do not challenge the constitutionality of the licensing requirement. Nor could they, as it is "beyond dispute" that "certain state [] licensing regimes are constitutionally permissible." *Giambalvo v. Suffolk Cnty.*, No. 22 Civ. 4778, 2023 WL 2050803, at *4 (E.D.N.Y. Feb. 14, 2023); *accord Bruen*, 142 S.Ct. at 2138 n.9 ("To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . licensing regimes under which a general desire for self-defense is sufficient to obtain a permit." (cleaned up)). The fact that the Plaintiffs are not challenging the licensing requirement, but rather a completely unrelated law, also makes the Second Circuit's recent decision in *Brokamp v. James*, ___ F. 4th ___, 2023 WL 3102704 (2d Cir. Apr. 27, 2023), inapposite, as the plaintiff in *Brokamp* was challenging a licensing requirement directly, rather than another law to which a licensing requirement also applied. *See id.* at *7 ("Brokamp's alleged First Amendment injury does not arise only upon application for or denial of a license. Rather, injury arises from the very fact of a licensure requirement . . ."). Notably, the Circuit construed the plaintiff's standing in *Brokamp* very narrowly, and refused to extend the same analysis to provisions other than the specific licensing requirement that impacted her intended practice of psychology. *See id.* at *8–9.

[7] Federal courts routinely take judicial notice of basic facts regarding notorious mass shootings, as they are "generally known within the trial court's territorial jurisdiction" and "can be accurately

*See generally* Press Release, *Governor Hochul Signs Landmark Legislative Package to Strengthen Gun Laws & Protect New Yorkers*, June 6, 2022, available at https://on.ny.gov/410h4Jb (legislation enacted to "close critical loopholes exposed by shooters in Buffalo and Uvalde").

Plaintiffs' lack of licensure is both plainly apparent and properly before the Court. As an initial matter, the Complaint contains no allegation that any Plaintiff holds a valid semiautomatic rifle license, and it is a plaintiff's burden to plead the required elements of standing. *Spokeo, Inc.*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element.") (quotations and citations omitted). Second, Plaintiffs acknowledged in their March 10, 2023 pre-motion letter that they do not hold semiautomatic rifle licenses, arguing instead that they "need not obtain that permit first." ECF No. 22 at 3.[8] And third, Plaintiffs' lack of licensure is demonstrated by the accompanying Deyo Declaration, confirming that neither of them is listed in the license database maintained by the NYSP.

The fact that Plaintiffs do not have licenses undermines two of the three elements that constitute "the 'irreducible constitutional minimum' of standing"—traceability and redressability. *Spokeo*, 578 U.S. at 338. In order for a plaintiff to be able to challenge the constitutionality of a statute, they must "allege an injury in fact that is 'fairly traceable' to [that statute]." *McConnell v. FEC*, 540 U.S. 93, 228 (2003) (quoting *Lujan*, 504 U.S. at 562). Similarly, standing is only proper where a favorable outcome will address the harm the plaintiff allegedly suffered. "Relief that does

---

and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see, e.g.*, *Klein v. Lakeview Fire Dist.*, No. 21 Civ. 1468, 2022 WL 4468294, at *3 n.1 (E.D.N.Y. Sept. 26, 2022); *see also, e.g.*, *Prevatt v. City of Gainesville*, 657 F. App'x 905, 906 n.3 (11th Cir. 2016).

[8] Federal courts may take notice of a party's pre-motion conference submissions in considering a motion to dismiss. *See, e.g.*, *Thomas v. Morley*, No. 20 Civ. 7520, 2022 WL 394384, at *1 n.2 (S.D.N.Y. Feb. 9, 2022).

not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107.

Even if Plaintiffs were to ultimately convince the Court that there is a constitutional right to possess an assault weapon—a conclusion that would be contrary to that reached by nearly every other post-*Bruen* court to consider the issue[9]—and even if the Court were to issue an order declaring New York's prohibition on assault weapons unconstitutional, neither Plaintiff would be legally able to purchase one. *See* N.Y. Penal Law § 265.65 (Class A misdemeanor to purchase any semiautomatic rifle without a license). Plaintiffs' lack of licensure is therefore a separate and complete bar to the relief they seek. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of N.Y.*, 562 F.3d 145, 152 (2d Cir. 2009) (unlicensed plaintiff lacked standing to challenge provisions that "affect only entities operating under a license"); *accord Marotte v. City of N.Y.*, No. 16 Civ. 8953, 2019 WL 1533304, at *9 (S.D.N.Y. Feb. 7, 2019) (plaintiff could not challenge City's plan to offer Wi-Fi communications hubs as it only affects "entities operating under a franchise agreement, which he does not have, and for which he has never applied."); *see also Azim v. N.Y. City Taxi & Limo. Comm'n*, No. 11 Civ. 2921, 2012 WL 399934, at *2 (S.D.N.Y. Feb. 6, 2012) (plaintiff without a taxi license had no standing to challenge use of GPS data to track taxicabs), *aff'd*, 530 F. App'x 44 (2d Cir. 2013); *cf. Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 121–22 (2d

---

[9] *See, e.g.*, *Bevis v. City of Naperville, Ill.*, ___ F.Supp.3d ___, No. 22 Civ. 4775, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) (denying preliminary injunction and affirming constitutionality of state prohibition on assault weapons and extended magazines), *injunction pending appeal denied*, 2023 WL 3190470 (7th Cir. 2023); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, ___ F.Supp.3d ___, Civ. Action No. 22-951-RGA, 2023 WL 2655150 (D. Del. Mar. 27, 2023) (same); *Herrera v. Raoul*, No. 23 Civ. 532, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023), *appeal filed* (Apr. 26, 2023); *People v. Bocanegra*, ___Cal.Rptr.3d___, No. 095234, 2023 WL 3142421 (Cal. Ct. App. Apr. 28, 2023) (same); *but see Barnett v. Raoul*, No. 23 Civ. 209, 2023 WL 3160285 (S.D. Ill. Apr. 28., 2023) (granting preliminary injunction against the same statute at issue in *Bevis* and *Herrera*), *appeal filed* (May 1, 2023).

Cir. 2020) (no Second Amendment standing for "plaintiffs who were not alleged to have applied for a New York State firearm license"), *abrogated in part on other grounds by Bruen*, 142 S.Ct. at 2127 n.4. Because Plaintiffs' alleged injuries are not fairly traceable to the statutes they challenge, and because even success will not address those injuries, the Complaint must be dismissed for lack of standing.[10]

### B. Plaintiffs' Proposed Interpretation of Penal Law § 400.00(2), Where Licenses Would Be Required for Unmodified Semiautomatic Rifles but Not Assault Weapons, Is Absurd and Contrary to Law

Plaintiffs' pre-motion letter acknowledges that Mr. Lane and Mr. Sears lack semiautomatic rifle licenses, but instead argues that they "need not obtain that permit" because, under their strained and outcome-oriented reading of the Penal Law, New York requires a license to purchase an unmodified semiautomatic rifle, but not an assault rifle. ECF No. 22 at 3. Plaintiffs' position is contradicted by the statute's plain text, by its place in the broader context of the Penal Law, and by the settled rules of statutory construction.

### 1. The Plain Text of the Statute Refutes Plaintiffs' Interpretation

The applicable section of the Penal Law sets up a "shall-issue" licensing system, as required by the Supreme Court's *Bruen* decision, and states that "[a] license for a semiautomatic rifle, other than an assault weapon or disguised gun, shall be issued to purchase or take possession

---

[10] Even if Plaintiffs were, belatedly, to apply for semiautomatic rifle licenses, the standing outcome would be the same. First, "[s]tanding is to be determined at the commencement of suit," and cannot be established by events subsequent to the action's filing. *Otrompke v. First Dep't Cmte. on Character & Fitness*, No. 20-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) (summary order) (finding no standing for prospective lawyer who had not submitted a completed bar application). Moreover, Plaintiffs' claims would be contingent on a licensing officer's subsequent decision to approve or deny their applications, rendering the claims speculative and unripe. *Cf. Clapper*, 568 U.S. at 413 (declining "to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment").

of such a semiautomatic rifle . . ."[11] N.Y. Penal Law § 400.00(2); *see Bruen*, 142 S.Ct. at 2138 n.9 ("nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes"). According to Plaintiffs, this means that "[t]he licensing scheme on which Defendants hang their standing argument does not even apply to the rifles at issue." ECF No. 22 at 3. But Plaintiffs' reading leads to manifestly absurd results—if they were correct, a rifle purchaser could exempt himself from licensing requirements by adding a detachable magazine and a grenade launcher—and it runs contrary to straightforward principles of statutory interpretation.

"Statutory interpretation always 'begins with the plain language of the statute.'" *Grajales v. Comm'r of Internal Revenue*, 47 F.4th 58, 62 (2d Cir. 2022) (quoting *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 584 (2d Cir. 2007)). Here, the relevant portion of N.Y. Penal Law § 400.00(2) does not describe the kinds of rifles for which a license is required, but rather the kind of rifles for which a license "shall be issued." N.Y. Penal Law § 400.00(2). The subject of the sentence is not the purchaser or his ability to buy a rifle, but rather the government and its ability to issue a license.

When the statute provides that "[a] license for a semiautomatic rifle, other than an assault weapon or a disguised gun, shall be issued to purchase or take possession of such a semiautomatic rifle," it imposes two straightforward textual limitations on the government's licensing activity. First, the phrase "shall issue" is understood to require that the government issue a license if the objective criteria laid out in the previous subsection of the statute, N.Y. Penal Law § 400.00(1), are satisfied. *Cf. Bruen*, 142 S.Ct. at 2122, 2138 n.9 (discussing "'shall-issue' licensing regimes,"

---

[11] The "other than an assault weapon or disguised gun" clause mirrors longstanding language in the same subsection concerning licenses for pistols or revolvers. *See* N.Y. Penal Law § 400.00(2) ("A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to . . ."). That language has been part of New York's licensing law for nearly a quarter-century, *see* 2000 N.Y. Laws ch. 189 (S. 8234, A. 11535), and has never been interpreted as exempting assault pistols from the licensing requirement.

in which "the government issues licenses to carry based on objective criteria"). And the phrase "other than an assault weapon or disguised gun" limits the types of weapons for which the government may issue a license, requiring that a license to purchase those two types of particularly dangerous weapons—the ownership of which is separately prohibited by statute, *see* N.Y. Penal Law §§ 265.02 (6)–(7)—shall not be issued in any event.[12]  This portion of the statute does not exempt assault weapons from the licensing requirement. Instead, it underscores the principle that no license may be issued for banned weapons.

### 2.  Plaintiffs' Interpretation, Under Which A License Would Not Be Required To Buy An Assault Rifle, Is Contradicted By The Statutory Context

The statutory interpretation inquiry does not end at the plain language, however. Instead, the court "must not 'look merely to a particular clause,' but consider 'in connection with it the whole statute.'" *Dada v. Mukasey*, 554 U.S. 1, 16 (2008) (quoting *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)). "Indeed, 'the true meaning of a single section of a statute . . . however precise its language, cannot be ascertained if it be considered apart from related sections.'" *Grajales*, 47 F.4th at 62 (quoting *Comm'r of Internal Revenue v. Engle*, 464 U.S. 206, 223 (1984)). The error of Plaintiffs' interpretation of the exception language in Penal Law § 400.00(2) is made apparent in the context of New York's overall licensing framework. Here, the statute that governs purchases of semiautomatic rifles is N.Y. Penal Law § 265.65, the operative portion of which reads:

> A person is guilty of criminal purchase of a semiautomatic rifle when he or she purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter.

---

[12] Notably, the phrase "other than an assault weapon" was enacted as part of the same 2000 legislation that first codified the definition of assault weapon in New York State law and banned their sale or possession. *See* 2000 N.Y. Laws ch. 189 (S. 8234, A. 11535).

Notably, this statute applies to any "semiautomatic rifle," with no language excepting assault rifles or disguised rifles from its application. *See id.* And when Penal Law § 265.65 is read in connection with Penal Law § 400.00(2), as required by the cross-reference within the statute itself, the two statutes establish a straightforward and categorical prohibition: no semiautomatic rifle may be purchased or acquired without a license, and no license will be issued to purchase or acquire an assault rifle. The licensing requirement thus operates as a complete and independent bar preventing Plaintiffs' purchase of the dangerous weapons they wish to acquire.

Likewise, a look at New York's firearms laws as a whole makes clear why the "other than an assault weapon or disguised gun" language in Penal Law § 400.00(2) is necessary. "New York maintains a general prohibition on the possession of firearms without a license," *Frey*, 2023 WL 2473375, at \*1. Section 265 of the Penal Law broadly prohibits the possession of firearms by any New Yorker, and includes the prohibition on possession of an assault weapon. *See* N.Y. Penal Law § 265.02(7). But licensing operates as an exception to those prohibitions, meaning that when an applicant "has been issued such a license, they do not and will not face criminal liability under Section 265."[13] *Frey*, 2023 WL 2473375, at \*7. The consequence of this framework is that if a government were to issue a license that covered an assault weapon, that license could arguably operate to exempt the holder from the assault weapons ban in Penal Law § 265.02, in addition to the other applicable provisions of Penal Law Section 265.20(a).[14] (noting that "section . . . 265.02 . . . shall not apply" to enumerated categories of persons including those with licenses). The "other

---

[13] Technically, the exemption covers many specific parts of § 265 enumerated in Penal Law § 265.20(a), rather than the entire section of the Penal Law.

[14] Instead, illegal possession of a firearm by a license holder may only be punished as a misdemeanor violation of the terms of the license. *See* N.Y. Penal Law §§ 400.00(15), (17).

than an assault weapon or disguised gun" language in Penal Law § 400.00(2) thus plays an important role in ensuring that no such license will be issued.

### 3. Plaintiffs' Interpretation Runs Contrary to the Legislature's Intent to Protect New Yorkers from Violence Committed with Assault Weapons

The text of the law and its statutory context thus make clear that the licensing requirement applies to all semiautomatic rifles, including assault rifles. But even if the Court were to view the statute as ambiguous, the same conclusion is warranted. When a court interprets an ambiguous statute, it "must construct an interpretation that comports with the statute's primary purpose and does not lead to anomalous or unreasonable results." *Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F. 4th 47, 58 (2d Cir. 2021) (quoting *Puello v. Bureau of Citizenship & Immig. Servs.*, 511 F.3d 324, 327 (2d Cir. 2007)). This is particularly the case when interpreting a New York State statute, as "New York courts have recognized that adherence to the letter of the statute will not be permitted to defeat the general purpose and manifest policy intended to be promoted, and that the court, in construing a statute, is not necessarily bound by literal language of a statute if it conflicts with a legislature's manifest intent." *Frontseat, LLC v. Stern, Tr. of Estate of 150 Fulton Prop., Inc.*, No. 18 Civ. 2208, 2020 WL 1933442, at *5 (E.D.N.Y. May 31, 2020).

The semiautomatic rifle licensing provision, including the "other than an assault weapon or disguised gun" language, was enacted to close loopholes in the wake of the Buffalo and Uvalde mass shootings; as explained by the bill's sponsor, "while semiautomatic handguns require[d] a permit to purchase and possess, semiautomatic rifles d[id] not." S9458 Sponsor Memo, available at https://www.nysenate.gov/legislation/bills/2021/S9458. The legislature accordingly enacted the law to "establish a prospective permit to purchase semiautomatic rifles." *Id.* That purpose would be thwarted if courts were to adopt an interpretation where that permitting requirement did not apply to assault rifles, a deadlier weapon and the type used in the very same massacres that gave

14

rise to the law. *Cf. Cuomo*, 804 F.3d at 262 (noting that "semiautomatic assault weapons have been understood to pose unusual risks. When used, these weapons tend to result in more numerous wounds, more serious wounds, and more victims. These weapons are disproportionately used in crime, and particularly in criminal mass shootings like the attack in Newtown.").

The same conclusion is dictated by "the well-established rule that 'absurd results are to be avoided.'" *Cuthill v. Blinken*, 990 F.3d 272, 281 (2d Cir. 2021) (quoting *McNeill v. United States*, 563 U.S. 816, 822 (2011)). If Plaintiffs were correct that "New York's recently enacted semi-automatic rifle licensing scheme expressly does not apply to so-called 'assault weapons,'" ECF No. 22 at 3, the result would be a bizarre framework where public safety protections become weaker as a weapon becomes deadlier. That cannot be the outcome here. "As the Supreme Court has cautioned, 'interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *United States v. Messina*, 806 F.3d 55, 70 (2d Cir. 2015) (quoting *Griffin v. Oceanic Contractors, Inc.*, 457 U.S. 564, 575 (1982)). "Here, a non-absurd interpretation is not only available, it is compelled by the plain meaning of the statutory text." *Id.*

In sum, both the text of the Penal Law and the fundamental principles of statutory construction require the rejection of any interpretation where a license would be required to purchase an unmodified semiautomatic rifle, but not required to purchase a far deadlier assault weapon. Regardless of the outcome of this case, the semiautomatic licensing requirement would apply to the purchase of an assault weapon, and Plaintiffs' lack of a license prevents them from obtaining the guns they hope to buy. Because "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court," *Steel Co.*, 523 U.S. at 107, the result is a lack of redressability, a lack of standing, and dismissal.

## II. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CREDIBLE AND PARTICULARIZED THREAT OF CRIMINAL PROSECUTION TO SUPPORT STANDING

Where, as here, a plaintiff brings a pre-enforcement challenge to a criminal statute, the plaintiff must plausibly allege that "there exists a credible threat of prosecution thereunder." *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019) (internal quotation marks omitted). However, "[a] credible threat is not established by imaginary or speculative fears of prosecution," and "necessarily depends on the particular circumstances at issue." *Id.* (internal quotation marks omitted). Although "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund, the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." *Id.* (internal citations and quotation marks omitted).

Plaintiffs allege that they would each purchase a semiautomatic rifle outfitted with a detachable magazine and military-style accessory features "were it not for Defendants' enforcement of New York's Semiautomatic Firearm Ban." Compl. ¶¶ 39–40. Plaintiffs further allege, in a wholly conclusory manner, that "[i]n light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment," they "continue[ ] to refrain from acquiring, possessing, and lawfully using" an assault weapon. *Id.*

Such threadbare allegations, however, amount to nothing more than "an amorphous threat of prosecution" that is "conjectural" and "hypothetical." *Adam*, 792 F. App'x at 21–22. The Complaint fails to allege any facts elucidating the Superintendent's "actions," and likewise fails to detail any "threat" that has been made against themselves or anyone else. Indeed, the Second Circuit has recently held that several individuals who already possessed a prohibited firearm still failed to proffer any credible, non-hypothetical threat of prosecution for possession of illegal

16

weapons. *See Does 1-10 v. Suffolk Cnty., N.Y.*, No. 21-1658, 2022 WL 2678876 (2d Cir. July 12, 2022) (summary order).

The plaintiffs in *Does* faced a much more imminent threat of enforcement than Plaintiffs here. In fact, the Suffolk County Police Department had sent each plaintiff a letter informing them that their firearms were illegal, requesting that the firearms be turned over to law enforcement, and "threatening that Does 'may be subject to arrest and criminal charges' for failure to comply with the request." *Id.* at *1. Despite that communication, the Second Circuit held that "[t]he circumstances at issue here do not suggest that Does suffered, or at a risk of suffering, an injury in fact," because they "have not established that their prosecution is likely." *Id.* at *3. Here, Plaintiffs have failed to plausibly allege any specific threat of prosecution traceable to Superintendent Nigrelli, and in fact make no specific allegations whatsoever regarding any actions taken by the Superintendent or the State Police. *Cf. Giambalvo*, 2023 WL 2050803, at *8 (finding no standing against Superintendent Nigrelli in Second Amendment case because "there is nothing suggesting that any plaintiff has been arrested or prosecuted or that there is otherwise a substantial risk of such action.").

*Does* is consistent with other recent decisions finding that no credible threat of prosecution exists where a complaint fails to allege facts demonstrating a particularized threat of enforcement against the specific plaintiff. *Adam*, 792 F. App'x at 22–23 (no credible threat of prosecution where plaintiff "does not claim that the [Controlled Substances Act] has been enforced against him in the past, nor that he has ever been threatened with prosecution"); *Bellochio v. Garland*, 614 F.Supp.3d 11, 18 (S.D.N.Y. 2022) ("Plaintiff does not plead any facts suggesting that he has been directly threatened with prosecution[.]"); *Sibley v. Watches*, 501 F.Supp.3d 210, 223 (W.D.N.Y. 2020)

17

(plaintiff failed to "allege that [Penal Law § 265.01(1)] has been enforced against him in the past or that anyone threatened him with prosecution").

Courts have reached a similar conclusion in cases challenging the federal Violent Crime Control and Law Enforcement Act of 1994, which banned the possession of semiautomatic assault weapons for ten years. *See* 18 U.S.C. § 922. For example, in *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996), the Ninth Circuit held that plaintiffs lack standing where they "do not identify even a general threat made against them" and "concede that they have not been threatened with arrest, prosecution or incarceration." The court also emphasized that "plaintiffs' allegations of threatened prosecution . . . affect not only the named plaintiffs, but also anyone desiring to possess semiautomatic assault weapons." *Id.* at 1131. In *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293–94 (6th Cir. 1997), the Sixth Circuit similarly held that the individual plaintiffs "who telephoned [Bureau of Alcohol, Tobacco, and Firearms] agents, submitted a hypothetical question, and received an answer that the questioned activity could subject them to federal prosecution" lacked standing because the "threat of prosecution against these plaintiffs is still abstract, hypothetical, and speculative." The court also echoed *Reno* by emphasizing that "[p]laintiffs' allegations of fear of prosecution, which thwarts their desire to possess or transfer prohibited products, affects not only the named plaintiffs, but also anyone desiring to possess the products proscribed by the Crime Control Act." *Id.* at 294.

So too in this case, Plaintiffs' alleged fear of prosecution is not differentiated from other New York state residents who also wish to possess semiautomatic rifles outfitted with detachable magazines and the accessories prohibited in § 265.00(22). Because Plaintiffs "would simply be at risk just like any other person in the [state of New York] who might violate the [Penal Law],"

*Adam*, 792 F. App'x at 22–23, they have failed to plausibly allege the requisite imminent and particularized threat of criminal prosecution to proceed with their pre-enforcement challenge.

### III.   PLAINTIFFS' CLAIMS ARE CONSTITUTIONALLY AND PRUDENTIALLY UNRIPE

Plaintiffs' suit is neither constitutionally nor prudentially ripe for the same reasons that Plaintiffs themselves lack standing. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). "Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) (internal quotation marks and alterations omitted).

As the Second Circuit has explained, "the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). As described in greater detail, *supra*, a credible threat of prosecution cannot rest on fears that are imaginary or speculative. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). Plaintiffs here also fail to set forth allegations of a non-hypothetical, imminent injury sufficient to support a pre-enforcement challenge to New York Penal Law sections 265.00(22)(a)–(f); 265.02(7), 265.10, and 70.02. *See Babbitt*, 442 U.S. at 298; *Bellochio*, 614 F.Supp.3d at 17–18; *Sibley*, 501 F.Supp.3d at 222. As a result, Plaintiffs' threat of imminent injury is entirely speculative and renders the claim unripe for judicial review.

Plaintiffs' claims are similarly unripe under both constitutional and prudential theories based on their failure to obtain semiautomatic rifle licenses. Put simply, a claim is not ripe if it

depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Walsh*, 714 F.3d at 687 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Were the Court to address this matter on the merits now, as Plaintiffs have requested, and Plaintiffs are later found to be unqualified to obtain a license for a semiautomatic rifle, the Court's decision would, in effect, be an improper advisory opinion. Plaintiffs' claim should be adjudicated only if circumstances change such that they genuinely face an imminent threat of harm from the ban on assault weapons, and Plaintiffs can demonstrate that the assault weapons ban is actually the only impediment keeping them from owning one.

## **CONCLUSION**

For the foregoing reasons, Superintendent Nigrelli respectfully requests that the Court dismiss the Complaint, with prejudice, together with such other relief as the Court may award.

Dated:  New York, New York
        May 4, 2023

                          Respectfully submitted,
                          LETITIA JAMES
                          Attorney General
                          State of New York
                          *Attorney for Superintendent Nigrelli*

                          By:

                          _S. Mettham_____
                          Suzanna Publicker Mettham
                          Brenda Cooke
                          James M. Thompson
                          Yuval Rubinstein
                          *Assistant Attorneys General*
                          28 Liberty Street
                          New York, New York 10005
                          suzanna.mettham@ag.ny.gov
                          brenda.cooke@ag.ny.gov
                          james.thompson@ag.ny.gov
                          yuval.rubinstein@ag.ny.gov