UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

J. MARK LANE, et al.,

               Plaintiffs,

           v.                                Case No. 7:22-cv-10989-KMK

STEVEN A. NIGRELLI, in his official capacity as
Superintendent of the New York State Police, et al.,

               Defendants.

———————————————————————————

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Respectfully submitted,

FPC ACTION FOUNDATION
Attorneys for Plaintiffs
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada  89149
(916) 517-1665

Cody J. Wisniewski, Esq.
  -Of Counsel-

SECOND AMENDMENT
FOUNDATION
Attorneys for Plaintiffs
12500 NE 10th Place
Bellevue, Washington  98005
(800) 426-4302

Adam J. Kraut, Esq.
  -Of Counsel-

PHILLIPS LYTLE LLP
Attorneys for Plaintiffs
*J. Mark Lane and James Sears*
125 Main Street
Buffalo, New York  14203-2887
(716) 847-8400

Nicolas J. Rotsko, Esq.
Sam M. Williams, Esq.
Ryan P. Schelwat, Esq.
  -Of Counsel-

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 4

    A.    New York bans popular, commonly owned firearms. .................................... 4

    B.    Defendants and other New York State officials
        have consistently enforced the Firearms Ban. ................................................ 5

    C.    Plaintiffs are law abiding citizens who wish to purchase
        AR-style rifles for self-defense and other lawful purposes. ............................ 5

    D.    Plaintiff Sears has obtained a semi-automatic rifle license,
        but still cannot legally purchase the AR-15 style rifle he seeks. ...................... 6

LEGAL STANDARD .................................................................................................. 6

ARGUMENT ............................................................................................................... 7

POINT I     PLAINTIFFS HAVE SUFFERED, AND WILL
            CONTINUE TO SUFFER, AT LEAST THREE
            CONCRETE, PARTICULARIZED INJURIES ........................................ 7

    A.    Enforcement of the Firearms Ban injures
        Plaintiffs by preventing them from exercising
        their Second Amendment rights. ...................................................... 7

    B.    Enforcement of the Firearms Ban injures Plaintiffs
        by eliminating the legal market for AR-15 style rifles. ....................... 9

    C.    Plaintiffs face a credible threat of prosecution if they violate
        the Firearms Ban, which Defendants consistently enforce. ................ 10

        1.    Plaintiffs' fear of criminal prosecution is
            neither imaginary nor wholly speculative. ............................ 11

            a.    Defendants consistently and vigorously
                enforce the Firearms Ban. ........................................... 13

            b.    Plaintiffs need not be singled out with threats of
                prosecution; it is presumed that Defendants will
                enforce the Firearms Ban ............................................ 15

POINT II      NEW YORK'S SEMI-AUTOMATIC RIFLE LICENSING
SCHEME IS IRRELEVANT TO PLAINTIFFS' STANDING ..................17

A.    Penal Law § 400.00(2) does not
apply to "assault weapons" ................................................................17

B.    The semi-automatic rifle license does not
authorize purchase or possession of "assault
weapons", so applying for and obtaining the
license has no bearing on the relief Plaintiffs seek. ...........................19

1.    Plaintiff Sears cannot add an "assault weapon"
to his semi-automatic rifle license; it would be futile
for Plaintiff Lane to try. ........................................................19

2.    Penal Law § 265.65 is not an
independent "assault weapons" ban. .....................................22

POINT III   PLAINTIFFS' INJURIES ARE REDRESSABLE BY ENJOINING
ENFORCEMENT OF THE FIREARMS BAN; AN INJUNCTION
WOULD REMOVE THE ABSOLUTE PROHIBITION ON
EXERCISE OF THEIR CONSTITUTIONAL RIGHTS...........................23

A.    Plaintiff Sears has already obtained a semi-automatic rifle license,
yet remains just as injured by the Firearms Ban as Plaintiff Lane ......23

POINT IV   PLAINTIFFS' CLAIMS ARE RIPE............................................................24

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) ...................................................................................11

*Adam v. Barr,*
    792 F. App'x 20 (2d Cir. 2019) ..................................................................15

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
    671 F.3d 140 (2d Cir. 2011) ........................................................................ 6

*Babbitt v. United Farm Workers Nat. Union,*
    442 U.S. 289 (1979) ..................................................................... 11, 12, 17

*Bach v. Pataki,*
    289 F. Supp. 2d 217 (N.D.N.Y. 2003) ................................................. 20, 21

*Bach v. Pataki,*
    408 F.3d 75 (2d Cir. 2005) ..........................................................................21

*Baez v. Hennessy,*
    853 F.2d 73 (2d Cir. 1988) ..........................................................................13

*Barnett v. Raoul,*
    No. 3:23-cv-00209-SPM, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023)............................ 3

*Bauer v. Shepard,*
    620 F.3d 704 (7th Cir. 2010) .......................................................................16

*Bellocchio v. Garland,*
    614 F. Supp. 3d 11 (S.D.N.Y. 2022) ...........................................................15

*Bevis v. City of Naperville, Illinois,*
    No. 22 C 4775, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ......................... 3

*Boland v. Bonta,*
    No. SACV 22-01421-CJC, 2023 WL 2588565 (C.D. Cal. Mar. 20, 2023)....................10

*Bowsher v. Synar,*
    478 U.S. 714 (1986) ....................................................................................24

*Brokamp v. James,*
    66 F.4th 374 (2d Cir. 2023) .........................................................................13

*Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*,
    No. 21 Civ. 7667, 2023 WL 2185901 (S.D.N.Y. Feb. 23, 2023) ..................................17

*Carney v. Adams*,
    141 S. Ct. 493 (2020) ........................................................................................ 20, 24

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*,
    846 F.3d 492 (2d Cir. 2017) ........................................................................................19

*Cayuga Nation v. Tanner*,
    824 F.3d 321 (2d Cir. 2016) ................................................................................. 12, 16

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ........................................................................................24

*Charette v. Town of Oyster Bay*,
    159 F.3d 749 (2d Cir. 1998) ........................................................................................22

*City of Lakewood v. Plain Dealer Publishing Co.*,
    486 U.S. 750 (1988)........................................................................................................22

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ..................................................................................................12

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*,
    790 F.3d 411 (2d Cir. 2015) ......................................................................................... 6

*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011) ...................................................................................... 8

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)........................................................................................... 3, 12, 15

*Doe No. 1 v. Putnam Cnty.*,
    344 F. Supp. 3d 518 (S.D.N.Y. 2018)................................................... 1, 7, 9, 18, 21, 25

*Doe v. Bolton*,
    410 U.S. 179 (1973)............................................................................................... 16, 24

*Does 1 - 10 v. Suffolk Cnty., New York*,
    No. 21-1658, 2022 WL 2678876 (2d Cir. July 12, 2022) ............................................14

*Elrod v. Burns*,
    427 U.S. 347 (1976)........................................................................................................ 8

*Epperson v. Arkansas*,
    393 U.S. 97 (1968) ........................................................................................................16

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ............................................................ 10, 15

*Fed. Election Comm'n v. Cruz*,
   142 S. Ct. 1638 (2022) ...................................................................... 1, 7, 18

*Gibbons v. Bristol-Myers Squibb Co.*,
   919 F.3d 699 (2d Cir. 2019) ............................................................. 19

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ............................................................. 11, 12, 16

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ........................................................................... 22

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ............................................................................. 9, 16

*Homaidan v. Sallie Mae, Inc.*,
   3 F.4th 595 (2d Cir. 2021) ................................................................ 22

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ......................................................................... 20

*Jackson v. City and County of San Francisco*,
   746 F.3d 953 (9th Cir. 2014) ............................................................ 9, 10

*Jackson-Bey v. Hanslmaier*,
   115 F.3d 1091 (2d Cir. 1997)), *aff'd*, 408 F.3d 75 (2d Cir. 2005) ................. 20

*Kachalsky v. Cacace*,
   817 F. Supp. 2d 235 (S.D.N.Y. 2011) ............................................... 25

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ......................................................................... 14

*Knife Rts., Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015) ............................................................. 9

*Lamar Advert. of Penn, LLC v. Town of Orchard Park*,
   New York, 356 F.3d 365 (2d Cir. 2004) ............................................ 21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................... 7, 8

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ............................................................. 7

*Maldonado v. Morales*,
    556 F.3d 1037 (9th Cir. 2009) ..................................................................23

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013).................................................................................22

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2d Cir. 2007) ....................................................................11

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
    819 F.3d 581 (2d Cir. 2016) ....................................................................21

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978).................................................................................14

*Nat'l Rifle Ass'n of Am., Inc. v. BATFE*,
    700 F.3d 185 (5th Cir. 2012), *abrogated on other grounds by Bruen*,
    142 S. Ct. 2111.......................................................................................10

*Nat'l Rifle Ass'n of Am. v. Magaw*,
    132 F.3d 272 (6th Cir. 1997) ............................................................. 14, 15

*New York C.L. Union v. Grandeau*,
    528 F.3d 122 (2d Cir. 2008) ....................................................................24

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ..................................................................... 3, 9, 12

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ........................................................... 3, 9, 16

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    990 F. Supp. 2d 349 (W.D.N.Y. 2013) ...................................................... 9

*People v. Bocanegra*,
    307 Cal. Rptr. 3d 823 (2023).................................................................... 3

*People v. James*,
    94 Cal. Rptr. 3d 576 (2009)...................................................................... 3

*People v. Rivera*,
    No. 00994-2019, 2021 WL 7627676 (N.Y. Sup. Ct. 2021) ....................13

*Picard v. Magliano*,
    42 F.4th 89 (2d Cir. 2022)................................................................. 12, 16

*Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*,
    547 U.S. 47 (2006) ............................................................................ 7, 24

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ........................................................................14

*Shuttlesworth v. City of Birmingham*,
    394 U.S. 147 (1969) ......................................................................................22

*Sibley v. Watches*,
    501 F. Supp. 3d 210 (W.D.N.Y. 2020) .........................................................15

*Sierra Club v. United States Dep't of the Interior*,
    899 F.3d 260 (4th Cir. 2018) ........................................................................23

*Silva v. Farrish*,
    47 F.4th 78 (2d Cir. 2022)............................................................................16

*Smith v. Martuscello*,
    602 F. App'x 550 (2d Cir. 2015) ..................................................................14

*Sporhase v. Nebraska, ex rel. Douglas*,
    458 U.S. 941 (1982) ......................................................................................21

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ......................................................................................11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................... 8, 11, 14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................... 8

*Tweed-New Haven Airport Auth. v. Tong*,
    930 F.3d 65 (2d Cir. 2019) ...........................................................................16

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012) .........................................................................21

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)......................................................................................21

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988).................................................................................12, 17

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) .......................................................................... 6

*Wallace v. New York*,
    40 F. Supp. 3d 278 (E.D.N.Y. 2014) ............................................................ 8

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................... 7

**Statutes**

N.Y. Exec. Law § 223..........................................................................................13

Penal Law § 265.00(22) ..................................................................... 4, 18, 22

Penal Law § 265.02 ..........................................................................4, 11, 18, 22

Penal Law § 265.17 ................................................................................... 9

Penal Law § 265.20(a) ...................................................................................22

Penal Law § 400 ................................................................13, 17, 18, 19, 20, 22

Secure Ammunition and Firearms Enforcement Act of 2013 ............................... 3, 4, 9, 23

The Violent Crime Control and Law Enforcement Act of 1994 .........................................14

**Other Authorities**

U.S. Constitution, First Amendment.................................................................8, 21

U.S. Constitution, Second Amendment ...............................................................*passim*

U.S. Constitution, Fourteenth Amendment......................................................... 1

McKinney Practice Commentary, Penal Law § 265.65 .............................................. 18, 22

Federal Rule of Civil Procedure 12(b)(1) .......................................................2, 6

Second Circuit Local Rule 32.1.1(a).................................................................14

## INTRODUCTION

Plaintiffs J. Mark Lane and James Sears have standing to challenge New York State's absolute and unconstitutional ban on possession of commonly owned AR-15 style rifles, which New York deems "assault weapons" ("Firearms Ban" or "Ban"). Plaintiffs seek to purchase and possess modern AR-15 style rifles for home defense, target shooting, and other lawful purposes.  Millions of law-abiding, peaceable citizens throughout the nation already possess these common, popular firearms.  The Second Amendment, incorporated against the states by the Fourteenth Amendment, protects their right to do so.

Plaintiffs have suffered, and will continue to suffer, at least three concrete and particularized injuries sufficient for standing:  1) intangible injury to their constitutional right to keep and bear commonly owned firearms for lawful purposes; 2) the complete elimination in New York State of the legal market for rifles they wish to purchase; and 3) the credible, non-speculative risk of severe criminal penalties if they choose to exercise their Second Amendment rights despite the Firearms Ban.[1]

1.   **Intangible Injury.**  Defendants' enforcement of the Firearms Ban absolutely prohibits Plaintiffs from exercising their constitutional right to keep and bear the commonly owned firearms at issue here.  Unlike their neighbors in Vermont and Pennsylvania, and their fellow Americans in the vast majority of other states, New Yorkers are forbidden from possessing the most popular small-caliber, semi-automatic rifles in the nation.

---

[1] To assess standing, it is assumed that the Firearms Ban violates the Second and Fourteenth Amendments. *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647–48 (2022); *Doe No. 1 v. Putnam Cnty.*, 344 F. Supp. 3d 518, 531 n. 8 (S.D.N.Y. 2018).

2.    **Elimination of the market.**  Enforcement of the Firearms Ban by the New York State Police and county prosecutors has completely eliminated the legal market for such rifles in New York State, including Westchester County.  Even out-of-state dealers cannot ship them to New York.  Plaintiffs would have already purchased the rifles they seek if the Firearms Ban did not make it illegal to do so

3.    **Threat of criminal prosecution.**  Completely ignoring the first two injuries, Defendants attempt to rebut the third on the ground that somehow no credible threat exists.[2]  But the Firearms Ban is not moribund.  Both Defendants have enforced the Firearms Ban, and have publicly stated they will continue to do so.  Neither Defendant has disclaimed enforcement against Plaintiffs.  Plaintiffs risk severe punishment if they flout the Firearms Ban in favor of their constitutional freedoms.

Because all three injuries are traceable to Defendants' enforcement of the Firearms Ban, enjoining Defendants from enforcing it will redress Plaintiffs' injuries.  An injunction will enable Plaintiffs to exercise their Second Amendment right to purchase and possess the rifles they seek, without facing felony investigation, prosecution, or conviction.

Defendants attempt to dodge this obvious conclusion by contending that New York State's recently enacted semi-automatic rifle license scheme is the *real* reason Plaintiffs cannot purchase modern rifles, not the Firearms Ban.  Even if the semi-automatic rifle license scheme did not expressly exclude so-called "assault weapons," however, the license scheme does not deprive Plaintiffs of standing.  Contrary to Defendant Nigrelli's inaccurate database, New York State *has* issued Plaintiff Sears a semi-automatic rifle license,

---

[2] Mem. of Law in Support of Superintendent Nigrelli's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF No. 42 ("Nigrelli Mem."), at 16-19; Mem. of Law in Support of Defendant District Attorney Miriam E. Rocah's Motion to Dismiss, ECF No. 39 ("Rocah Mem."), at 5-8.

but the Firearms Ban still blocks him from purchasing the rifle he seeks.  The Firearms Ban

is what interferes with Plaintiffs' constitutional rights, not the "shall issue" license regime.

Enjoining Defendants from enforcing the Firearms Ban will redress Plaintiffs' injuries.

The Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc.*

*v. Bruen* reaffirmed the proper "methodological approach to the Second Amendment," and

expressly rejected means-end tiered scrutiny.  142 S. Ct. 2111, 2125–31 (2022).  Prior to

*Bruen*, the Second Circuit applied a form of intermediate scrutiny to Second Amendment

claims, even to claims challenging "serious encroachment[s] on the Second Amendment,"

and generally upheld sweeping infringements like the Firearms Ban.  *New York State Rifle &*

*Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 259–64 (2d Cir. 2015).  *Bruen* rejected that

framework, and now Plaintiffs seek to vindicate their rights under the correct constitutional

standard, a standard that "elevates above all other interests the right of law-abiding,

responsible citizens to use arms."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).[3]

---

[3] *See also Barnett v. Raoul*, No. 3:23-cv-00209-SPM, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) (finding standing and granting a preliminary injunction under *Bruen* against Illinois's prohibition on "assault weapons.").  Defendant Nigrelli cites several other district court decisions from Delaware, Illinois, and California to suggest that the merits weigh against Plaintiffs' arguments. *See* ECF No. 42 at 9 n.9. The cases Nigrelli cites, however, largely misapply the "dangerous *and* unusual" test outlined in *Heller. See, e.g., Bevis v. City of Naperville, Illinois*, No. 22 C 4775, 2023 WL 2077392, at *16 (N.D. Ill. Feb. 17, 2023) ("Assault-weapons and high-capacity magazines *regulations* are not 'unusual[.]'") (applying outdated means-ends scrutiny to assess dangerousness, and assessing the usualness of recently enacted regulations rather than the usualness of the regulated arms); *People v. Bocanegra*, 307 Cal. Rptr. 3d 823, 833 (2023) ("The James court further observed: 'While the fully-automatic nature of a machine gun renders such a weapon arguably more dangerous and unusual than a semi-automatic assault weapon, that observation does not negate the fact that assault weapons, like machine guns, are not in common use by law-abiding citizens for lawful purposes . . . .'") (quoting *People v. James*, 94 Cal. Rptr. 3d 576, 585-86 (2009)) (perfunctorily citing federal cases which upheld restrictions on fully-automatic machine guns and extending this exception to semi-automatic assault weapons and all firearms which used 0.50-inch caliber rounds).

## STATEMENT OF FACTS

**A.    New York bans popular, commonly owned firearms.**

The Secure Ammunition and Firearms Enforcement Act of 2013 (the "Act")—in conjunction with certain 2005 amendments to New York's Penal Law—makes it unlawful for any person to possess or purchase an "assault weapon."  Penal Law §§ 265.00(22)(a)–(f); 265.02(7); 265.10 (collectively "Firearms Ban").  The Act defined "assault weapon" as a firearm that:  1) is semi-automatic; 2) can accept a detachable magazine; and 3) has at least one statutorily enumerated feature, *e.g.*, a muzzle brake.  Penal Law § 265.00(22).  Violation of the Firearms Ban is a class D felony, with a prison sentence of two to seven years for each violation.  Penal Law §§ 265.02(7); 70.00.

Modern AR-15 style rifles are outlawed by the Firearms Ban, but are commonly used by law-abiding citizens for lawful purposes throughout the United States (legal in 41 states).[4]  ECF No. 1 ("Compl.") ¶¶ 19–20.  Approximately 20% of all firearms sold in the United States in recent years were rifles outlawed by the Firearms Ban.  *Id.*  Nearly 25 million Americans have owned one of these firearms, and more than 20 million Americans used them for target or sport shooting in 2020 alone.  *Id.*  And these firearms are not commonly used in crime:  a widely cited 2004 study found that they "are used in a small fraction of gun crimes."  *Id.* ¶ 33.  According to FBI statistics, in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other blades, 600 with personal weapons (hands, feet, etc.), and 397 with blunt objects.  *Id.*

---

[4] Defendant Nigrelli concedes that "assault weapons," and specifically "assault rifles," are relatively "prevalent."  This amounts to an admission that such arms are both in common use and not unusual.  *See* Nigrelli Mem., ECF No. 42, at 2 n.2.

**B.    Defendants and other New York State officials
have consistently enforced the Firearms Ban.**

The New York State Police arrested multiple individuals for unlawful possession of "assault weapons" in 2022 and 2023, and seized "assault weapons" as part of investigations.  Decl. of Nicolas J. Rotsko, Esq. ¶¶ 5–6, Exs. A, B.  Former Attorney General Schneiderman, alongside former New York State Police Superintendent Beach, stated that "New York has enacted some of the toughest, most sensible gun safety laws in the country, and with today's charges we are sending a message that these laws will be vigorously enforced."  *Id.* ¶ 7–8, Ex. C.  Likewise, Defendant Rocah has charged individuals for the alleged possession of "assault weapons" in their homes, multiple times in 2023 alone.  *Id.* ¶¶ 9–11, Exs. D, E.  Neither the State Police, nor Defendant Rocah, have walked back from vigorous enforcement, or disavowed enforcement against Plaintiffs.  *Id.* ¶ 12.

**C.    Plaintiffs are law abiding citizens who wish to purchase
AR-style rifles for self-defense and other lawful purposes.**

Plaintiffs James Sears and J. Mark Lane are residents of Westchester County who wish to exercise their constitutional right to purchase and possess popular rifles outlawed by the Firearms Ban.  Compl. ¶¶ 39, 40; Declaration of J. Mark Lane, dated June 5, 2023 ("Lane Dec.") ¶¶ 1, 3, 6; Declaration of James Sears, dated June 5, 2023 ("Sears Dec.") ¶¶ 1, 3, 7.  Plaintiff Lane intends to purchase a Springfield Armory Saint rifle, and Plaintiff Sears intends to purchase a LMT MARS-L 5.56 rifle.  Compl. ¶¶ 39, 40; Lane Dec. ¶ 3; Sears Dec. ¶ 3.  Both of these firearms are AR-15 style rifles capable of accepting a detachable magazine, with telescoping stocks, pistol grips, and muzzle devices.  Compl. ¶¶ 39, 40; Lane Dec. ¶ 4; Sears Dec. ¶ 4.

Plaintiffs seek these firearms to protect themselves and their loved ones, among other lawful purposes.  Compl. ¶¶ 39, 40.  AR-15 style rifles are one of the best options for self-and-home defense, and the banned features enhance such lawful use. Compl. ¶¶ 24–28.  Yet Plaintiffs recognize that the Firearms Ban outlaws these guns, and they do not want to break the law.  Lane Dec. ¶ 6; Sears Dec. ¶¶ 6–7.  They would have purchased these guns already, but for the Firearms Ban.  Compl. ¶¶ 39, 40; Lane Dec. ¶ 7; Sears Dec. ¶ 8.

**D.    Plaintiff Sears has obtained a semi-automatic rifle license, but still cannot legally purchase the AR-15 style rifle he seeks.**

Plaintiff Sears applied for a concealed carry permit and a semi-automatic rifle license prior to filing the Complaint.  Sears Dec. ¶ 11.  He was fingerprinted and completed his applications on November 16, 2022.  *Id.*  On March 29, 2023, the Hon. Susan M. Capeci, ASJC, County Court, Westchester County, approved Plaintiff Sears' applications. *Id.* ¶ 12.  His semi-automatic rifle license was issued on April 10, 2023, and expires in 2028. *Id.* Ex. A.  Even though Plaintiff Sears obtained his semi-automatic rifle license, he cannot purchase or possess an LMT MARS-L 5.56 rifle—because of Defendants' enforcement of the Firearms Ban.  *Id.* ¶ 13.

## LEGAL STANDARD

When considering a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded allegations.  *See Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting, in part, *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)).  "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint."  *Cortlandt*, 790 F.3d at 417 (quoting *Amidax Trading*

*Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000)).

   To have standing, a plaintiff must allege an "injury in fact," defined as "an

invasion of a legally protected interest which is (a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 (1992).  There must be a causal connection between the injury and the

challenged law, and it must be likely that a favorable decision would redress the injury.  *Id.*

at 560–61.

   At the pleading stage, a plaintiff need only "clearly . . . allege facts

demonstrating" each element of standing.  *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *see also*

*Lujan*, 504 U.S. at 560–61 (standing "must be supported . . . with the manner and degree of

evidence required at the successive stages of the litigation.").  If either individual Plaintiff

has standing, Article III's case-or-controversy requirement is satisfied.  *Rumsfeld v. Forum for*

*Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006).  For purposes of standing, it is

assumed that Plaintiffs prevail on the merits, *i.e.,* that the Firearms Ban violates their Second

Amendment rights.  *Cruz*, 142 S. Ct. at 1647–48 (2022); *Doe No. 1*, 344 F. Supp. 3d at 531.

## ARGUMENT

## POINT I

### PLAINTIFFS HAVE SUFFERED, AND WILL CONTINUE TO SUFFER, AT LEAST THREE CONCRETE, PARTICULARIZED INJURIES

**A.**  **Enforcement of the Firearms Ban injures Plaintiffs by preventing them from exercising their Second Amendment rights.**

   Plaintiffs have suffered an actual injury-in-fact to their Second Amendment

rights, because the Firearms Ban prevents them, as ordinary law-abiding citizens, from

purchasing common firearms.  Plaintiffs have a continuing desire to purchase AR-15 style rifles, which is thwarted by the Firearms Ban, resulting in a cognizable injury.  *See Dearth v. Holder*, 641 F.3d 499, 503 (D.C. Cir. 2011) (holding plaintiff was "not alleging merely an 'injury at some indefinite future time,' he claims he presently suffers a cognizable injury to his constitutional rights because the regulatory scheme thwarts his continuing desire to purchase a firearm") (quoting *Lujan*, 504 U.S. at 555).

Plaintiffs have alleged facts supporting their ability, readiness, and intent to purchase firearms prohibited by the Ban. Compl. ¶¶ 8–9, 39–40; Sears Dec. ¶¶ 3–5; Lane Dec. ¶¶ 3–5.  As in *Dearth*, Plaintiffs' injuries are a direct result of the Firearms Ban.  This ongoing harm constitutes a concrete injury because it is a traditional harm "specified by the Constitution itself."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  The Firearms Ban stifles Plaintiffs' opportunity to exercise their constitutional rights.  *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Wallace v. New York*, 40 F. Supp. 3d 278, 298 (E.D.N.Y. 2014) ("Thus, a limitation on one's housing *opportunities* is a sufficiently 'concrete' injury.") (emphasis added).  Plaintiff Sears already has a general semi-automatic rifle license, but still cannot purchase the popular AR-15 style rifle he desires. Sears Dec. ¶¶ 11–13.  Because the Firearms Ban blocks Plaintiffs from exercising rights guaranteed by the Constitution, they have suffered a cognizable injury and have a significant "personal stake" in the issues to be resolved by this case.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Plaintiffs' intentions are non-speculative.[5]  Thwarted intentions to possess

banned weapons constitute sufficient injury for standing.  *See Knife Rts., Inc. v. Vance*, 802

F.3d 377, 383 (2d Cir. 2015) ("[P]laintiff Copeland *would* purchase, possess, and use another

'Benchmade model 10210 folding knife,' and that plaintiff Perez *would* purchase, possess,

and use another 'Gerber model 05785 folding knife.'") (emphasis added); *New York State*

*Rifle & Pistol Ass'n, Inc. v. Cuomo*, 990 F. Supp. 2d 349, 358–59 (W.D.N.Y. 2013)

("[Plaintiffs] further testify that, but for the Act, they would acquire weapons and

ammunition-feeding devices that the Act renders illegal.") (*citing Holder v. Humanitarian Law*

*Project*, 561 U.S. 1, 15 (2010)).  Plaintiffs' injuries here are identical to those in *Knife Rights*

and *Cuomo*.  Plaintiffs face a lose-lose scenario where they are injured either way; they must

either continue to refrain from exercising their constitutional rights, or else risk criminal

penalty.  *See Putnam Cnty.*, 344 F. Supp. 3d at 533 ("Under either of these scenarios, the

state contractor would suffer an injury in fact that is both concrete and particular.").

## B.    Enforcement of the Firearms Ban injures Plaintiffs by eliminating the legal market for AR-15 style rifles.

The Firearms Ban, and Penal Law § 265.17 in particular, further injure

Plaintiffs by distorting the consumer marketplace in New York.  Plaintiffs are unable to

purchase the firearms they seek—or any other "assault weapon"—in New York because the

market has been destroyed by the Firearms Ban.  Elimination of the market for certain

ammunition was sufficient injury for standing in *Jackson v. City and County of San Francisco*,

---

[5] Defendants are incorrect that "plaintiffs have failed to demonstrate what if any need they have for such a weapon." Rocah Mem., ECF No. 39, at 5.  This argument fails to grasp the scope of the Second Amendment post-*Bruen*.  Requiring either Plaintiff to demonstrate a particular need for self-defense (or to even require them to allege that they have ever fired a gun) contradicts *Bruen's* core holding.  *See Bruen*, 142 S. Ct. at 2156 ("We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need.").

746 F.3d 953, 967 (9th Cir. 2014).  There, the plaintiff alleged "the Second Amendment

provide[d] her with a 'legally protected interest' to purchase hollow-point ammunition, and

that but for [the challenged law] she would do so within San Francisco."  *Id.*  As in *Jackson*,

Plaintiffs here are unable to purchase "assault weapons" in New York because Defendants'

enforcement of the Firearms Ban has extinguished any legal market for such firearms within

the state.  *Cf. Boland v. Bonta*, No. SACV 22-01421-CJC (ADSX), 2023 WL 2588565, at *1,

3 (C.D. Cal. Mar. 20, 2023) ("These regulations are having a devastating impact on

Californians' ability to acquire . . . handguns[.]").

   Defendants' enforcement of the Firearms Ban also prevents sellers outside

New York from shipping the banned guns into the state.  Plaintiffs cannot legally possess

their desired firearms unless they move to another state.  But "the harm to a constitutional

right" is not "measured by the extent to which it can be exercised in another jurisdiction."

*Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011); *see also Jackson*, 746 F.3d at 967

("That Jackson may easily purchase ammunition elsewhere is irrelevant.").

   The Firearms Ban directly injures Plaintiffs, and the injury will continue as

long the Ban is operative.  *See Nat'l Rifle Ass'n of Am., Inc. v. BATFE*, 700 F.3d 185, 191–92

(5th Cir. 2012) (holding "the injury of not being able to purchase handguns from FFLs"

constituted a "concrete, particularized injury.""), *abrogated on other grounds by Bruen*, 142 S.

Ct. 2111.

**C.** **Plaintiffs face a credible threat of prosecution if they violate
the Firearms Ban, which Defendants consistently enforce.**

   For standing to assert a pre-enforcement challenge, a plaintiff must

demonstrate "an intention to engage in a course of conduct arguably affected with a

constitutional interest, but proscribed by a statute" and that "there exists a credible threat of

prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159.  A plaintiff need not

"expose himself to actual arrest or prosecution" before "challeng[ing] the statute that he

claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459

(1974); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2d Cir. 2007) ("The

dilemma posed by that coercion—putting the challenger to the choice between abandoning

his rights or risking prosecution—is 'a dilemma that it was the very purpose of the

Declaratory Judgment Act to ameliorate.'") (quoting *Abbott Laboratories v. Gardner*, 387 U.S.

136, 152 (1967)).  There is no dispute that the Firearms Ban proscribes the course of conduct

Plaintiffs intend to engage in, *i.e.*, possessing "assault weapons."  *See* Penal Law § 265.02(7).

### 1.  Plaintiffs' fear of criminal prosecution is neither imaginary nor wholly speculative.

Defendants argue that Plaintiffs lack standing purportedly because:

1) Plaintiffs could likely avoid prosecution if they limited possession of banned firearms to

their homes;[6] and 2) Defendants are unlikely to enforce the Firearms Ban against them.[7]

These arguments misstate Plaintiffs' burden, conflating the concepts of "likelihood of

prosecution" with "credible threat."  Rather, "a plaintiff has standing to make a pre-

enforcement challenge 'when fear of criminal prosecution under an allegedly

unconstitutional statute is not imaginary or wholly speculative.'"  *Hedges v. Obama*, 724 F.3d

170, 196 (2d Cir. 2013) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302

(1979)); *see also Babbitt*, 442 U.S. at 302 ("Appellees are thus not without some reason in

fearing prosecution.").

---

[6] Rocah Mem., ECF No. 39 at 7 ("Should Plaintiffs limit the use of these firearms . . . to home protection and target practice," she contends "these weapons would remain in their homes or within their personal property" and thus be protected from unreasonable searches).

[7] *See* Rocah Mem., ECF No. 39 at 7; Nigrelli Mem., ECF No. 42 at 16.

Defendant Rocah's suggestion that Plaintiffs could avoid prosecution by hiding illegal firearms at home misses the point.  Plaintiffs would surely be prosecuted if they ever had to use a banned AR-15 style rifle for home defense, even though they have a constitutional right to do so.  *Heller*, 554 U.S. 570.  Further, Second Amendment rights unquestionably extend beyond the home.  *Bruen*, 142 S. Ct. at 2122.

The "credible threat" of prosecution test is met here.  It is not a formulaic test, but depends on the nature of the risk, and courts are encouraged to consider the penalties plaintiffs have already incurred or would incur should they face prosecution.  *See Hedges*, 724 F.3d at 196 ("[T]he Court has not uniformly required that it be 'literally certain that the harms plaintiffs identify will come about[.]'") (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013)).  Here, Plaintiffs have refrained from possessing "assault weapons" because they fear a felony charge, a severe risk.  Sears Dec. ¶¶ 6–7; Lane Dec. ¶ 6.

In *Hedges*, the Second Circuit followed *Babbit* and *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) to apply a "more permissive standard" for pre-enforcement challenges to unconstitutional criminal statutes.  724 F.3d at 196; *see also Babbitt*, 442 U.S. at 302; *Virginia*, 484 U.S. at 392 ("We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them.").  This is a "forgiving" standard.  *Hedges*, 484 U.S. at 197; *see also Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) ("[T]he 'standard established in *Babbitt* "sets a low threshold and is quite forgiving to plaintiffs seeking such pre-enforcement review."'") (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)).

Applying this lenient standard here, Plaintiffs have shown a credible threat of prosecution.  The Firearms Ban has been stringently enforced, has harsh penalties, a broad

scope, and limited exceptions—evidencing the government's objective to remove "assault weapons" from the hands of citizens.  It necessarily follows that were Plaintiffs to acquire "assault weapons," they would face a real, non-speculative threat of prosecution.

        **a.**    **Defendants consistently and vigorously enforce the Firearms Ban.**

       Defendants are responsible for enforcing the Firearms Ban, and have a track record of doing so.  Defendant Rocah enforces the Ban in Westchester County, where Plaintiffs reside.  *See, e.g.*, *People v. Rivera*, No. 00994-2019, 2021 WL 7627676 (N.Y. Sup. Ct. 2021); *see also Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988).  Defendant Nigrelli has a duty to enforce it state-wide.  N.Y. Exec. Law § 223 ("It shall be the duty of the superintendent of the state police and of members of the state police to prevent and detect crime and apprehend criminals.").  Defendant Nigrelli also has a statutory obligation to maintain a publicly accessible website showing specific firearms outlawed by the Ban.  Penal Law § 400.16(b) ("The superintendent of state police shall create and maintain an internet website to educate the public as to . . . [illegal] assault weapons . . . .").

       Defendants' enforcement of the Firearms Ban is not speculative.  The State Police made multiple arrests for unlawful possession of an "assault weapon" in 2022.  Rotsko Dec. ¶¶ 5–6, Exs. A, B.  Defendant Rocah prosecuted multiple individuals for possession of "assault weapons" in their homes, as recently as May 2023.  *Id.*  ¶¶ 9–11, Exs. D, E.  This robust history of enforcement shows that Plaintiffs face a credible threat of prosecution if they violate the Firearms Ban.  *See Brokamp v. James*, 66 F.4th 374, 388 (2d Cir. 2023) ("That Brokamp would have faced a credible threat of prosecution . . . is evident .

. . from caselaw demonstrating New York's prosecution of persons who practice certain

professions without obtaining required licenses.").[8]

   *Does 1-10 v. Suffolk County* is distinguishable with respect to public statements

forming the basis for the credible threat.  No. 21-1658, 2022 WL 2678876, at *1 (2d Cir.

July 12, 2022) (summary order).  In that case, plaintiffs had been warned a year prior to

bringing suit that they might be subject to prosecution, but no charges materialized.  *Id.*  By

the time plaintiffs brought their action, it was clear that the government did not actually

intend to prosecute.  *Id.* at *3 ("Does do not allege [—] and have not notified this Court or

the district court [—] that any individual Doe has been arrested or had their firearm forcibly

confiscated *for failing to comply with the Suffolk County Police Department's request in the year since

it was made*[.]").  And unlike the Firearms Ban, in *Does 1-10*, it was an open issue whether the

weapons were even illegal.  *Id.*[9]

   The other cases cited by Defendant Nigrelli are likewise unpersuasive.  *See*

Nigrelli Mem., ECF No. 42 at 17–18.  The Violent Crime Control and Law Enforcement

Act of 1994 cases predate *Susan B. Anthony List*, and so apply an incorrect standard for

standing.  *See San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996)

(requiring that plaintiffs be "threatened with arrest"); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132

F.3d 272, 293 (6th Cir. 1997) (requiring an economic harm in addition to abstaining from

---

[8] Plaintiffs need not allege that Defendants—named in their official capacities in this suit—have personally acted to effectuate any constitutional violation.  It is sufficient to "allege a [] policy or custom that played a part in the violation of federal law."  *Smith v. Martuscello*, 602 F. App'x 550, 551 (2d Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  By describing how the Firearms Ban operates and summarizing Defendants' statutory enforcement role, Plaintiffs have done just that.

[9] Moreover, *Does 1-10* has no precedential effect.  United States Court of Appeals for the Second Circuit, Local Rule 32.1.1(a) Disposition by Summary Order. https://www.ca2.uscourts.gov/clerk/case_filing/rules/title7/local_rule_32_1_1.html

prohibited activities out of fear of prosecution).  Importantly, these cases also pre-date *Heller*

and accordingly do not properly assess the intangible injury to an enumerated right.  *See*

*Magaw*, 132 F.3d at 294 ("Plaintiffs do not allege that the law 'chills' because it forces them

to forego constitutionally protected activity in order to avoid becoming enmeshed in a

criminal proceeding.").

      The remaining cases cited by Nigrelli are factually dissimilar.  *See Adam v.*

*Barr*, 792 F. App'x 20 (2d Cir. 2019) (summary order) (no standing for plaintiff who merely

intended "to possess marijuana for his own use," where recreational possession was no

longer prosecuted); *Bellocchio v. Garland*, 614 F. Supp. 3d 11, 18 (S.D.N.Y. 2022) (no

standing where plaintiff failed to plead any facts "relating to the history of enforcement").

Finally, in *Sibley v. Watches*, unlike here, the plaintiff possessed a cane sword in his home

*already*, a Deputy Sheriff took notice of it, and all that resulted was an admonishment that

plaintiff remove a *different* weapon from his home while his firearms permit application was

pending.  501 F. Supp. 3d 210, 222 (W.D.N.Y. 2020) (no credible threat of prosecution).

Here, by contrast, the Firearms Ban has been vigorously enforced.

      **b.**    **Plaintiffs need not be singled out with threats of prosecution;**
          **it is presumed that Defendants will enforce the Firearms Ban**

      Defendants suggest that Plaintiffs must show a particular threat made by a

specific agency.[10]  But it is well established that a plaintiff need not allege that a government

agency ever issued a specific threat; in the pre-enforcement challenge context, a criminal

statute itself supplies the "threat."  *See Ezell*, 651 F.3d at 695–96 ("The very 'existence of a

statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a

---

[10] *See* Nigrelli Mem., ECF No. 42 at 4 ("However, the Complaint alleges no specific threats of prosecution made by the New York State Police.").

probability of future injury counts as "injury" for the purpose of standing.'") (quoting *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010)).

Plaintiffs are further entitled to a presumption that New York officials will enforce the Firearms Ban where, as here, the law is not moribund.  *See Picard*, 42 F.4th at 98 ("[C]ourts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'"); *Silva v. Farrish*, 47 F.4th 78, 88 (2d Cir. 2022) ("The state has not foresworn enforcement of the fishing regulations, and 'courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'") (quoting *Cayuga Nation*, 824 F.3d at 323); *see also Doe v. Bolton*, 410 U.S. 179, 188 (1973) (plaintiffs had "standing despite the fact that . . . [not] one of them ha[d] been prosecuted, or threatened with prosecution"); *Epperson v. Arkansas*, 393 U.S. 97 (1968) (recognizing the right of a school teacher, though not yet criminally charged, to challenge a state statute regulating the teaching of evolution).  Here, the Firearms Ban is only ten years old, Defendants have repeatedly enforced it, and the state has vigorously defended it in court, *e.g.*, *Cuomo*, 804 F.3d 242.  This Court should presume Defendants will continue to enforce it.

Neither Defendant has ever disavowed enforcement.  Rotsko Dec. ¶ 12. "Where a statute specifically proscribes conduct, the law of standing does 'not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it has presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed.'"  *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (quoting *Hedges*, 724 F.3d at 197); *Hedges*, 724 F.3d at 197 n.156 (*citing Holder*, 561 U.S. at 16 (the "Government has not argued to this Court that

plaintiffs will not be prosecuted if they do what they say they wish to do")); *see also Virginia*, 484 U.S. at 393 (the "State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise"); *Babbitt*, 442 U.S. at 302 (justiciable controversy, even though "criminal penalty provision ha[d] not yet been applied and may never be applied . . ." in part because "State has not disavowed any intention of invoking the criminal penalty provision . . .").

 *Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski* is instructive.  No. 21 Civ. 7667 (KPF), 2023 WL 2185901 (S.D.N.Y. Feb. 23, 2023).  There, the court considered the uncontested reality that plaintiff's intended conduct would violate New York law, presumed that New York would enforce its law, acknowledged that the plaintiff was unable to "test the waters" without risking criminal penalty, and held that a credible threat of prosecution existed.  *Id.* at *8 ("Defendants have not overcome the presumption that New York will enforce the Line Warming Ban against Plaintiff.").  Here, Plaintiffs' proposed conduct gives rise to an even greater risk:  the Firearms Ban has been repeatedly enforced, and there is no reason to believe that will change without an injunction.

## POINT II

### NEW YORK'S SEMI-AUTOMATIC RIFLE LICENSING SCHEME IS IRRELEVANT TO PLAINTIFFS' STANDING

**A.**   **Penal Law § 400.00(2) does not apply to "assault weapons"**

 Defendants argue that New York's semi-automatic rifle license scheme defeats Plaintiffs' standing.  It does not.  Whether Plaintiffs obtain the license—Mr. Sears already has—does not dictate this Court's power to redress Plaintiffs' injury from the Firearms Ban.

By its own terms, Penal Law § 400.00(2) does not apply to "assault weapons."  It provides, "[a] license for a semi-automatic rifle, *other than an assault weapon* or disguised gun, shall be issued . . . ."  *Id.* (emphasis added); *Donnino*, McKinney Practice Commentary, Penal Law § 265.65 ("To the extent a 'disguised gun' . . . and an 'assault weapon' . . . may constitute a semiautomatic rifle, they are excluded from the licensing provisions of a semiautomatic rifle, as well as the licensing provisions for a 'pistol or revolver.'").  The licensing statute expressly excludes the AR-15 style rifles Plaintiffs seek.  By including these firearms within the definition of "assault weapons," the legislature singled them out for different treatment compared to semi-automatic rifles generally.  Penal Law § 265.00(22) (defining "assault weapon").

There can be no doubt that New York does not require citizens to have a license under Penal Law § 400.00(2) to purchase or possess an "assault weapon."  This is perfectly understandable, since the state currently bans "assault weapons" altogether.  Penal Law §§ 265.02(7) (possession); 265.17 (purchase).  While the legislature might someday amend Penal Law § 400.00(2) if the Firearms Ban is held unconstitutional (which it is), Plaintiffs need not satisfy hypothetical future amendments to establish their standing now.[11] The semi-automatic rifle license under Penal Law § 400.00(2) is not what prevents Plaintiffs from obtaining the banned firearms they seek—Mr. Sears has the license, but he cannot purchase or possess an LMT MARS-L 5.56 rifle because of Defendants' enforcement of the Firearms Ban.

---

[11] Even though it is assumed for standing analysis that the Firearms Ban is unconstitutional, *Cruz*, 142 S. Ct. at 1647–48; *Doe No. 1*, 344 F. Supp. 3d at 531 n.8, that does not warrant a further assumption that the legislature will amend the licensing scheme.

Defendant Nigrelli tries to escape the plain language of Penal Law § 400.00(2), by contending it would be absurd if "a license would be required to purchase an unmodified semi-automatic rifle, but not required to purchase a far deadlier assault weapon."  Nigrelli Mem., ECF No. 42 at 15.  "[A] statute is not 'absurd' merely because it produces results that a court or litigant finds anomalous or perhaps unwise."  *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019).  "To the contrary, courts should look beyond a statute's text under the canon against absurdity only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone."  *Id.* at 705–06 (internal quotation marks omitted) (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 517 (2d Cir. 2017)).

Given the current statutory backdrop prohibiting "assault weapons," excluding such guns from New York's licensing regime is coherent, not absurd—the license cannot be used to obtain banned guns.  It was rational for the legislature to exclude certain illegal firearms from a licensing regime—to make clear that the license does not supersede the prior ban.  This Court should accordingly decline Defendant Nigrelli's invitation to blue pencil the licensure statute.

**B.    The semi-automatic rifle license does not authorize purchase or possession of "assault weapons", so applying for and obtaining the license has no bearing on the relief Plaintiffs seek.**

**1.    Plaintiff Sears cannot add an "assault weapon" to his semi-automatic rifle license; it would be futile for Plaintiff Lane to try.**

Defendant Nigrelli contends that even if this Court enjoins enforcement of the Firearms Ban, Plaintiffs' injury cannot be redressed, because Plaintiffs did not apply for a

semi-automatic rifle license.  The argument fails, however, not only because "assault weapons" are excluded from the license scheme, but also for the additional reason that attempting to add an "assault weapon" to a semi-automatic license under Penal Law § 400.00(2) would be futile.

Plaintiff Sears applied for his semi-automatic rifle license before commencing this lawsuit, and the state has issued it (a general license not tied to any specific model of firearm).  Sears Dec. ¶¶ 11–12, Ex. A.  But he cannot add an LMT MARS-L 5.56 rifle or any other "assault weapon" to his license, or purchase or possess it under his license, because of the Firearms Ban.  Since a semi-automatic rifle license does not afford Plaintiffs the relief they seek, it is not a jurisdictional bar.

"Under well-established law, a plaintiff may be excused from the threshold standing requirement that he submit to the challenged policy if he 'makes a substantial showing that application for the benefit . . . would have been futile.'"  *Bach v. Pataki*, 289 F. Supp. 2d 217, 223 (N.D.N.Y. 2003) (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)), *aff'd,* 408 F.3d 75 (2d Cir. 2005).  As the Supreme Court put it, "[i]f an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977).  Here, New York has announced a policy of "No Licenses for Assault Weapons" which is apparent from the face of Penal Law § 400.00(2) and the Firearms Ban. It cannot be that a plaintiff lacks standing because he got the message and sued without subjecting himself to certain denial or because, were he to receive the license, he still would be unable to purchase a banned firearm.  *See Carney v. Adams*, 141 S. Ct. 493, 503 (2020);

*Sporhase v. Nebraska, ex rel. Douglas*, 458 U.S. 941, 945 (1982) (failure to submit an application for a permit that "would not have been granted" under governing law did not defeat standing).

It would be futile for Plaintiff Lane to seek a license to allow him to purchase the banned Springfield Armory Saint rifle he seeks (as demonstrated by Plaintiff Sears). As was the case in *Bach*, Plaintiff Lane would have "nothing to gain" by filing an application for a license that cannot in any way move the ball forward with respect to the relief he seeks. *Bach v. Pataki*, 408 F.3d 75, 83 (2d Cir. 2005). The license does not afford either plaintiff the relief they seek, and is unnecessary for standing to challenge the Firearms Ban, which is the actual impediment to exercise of their constitutional rights. *See United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) ("Failure to apply for a license would not preclude *Decastro's* challenge if he made a 'substantial showing' that submitting an application 'would have been futile') (quoting *Bach*, 408 F.3d at 82); *cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977) (sufficient standing to challenge "absolute barrier" to party's objectives, even where other permits might be required); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016); *Putnam Cnty.*, 344 F. Supp. 3d at 530–31. "[I]mposing an application requirement" serves "no purpose" if the plaintiff has "nothing to gain" by "completing and filing an application." *Bach*, 408 F.3d at 83 (quoting, in part, *Bach*, 289 F. Supp. 2d at 223).

The circumstances in this case are analogous to a facial challenge under the First Amendment, where a plaintiff "need not have first sought and been denied any permit prior to filing a facial challenge." *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 374 (2d Cir. 2004). It is well-settled circuit precedent that making

"no effort to apply for a permit . . . does not, of course, deprive [a plaintiff] of standing to assert [that a law] is facially invalid . . . ."  *Charette v. Town of Oyster Bay*, 159 F.3d 749, 757 (2d Cir. 1998) (*citing City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56 (1988); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969)).

### 2.    Penal Law § 265.65 is not an independent "assault weapons" ban.

Any argument that Penal Law § 265.65 is an independent ban on "assault weapons", separate and in addition to the Firearms Ban, should be rejected.  Nigrelli Mem., at 9.  The plain language of Section 265.65 covers purchases by unlicensed persons *as provided for* by Penal Law § 400.  Because Penal Law § 400 does not encompass a license for "assault weapons," Section 265.65 does not either.  *Donnino*, McKinney Practice Commentary, Penal Law § 265.65 ("assault weapons" are "excluded from the licensing provisions of a semiautomatic rifle").  The ban on "assault weapons" comes from the Firearms Ban, and to read Section 265.65 any other way would render the Firearms Ban surplusage.  The canon against surplusage "advises courts to interpret a statute to effectuate all its provisions, 'so that no part will be inoperative or superfluous.'"  *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021) (quoting *Hibbs v. Winn*, 542 U.S. 88, 99 (2004)).  "The canon is at its 'strongest when an interpretation would render superfluous another part of the same statutory scheme.'"  *Id.* (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)).  Any interpretation of Section § 265.65 that would subsume the Firearms Ban should be rejected.[12]

---

[12] Defendant Nigrelli also argues that Penal Law § 400.00(2)'s exemption for assault weapons is necessary because a license that "covered an assault weapon" could "operate to exempt the holder from the assault weapons ban in Penal Law § 265.02, in addition to the other applicable provisions of Penal Law Section 265.20(a)."  Nigrelli Mem., ECF No. 42 at 13 (*citing* Penal Law § 265.20(a)).  But § 265.20(a)(3) merely provides that § 265.02 shall not apply to possession of an assault weapon "as defined in" paragraphs (e) or (f) of Penal Law § 265.00(22)—paragraphs limited to assault weapons possessed prior to September 14, 1994, or

## POINT III

**PLAINTIFFS' INJURIES ARE REDRESSABLE BY ENJOINING ENFORCEMENT
OF THE FIREARMS BAN; AN INJUNCTION WOULD REMOVE THE ABSOLUTE
PROHIBITION ON EXERCISE OF THEIR CONSTITUTIONAL RIGHTS**

Plaintiffs injuries would be redressed by the relief sought here.  "When evaluating redressability, the key question is whether the harm alleged by the plaintiff is *likely* to be alleviated by a ruling in its favor."  *Maldonado v. Morales*, 556 F.3d 1037, 1043 (9th Cir. 2009) (emphasis in original).  Where a constitutional challenge applies with equal force to another law banning the same conduct, a favorable ruling would likely allow the plaintiff to surmount any obstacle that the other law might present.  *Id.* at 1043–43 ("Although the Redwood City ordinance might present another obstacle in Maldonado's path were he to prevail in this litigation, it is one that a favorable ruling here would likely allow him to surmount.  Therefore, the Redwood City Ordinance does not defeat Maldonado's standing to challenge the constitutionality of the COAA."); *see also Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018) ("The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability.").  There can be no legitimate dispute that if this Court enjoins enforcement of the Firearms Ban, Plaintiff Sears can immediately purchase and possess the rifle he seeks.

**A.     Plaintiff Sears has already obtained a semi-automatic rifle license,
        yet remains just as injured by the Firearms Ban as Plaintiff Lane**

Defendant Nigrelli asserts that "Plaintiffs acknowledged in their March 10, 2023 pre-motion letter that they do not hold semi-automatic rifle licenses[.]"  Nigrelli Mem.,

---

prior to the enactment of the Act.  The firearms Plaintiffs intend to possess do not fall within this category; indeed, the weapons Plaintiffs seek to purchase and possess are newly-manufactured, modern rifles.

ECF No. 42 at 8.  Plaintiffs' letter, however, says no such thing; Plaintiffs simply argued

that the license did not apply to the rifles at issue and that the Firearms Ban is an absolute

barrier to acquiring those firearms, which can be challenged independently from the license.

*See* ECF No. 22 at 3.  Plaintiff Sears' semi-automatic rifle license was issued on April 10,

2023.  Sears Dec. ¶¶ 11–12.[13]  Yet, as is the case with his co-plaintiff, the Firearms Ban still

prevents Plaintiff Sears from purchasing or possessing an "assault weapon."  *Id.* ¶ 13.  Even

if a semi-automatic rifle license is held necessary for standing to challenge the Firearms Ban,

Plaintiff Sears still has standing.  "It is well settled that where, as here, multiple parties seek

the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's

case-or-controversy requirement.'"  *Centro de la Comunidad Hispana de Locust Valley v. Town of

Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quoting *Rumsfeld*, 547 U.S. at 52 n.2; *Bolton*,

410 U.S. at 189; *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)).

## <u>POINT IV</u>

### PLAINTIFFS' CLAIMS ARE RIPE

"Standing and ripeness are closely related doctrines that overlap 'most

notably in the shared requirement that the [plaintiff's] injury be imminent rather than

conjectural or hypothetical.'"  *New York C.L. Union v. Grandeau*, 528 F.3d 122, 130 (2d Cir.

2008) (citation omitted)).  Here, "Defendants' arguments as to standing and ripeness are

essentially one and the same:  they argue that there is no credible threat of enforcement and

that Plaintiffs' alleged "failure to obtain semi-automatic rifles licenses" render these claims

unripe.  *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 248 (S.D.N.Y. 2011).  Ripeness should

thus be considered "together with and as a part of the standing inquiry."  *Id.* at 248.  And

---

[13] Not only did Mr. Sears actually apply for the license, but he certainly met the lower "statement of intent" threshold outlined in *Carney*, 141 S. Ct. at 500–502.

"[b]ecause Plaintiffs have sufficiently established an injury-in-fact," their challenge to the

Firearms Ban "is ripe for adjudication at this time."  *Putnam Cnty.*, 344 F. Supp. 3d at 534.

## **CONCLUSION**

For all of these reasons, this Court should deny Defendants' motion to

dismiss.  In the alternative, any dismissal should be without prejudice.

Respectfully submitted this 5th day of June 2023.

| | |
|---|---|
| Cody J. Wisniewski, Esq.* | PHILLIPS LYTLE LLP |
| FPC ACTION FOUNDATION | |
| Attorneys for Plaintiffs | By: /s/ Nicolas J. Rotsko |
| *J. Mark Lane and James Sears* | Nicolas J. Rotsko, Esq. |
| 5550 Painted Mirage Road, Suite 320 | Sam M. Williams, Esq. |
| Las Vegas, Nevada  89149 | Ryan P. Schelwat, Esq. |
| (916) 517-1665 | Attorneys for Plaintiffs |
| cwi@fpchq.org | *J. Mark Lane and James Sears* |
| | One Canalside |
| Adam J. Kraut, Esq.* | 125 Main Street |
| SECOND AMENDMENT | Buffalo, New York  14203-2887 |
| FOUNDATION | Telephone No. (716) 847-8400 |
| Attorneys for Plaintiffs | nrotsko@phillipslytle.com |
| *J. Mark Lane and James Sears* | swilliams@phillipslytle.com |
| 12500 NE 10th Place | rschelwat@phillipslytle.com |
| Bellevue, Washington  98005 | |
| 1-800-426-4302 | |
| akraut@saf.org | |

*Admitted *pro hac vice*

Doc #11133355