UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
　:
J. MARK LANE and JAMES SEARS,　　　　　　　　:
　:
　　　　　　　　　　Plaintiffs,　　　　　　　　　　　:
　:
　　　　　　- against -　　　　　　　　　　　　　　　　:
　:　　Case No. 22 Civ. 10989 (KMK)
STEVEN A. NIGRELLI, in his official capacity　　:
as Acting Superintendent of the New York State　:
Police, and MIRIAM E. ROCAH, in her official　 :　**ORAL ARGUMENT REQUESTED**
capacity as District Attorney for the County of　:
Westchester, New York,　　　　　　　　　　　　　:
　:
　　　　　　　　　Defendants.　　　　　　　　　　　:
-------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SUPERINTENDENT NIGRELLI'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

　　　　　　　　　　　　　　　　　　　　　　　LETITIA JAMES
　　　　　　　　　　　　　　　　　　　　　　　Attorney General
　　　　　　　　　　　　　　　　　　　　　　　State of New York
　　　　　　　　　　　　　　　　　　　　　　　*Attorney for Superintendent Nigrelli*
　　　　　　　　　　　　　　　　　　　　　　　28 Liberty Street
　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10005
　　　　　　　　　　　　　　　　　　　　　　　(212) 416-6295

Suzanna Publicker Mettham
Brenda Cooke
James M. Thompson
Yuval Rubinstein
Assistant Attorneys General
　　*Of Counsel*

Dated:　June 20, 2023

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................2

I. PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS...................................2

   A. The Semiautomatic Rifle Licensing Requirement Applies to Assault Weapons ................2

   B. Plaintiff Sears's Subsequent Licensure Does Not Change the Analysis Because Standing Is Determined at the Time a Suit Is Commenced .................................................5

   C. Applying for a License Is Not Futile ................................................................................7

   D. Plaintiffs Lack Standing to Assert—and Have Not Pleaded—a Market Elimination Theory .................................................................................................................................7

II. PLAINTIFFS HAVE STILL FAILED TO ESTABLISH A CREDIBLE AND PARTICULARIZED THREAT OF CRIMINAL PROSECUTION ..................................8

III. PLAINTIFFS' CLAIMS REMAIN UNRIPE........................................................................9

CONCLUSION..........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                             **Page(s)**

*Adam v. Barr*,
    792 F. App'x 20 (2d Cir. 2019) .................................................................................................. 9

*Borough of Upper Saddle River, N.J. v. Rockland Cnty. Sewer Dist. #1*,
    16 F.Supp.3d 294 (S.D.N.Y. 2014) ............................................................................................ 5

*Brokamp v. James*,
    66 F.4th 374 (2d Cir. 2023) ....................................................................................................... 9

*Brooklyn Branch of NAACP v. Kosinski*,
    No. 21 Civ. 7667, 2023 WL 2185901 (S.D.N.Y. Feb. 23, 2023) ................................................ 9

*Carney v. Adams*,
    141 S.Ct. 493 (2020) .................................................................................................................. 5

*City of Hartford v. Towns of Glastonbury*,
    561 F.2d 1042 (2d Cir. 1977) ................................................................................................ 5, 6

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
    879 F.3d 462 (2d Cir. 2018) ...................................................................................................... 4

*Davis v. Fed. Election Comm'n*,
    128 S. Ct. 2759 (2008) ............................................................................................................... 5

*Does 1-10 v. Suffolk Cnty., N.Y.*,
    No. 21-1658, 2022 WL 2678876 (2d Cir. July 12, 2022) .......................................................... 9

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ..................................................................................................... 9

*Frontseat, LLC v. Stern, Tr. of Estate of 150 Fulton Prop., Inc.*,
    No. 18 Civ. 2208, 2020 WL 1933442 (E.D.N.Y. May 31, 2020) .............................................. 4

*Frey v. Nigrelli*,
    No. 21 Civ. 5334, 2023 WL 2473375 (S.D.N.Y. Mar. 13, 2023) .............................................. 6

*Garcia v. Garland*,
    64 F.4th 62 (2d Cir. 2023) ......................................................................................................... 3

*Gazzola v. Hochul*,
    __ F.Supp.3d __, 2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022) ............................................... 3

*Gibbons v. Bristol-Myers Squibb Co.*,
    919 F.3d 699 (2d Cir. 2019) ...................................................................................................... 5

*Hedges v. Obama*,
    724 F.3d 170 (2d Cir. 2013) .................................................................................................... 9

*Jingrong v. Chinese Anti-Cult World Alliance Inc.*,
    16 F. 4th 47 (2d Cir. 2021) ...................................................................................................... 4

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F.Supp. 222 (S.D.N.Y. 1989) ........................................................................................... 7

*Otrompke v. First Dep't Cmte. on Character & Fitness*,
    No. 20-4107, 2021 WL 5764221 (2d Cir. Dec. 6, 2021) .......................................................... 5

*Panjiva, Inc. v. CBP*,
    975 F.3d 171 (2d Cir. 2020) .................................................................................................... 4

*Picard v. Magliano*,
    42 F.4th 89 (2d Cir. 2022) ....................................................................................................... 9

*Second Amend. Arms v. City of Chicago*,
    135 F.Supp.3d 743 (N.D. Ill. 2015) ......................................................................................... 7

*Sharehold Representative Servs. LLC v. Sandoz Inc.*,
    No. 12 Civ. 6154, 2013 WL 4015901 (S.D.N.Y. Aug. 7, 2013) .............................................. 5

*Silva v. Farrish*,
    47 F.4th 78 (2d Cir. 2022) ....................................................................................................... 9

*Tweed-New Haven Airport Auth. v. Tong*,
    930 F.3d 65 (2d Cir. 2019) ...................................................................................................... 9

*Urso v. Mohammad*,
    No. 20 Civ. 674, 2023 WL 2456702, (D. Conn. Mar. 10, 2023) ............................................. 9

*U.S. v. Venturella*,
    391 F.3d 120 (2d Cir. 2004) .................................................................................................... 4

**N.Y. PENAL LAW**

    § 265.02 .............................................................................................................................. 3, 4
    § 265.17 .............................................................................................................................. 7, 8
    § 265.65 .............................................................................................................................. 3, 4
    § 400.00(2) ......................................................................................................................... 2, 3

**FEDERAL RULES OF CIVIL PROCEDURE**

    Rule 12(b)(1) .......................................................................................................................... 1

Defendant Steven A. Nigrelli, Acting Superintendent of the New York State Police ("Superintendent Nigrelli"), by his attorney, Letitia James, Attorney General of the State of New York, respectfully submits this reply memorandum of law, along with the declaration of New York State Police ("NYSP") Deputy Counsel Michael W. Deyo, dated June 15, 2023, ("Deyo Decl."), in further support of his motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs J. Mark Lane and James Sears ("Plaintiffs") lack standing to assert their claims in this lawsuit, and in their Opposition ("Opp.") they have not provided, nor could they, any basis for the Court to find otherwise when their opposition concedes that neither Plaintiff possessed a semiautomatic rifle license at the time the litigation was commenced. That Plaintiff Sears was issued a semiautomatic rifle license on April 10, 2023—a fact disclosed for the first time in their Opposition[1]—cannot cure the fatal flaw that Plaintiffs did not have the requisite standing *at the time the suit was filed*.

In likely recognition of this terminal circumstance, Plaintiffs spend the bulk of their Opposition attempting to otherwise manufacture standing to challenge New York's prohibition of assault weapons through contradictory, selectively self-serving and absurd interpretations of the New York Penal Law, which rely on convoluted theories contradicted by the text of the law and bedrock principles of statutory interpretation. In addition, while Plaintiffs' effort to rely on a market elimination theory argument articulated for the first time in their Opposition fails due to

---

[1] Defendants raised the precise issue of Plaintiffs' licensure in their pre-motion conference letter dated March 3, 2023, though Plaintiffs waited until *after* the filing of Defendants' Motion to Dismiss, over two months later, to mention that Plaintiff Sears had applied for—and very recently received—a semiautomatic rifle license. The purpose of pre-motion conference memoranda to properly distill the issues for motion practice. Pursuant to the Court's Individual Rule II(A), Plaintiffs' failure to properly utilize the pre-motion conference procedure should lead to a dismissal with prejudice.

1

Plaintiffs' lack of standing to assert the argument, it should otherwise be independently disregarded and disallowed as the argument is not rooted in any plausible interpretation of allegations made in their Complaint.

Simply put, when considering the facts and circumstances at the time of the filing of their Complaint and the text of the Penal Law, it is clear that Plaintiffs have not offered any viable arguments sufficient to defeat Superintendent Nigrelli's motion to dismiss.

## ARGUMENT

**I.   PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS**

### A.  The Semiautomatic Rifle Licensing Requirement Applies to Assault Weapons

As Superintendent Nigrelli demonstrated in his moving brief ("MTD"), New York's law requiring a license to purchase a semiautomatic rifle was a separate and complete bar to the Plaintiffs obtaining the assault rifles they seek, meaning that their inability to buy assault rifles was neither traceable to the ban on assault weapons nor redressable by a decision against it. *See* MTD at 7-15. Plaintiffs respond that "New York does not require citizens to have a license under Penal Law § 400.00(2) to purchase or possess an assault weapon," Opp. at 18, but this assertion is contradicted by the text of the Penal Law and by bedrock principles of statutory interpretation.

#### 1.  The Statute's Plain Text Contradicts Plaintiffs' Interpretation

First, Plaintiffs' interpretation is contradicted by the plain language of the statute. As explained in the Superintendent's moving brief, "the relevant portion of N.Y. Penal Law § 400.00(2) does not describe the kind of rifles for which a license is required, but rather the kind of rifles for which a license 'shall be issued.'  The subject of the sentence is not the purchaser or his ability to buy a rifle, but rather the government and its ability to issue a license." MTD at 11. Put another way, the statute "does not exempt assault weapons from the licensing requirement. Instead, it underscores the principle that no license may be issued for banned weapons." *Id.* at 12.

2

Plaintiffs do not seriously engage with this straightforward reading of the text, instead simply asserting that "[t]here can be no doubt" their preferred interpretation is correct. Opp. at 18. Plaintiffs acknowledge that "[t]he licensing statute expressly excludes the AR-15 style rifles Plaintiffs seek," *id.*, but nowhere do they grapple with the fact that a statute saying that a license is *unobtainable* does not mean that a license is *not required*.

### 2. Plaintiffs' Interpretation Is Contradicted by the Statutory Context of the Penal Law as a Whole

Plaintiffs also fail to address the statutory context of Penal Law § 400.00(2), which contradicts their interpretation, as discussed in the Superintendent's moving brief. MTD at 12-14. New York has an entirely separate statute, Penal Law § 265.65, which "provides the criminal penalties for failing to adhere to the semi-automatic rifle licensing requirements," *Gazzola v. Hochul*, __ F.Supp.3d __, 2022 WL 17485810, at *17 n.42 (N.D.N.Y. Dec. 7, 2022), and applies to any "semiautomatic rifle" without restriction, containing no exception for assault weapons. Plaintiffs respond by asking the Court to implicitly read such an exception into Section 265.65, contending that without such an implicit exception the statute would duplicate New York's ban on possession of assault weapons in statutes like Penal Law § 265.02(7), and therefore amount to "surplusage."  Opp. at 22. But the two statutes are manifestly different: Section 265.02(7) establishes liability when a person "possesses an assault weapon," while Section 265.65 provides liability when a person "purchases or takes possession" of *any* "semiautomatic rifle," including an assault weapon, *without a license*. The canon against surplusage is not a basis to limit one part of the Penal Law by subsuming it into the other – instead it "requires [courts] to 'give effect, if possible, to every clause and word of a statute,'" meaning that in this context the prohibition on assault weapons possession in Section 265.02(7) and the prohibition on unlicensed acquisition of any semiautomatic rifle in Section 265.65 must be given their separate effect. *Garcia v. Garland*,

3

64 F.4th 62, 72 (2d Cir. 2023) (quoting *Panjiva, Inc. v. CBP*, 975 F.3d 171, 178 (2d Cir. 2020)). And because the two prohibitions function separately, even if Section 265.02(7) were to be struck down, Section 265.65 would nonetheless prohibit Plaintiffs from possessing an assault weapon without a license.

### 3. Plaintiffs' Interpretation Contradicts the Legislature's Purpose

Plaintiffs' opposition also fails to address the Superintendent's argument that courts "must construct an interpretation that comports with the statute's primary purpose" and that statutory interpretation must be conducted in a way that is consistent with "the general purpose and manifest policy intended to be promoted." MTD at 14 (quoting *Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F.4th 47, 58 (2d Cir. 2021), and *Frontseat, LLC v. Stern, Tr. of Estate of 150 Fulton Prop., Inc.*, No. 18 Civ. 2208, 2020 WL 1933442, at *5 (E.D.N.Y. May 31, 2020)). Plaintiffs do not dispute that the New York State Legislature enacted the semiautomatic rifle license requirement to close the loophole utilized by the Buffalo shooter, whose unlicensed purchase of an AR-15 style rifle (and later modification of that rifle into an assault weapon) led to the murder of ten innocents and the wounding of three more. It would not effectuate the Legislature's purpose for the Court to interpret the licensing law as applicable to the weapon the shooter lawfully purchased, but inapplicable to the weapon he used to commit mass murder.

### 4. Plaintiffs' Interpretation Leads to Absurd Results

That brings us to the well-established requirement that "[a] statute should be interpreted in a way that avoids absurd results." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018) (quoting *United States v. Venturella*, 391 F.3d 120, 126 (2d Cir. 2004)). As the Superintendent argued, Plaintiffs' interpretation would result in "a bizarre framework where public safety protections become weaker as a weapon becomes deadlier." MTD at 15. Plaintiffs do not dispute that this is the effect of their preferred interpretation, *see* Opp. at 19, but simply contend

4

that this result is "not absurd," explaining that in their view the Legislature intended to make sure that "the license cannot be used to obtain banned guns," and wished to communicate "that the license does not supersede the prior ban." *Id.* Leaving aside the fact that this argument supports the Superintendent's interpretation of the statute rather than the Plaintiffs' own, *see* Sections I(A)(1) & I(A)(2), above (explaining that the Penal Law does not exempt assault weapons from the licensing requirement, but rather establishes that no license may be issued for banned weapons and no weapon may be obtained without a license), it does nothing to contradict the fact that a licensing law that applies to regular rifles, but not far deadlier assault rifles, is an interpretation "where the alleged absurdity is so clear as to be obvious to most anyone." Opp. at 19 (quoting *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019)).

### B. Plaintiff Sears' Subsequent Licensure Does Not Change the Analysis Because Standing is Determined at the Time a Suit Is Commenced

Plaintiff Sears recently obtained a semiautomatic rifle license, but the Complaint nonetheless fails as a matter of law because standing is determined at the time the action was commenced. *See, e.g.*, *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (noting that the plaintiff bore the burden of establishing standing at the time the case was filed and brought before the court); *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2763 (2008) (for the party invoking jurisdiction to have standing, they must have a redressable personal interest that exists at the start of the case); *Otrompke v. First Dep't Cmte. on Character & Fitness*, No. 20-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) (summary order). Commencement of an action is defined as the date the complaint is filed. *See Borough of Upper Saddle River, N.J. v. Rockland Cnty. Sewer Dist. #1*, 16 F.Supp.3d 294, 318 (S.D.N.Y. 2014). Thus, courts consider whether the party invoking jurisdiction had the "requisite stake in the outcome when the suit was filed." *Davis*, 128 S. Ct. at 2768.

Standing cannot be established through later developments or be cured in future amended complaints. *See City of Hartford v. Towns of Glastonbury*, 561 F.2d 1042 (2d Cir. 1977) (en banc); *Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12 Civ. 6154, 2013 WL 4015901, at *7-*8 (S.D.N.Y. Aug. 7, 2013). As the Second Circuit has warned, "[e]vents occurring after the filing of the complaint cannot operate so as to create standing where none previously existed. Any other rule would permit lawsuits to be maintained in the mere hope that the lawsuit itself would generate a constitutional 'controversy' before the appellate process is complete." *City of Hartford*, 561 F.2d at 1051 n.3.

It is undisputed that the Complaint does not allege that either Plaintiff held a valid semiautomatic rifle license, because Plaintiffs have since conceded that neither Plaintiff held a semiautomatic rifle at that time.[2] "New York maintains a general prohibition on the possession of firearms without a license." *Frey v. Nigrelli*, No. 21 Civ. 5334, 2023 WL 2473375, at *1 (S.D.N.Y. Mar. 13, 2023) (citing N.Y. Penal Law §§ 265.01–04; 265.20(a)(3)). Plaintiffs' lack of licenses at the time the Complaint was filed undermines two of the three elements that constitute the constitutional minimum of standing—traceability and redressability. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). Moreover, it was Plaintiffs' burden to plead all three of the required elements of standing. *Id.*

Because, at the time Plaintiffs filed the instant action, their alleged injuries were not fairly traceable to the statutes they challenge, and because even success could not address those injuries, the Complaint must be dismissed for lack of standing.

---

[2] While Plaintiff Sears's semiautomatic rifle license was issued to him by the County of Westchester on April 10, 2023, this information was not uploaded to the New York State Semiautomatic Rifle Database until on or about May 10, 2023, a week after Defendants' Motions to Dismiss were due to be filed. *See* Deyo Decl. dated June 15, 2023.

### C. Applying for a License Is Not Futile

Plaintiffs argue that they should be excused from the "threshold standing requirement" based on a finding of futility, Opp. at 20, but their argument is confused as to what action the futility requirement applies to. They argue that "attempting to add an 'assault weapon' to a semi-automatic license . . . would be futile," *id.*, but it is *the failure to obtain a license in the first place*, not the failure to add an assault weapon to a license, that deprived them of standing. *See* MTD at 9 (asserting that "Plaintiffs' lack of licensure is therefore a separate and complete bar to the relief they seek" and collecting cases, none of which Plaintiffs' brief responds to). Applying for a semiautomatic rifle license is manifestly not futile, as Plaintiff Sears appears to have obtained one.

### D. Plaintiffs Lack Standing to Assert—and Have Not Pleaded—a Market Elimination Theory

As would-be consumers, Plaintiffs also lack standing to assert the argument—articulated for the first time in their Opposition—that they are injured based on the "eliminati[on of] the legal market for AR-15 style rifles." Opp. at 9.

To begin with, Plaintiffs' Complaint, on which their standing is premised, contains no allegations about this dry-up-the-market theory. *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Nor does the Complaint include facts regarding the availability of AR-15 style rifles in the market. Instead, Plaintiffs merely allege that they each have a specific make and model of gun that they would prefer to purchase, but have not because it is prohibited. Compl. at ¶¶ 39–40. Moreover, Plaintiffs do not allege in their Complaint or Opposition that they are vendors or commercial importers of firearms that are banned in New York State. As a result, their reliance on cases from other Circuits, where firearms dealers were able to establish

associational standing on behalf of themselves and their consumers, is misplaced. *See, e.g.*, *Second Amend. Arms v. City of Chicago*, 135 F.Supp.3d 743, 751 (N.D. Ill. 2015).

More significantly—and assuming, *arguendo*, that they hold the appropriate licenses—Plaintiffs are not prohibited from purchasing firearms, including semiautomatic rifles, and thus lack standing because they have not been injured by Penal Law § 265.17. There is no "Firearms Ban"—as Plaintiff Sears's own gun license shows, he already owns two and is licensed to carry a semiautomatic rifle. Plaintiffs are not prohibited from purchasing semiautomatic rifles with detachable magazines, including AR-15 style rifles. Models by the two brands sought by Plaintiffs—Springfield and LMT—are sold in New York. Plaintiffs are also not prohibited from purchasing accoutrement, including telescoping handles, telescoping stocks, pistol grips, and muzzle devices. There is simply a ban on a single weapon containing accoutrement sought by Plaintiffs *in the same model at the same time*.

In sum, Plaintiffs did not—and cannot—plead that the impact of Section 265.17 on the market at large has injured them in any manner sufficient to confer standing to bring the instant action.

**II. PLAINTIFFS HAVE STILL FAILED TO ESTABLISH A CREDIBLE AND PARTICULARIZED THREAT OF CRIMINAL PROSECUTION**

Plaintiffs assert that they need not allege a "specific threat" of criminal enforcement by a government agency to establish standing. Opp. at 15. In support, they point to NYSP's recent arrests of individuals for possessing semiautomatic firearms prohibited under State law. *Id.* at 13. Plaintiffs infer that, based upon these recent arrests, they are "entitled to a presumption that New York officials will enforce the Firearms Ban where, as here, the law is not moribund." *Id.* at 16.

The Second Circuit, however, recently held that this "presumption, in and of itself, is not sufficient to confer standing, as courts also consider the extent of that enforcement in determining

whether a credible threat of prosecution exists." *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019). *Adam* cited to recent Supreme Court and Second Circuit decisions in which a government agency had previously enforced the challenged prohibition against the plaintiffs, or threatened to do so. *Id.* Plaintiffs have therefore failed to bridge the critical gap between a *general* presumption of enforcement and a more particularized threat of enforcement against themselves that is necessary to confer standing.[3] Even if Plaintiffs had been specifically threatened with prosecution by NYSP, that alone does not necessarily establish standing. *See Does 1-10 v. Suffolk Cnty.*, N.Y., No. 21-1658, 2022 WL 2678876 (2d Cir. July 12, 2022) (summary order).[4]

## III.   PLAINTIFFS' CLAIMS REMAIN UNRIPE

Plaintiffs only briefly address the Superintendent's ripeness argument, and contend that ripeness should be considered part of the standing inquiry. Opp. at 24-25. To the extent that ripeness and standing overlap, Plaintiffs' claims are unripe for the reasons set forth above. In

---

[3] Plaintiffs primarily rely upon *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011), in which "[t]he City did not question the individual plaintiffs' standing[.]" *Ezell* thus had no occasion to consider whether a particularized threat of prosecution was necessary. Indeed, the presence or absence of a particularized threat was a key factor in each Second Circuit decision Plaintiffs cite. *See Brokamp v. James*, 66 F.4th 374, 388 (2d Cir. 2023) (credible threat of prosecution based upon "explicit communication to [plaintiff] that she could not lawfully continue unlicensed mental health counseling of New York residents after expiration of [the] Executive Order"); *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (noting that "[e]ach plaintiff has already been subject to fines and enforcement proceedings for violating the fishing regulations"); *Picard v. Magliano*, 42 F.4th 89, 100 (2d Cir. 2022) ("perhaps the most significant piece of evidence in [plaintiff's] favor–and what makes [plaintiff's] case stand out from other pre-enforcement challenges–is that he has *already* been arrested for his jury nullification advocacy prior to initiating this lawsuit") (emphasis in original); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (injury-in-fact established where the "Runway Statute directly targets [plaintiff] and prevents it from extending its runway"); *Hedges v. Obama*, 724 F.3d 170, 202 (2d Cir. 2013) (plaintiffs failed to "adduce[ ] any evidence that the government intends or has threatened to place them in military detention"). In *Brooklyn Branch of NAACP v. Kosinski*, No. 21 Civ. 7667, 2023 WL 2185901, at *8 (S.D.N.Y. Feb. 23, 2023), the Court excused the plaintiff from alleging the "state actually threatened it with prosecution" because the challenged statute was moribund, and the plaintiff thus "had little opportunity to test the waters." Plaintiffs cannot have it both ways by relying upon the general presumption of enforcement of *non*-moribund statutes, while also deeming "instructive" a decision involving a moribund statute.

[4] Plaintiffs claim that *Does* is inapposite because "it was clear that the government did not actually intend to prosecute" by the time the plaintiffs filed the lawsuit. Opp. at 14. But, if a warning letter followed by a non-prosecution fails to establish a credible threat of prosecution, as in *Does*, then Plaintiffs' assertion of standing is even weaker, as they have not received any warning at all from NYSP, let alone a decision on whether to prosecute. *See also Urso v. Mohammad*, No. 20 Civ. 674, 2023 WL 2456702, at *11 (D. Conn. Mar. 10, 2023) (finding no credible threat of prosecution).

particular, neither Plaintiff has been subject to a specific threat of criminal enforcement, and Plaintiffs have failed to sufficiently allege that any such threat is forthcoming in the immediate future. Additionally, Plaintiff Lane has concededly failed to even apply for a New York state firearms license. Because Lane's standing is contingent upon the future issuance of a firearms license, the Court should refrain from addressing this unripe Second Amendment claim.

## CONCLUSION

For the foregoing reasons, Superintendent Nigrelli respectfully requests that the Court dismiss the Complaint, with prejudice, together with such other relief as the Court may award.

Dated: New York, New York
June 20, 2023

Respectfully submitted,
LETITIA JAMES
Attorney General
State of New York
*Attorney for Superintendent Nigrelli*

By:

*S.Mettham*
Suzanna Publicker Mettham
Brenda Cooke
James M. Thompson
Yuval Rubinstein
*Assistant Attorneys General*
28 Liberty Street
New York, New York 10005
suzanna.mettham@ag.ny.gov
brenda.cooke@ag.ny.gov
james.thompson@ag.ny.gov
yuval.rubinstein@ag.ny.gov