

**Phillips Lytle LLP**

**Via CMECF**
Hon. Kenneth M. Karas                                                July 7, 2023
United States District Court
for the Southern District of New York
The Hon. Charles L. Brieant Jr. Federal Building
and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:   *Lane, et al. v. Nigrelli, et al.*, Case No.: 7:22-cv-10989 (KMK)

Dear Judge Karas:

We represent Plaintiffs J. Mark Lane and James Sears in this matter, and respond to the letters submitted on June 29, 2023 (Dkts. 50, 51) by Defendants Steven Nigrelli, Acting Superintendent of the New York State Police, and Miriam Rocah, Westchester County District Attorney.

Defendants' June 29 letters concern the impact of the Second Circuit's recent decision in *Vitagliano v. County of Westchester*, 2023 WL 4095164 (2d Cir. June 21, 2023), on their claim that Plaintiffs lack standing. Defendants acknowledge that *Vitagliano* confirms Plaintiffs' position that a specific threat or past enforcement against Plaintiffs is unnecessary for pre-enforcement injury-in-fact, and that *Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019), is distinguishable from this case, as Plaintiffs contended all along. Dkt. 50, at 1; Dkt. 51, at 1. Significant as these concessions are, Defendants somehow claim that *Vitagliano* has no other impact on this Court's standing analysis, and continue to mistakenly assert that Plaintiffs lack standing. This letter highlights additional respects in which *Vitagliano* confirms and reinforces Plaintiffs' standing to challenge the Firearms Ban.[1]

---

[1] Defined terms are used as in Plaintiffs' Memorandum of Law, dated June 5, 2023, Dkt. 46 ("Pls.' Opp.").

ATTORNEYS AT LAW
―――――――
NICOLAS J. ROTSKO   PARTNER   DIRECT 716 847 5467   NROTSKO@PHILLIPSLYTLE.COM
―――――――
ONE CANALSIDE 125 MAIN STREET BUFFALO, NEW YORK 14203-2887 PHONE (716) 847-8400 FAX (716) 852-6100 | PHILLIPSLYTLE.COM
NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | CHICAGO, IL | WASHINGTON, DC | CANADA: WATERLOO REGION



Hon. Kenneth M. Karas  July 7, 2023
Page 2

### I.  *Vitagliano* confirms Plaintiffs suffered an injury-in-fact.

As here, *Vitagliano* involved a pre-enforcement challenge by a plaintiff who desired to engage in conduct prohibited by statute.  2023 WL 4095164, at *3.  The Second Circuit confirmed that the "pre-enforcement injury-in-fact test" has three prongs: "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and (3) that 'there exists a credible threat of prosecution thereunder.'"  *Id.* at *5 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).  The *Vitagliano* court applied the same key Second Circuit and Supreme Court precedents that Plaintiffs relied on here to demonstrate that they too meet the "pre-enforcement injury-in-fact test."  *Compare Vitagliano*, 2023 WL 4095164, at *4-6 (applying *Susan B. Anthony List*, 573 U.S. at 157- 159, 162, 164; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022); *Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016); *Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022); *Knife Rts., Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015); and *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65 (2d Cir. 2019)), *with* Pls.' Opp. (Dkt. 46), at 8–17.  As in *Vitagliano*, all three prongs are met here.

#### A.  Keeping and bearing arms is "affected with a constitutional interest" because the Second Amendment protects that conduct.

Although Defendants now concede that Plaintiffs meet the third prong of the pre-enforcement injury-in-fact test, and they do not dispute the second prong, Defendant Rocah appears to argue that Plaintiffs have not met the first prong.  First, she suggests that possessing banned rifles is somehow not affected with a constitutional interest, because the Second Circuit previously upheld the Firearms Ban under intermediate scrutiny.  Dkt. 51, at 2 (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015)).  Setting aside that subsequently in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2125–31 (2022), the Supreme Court rejected application of intermediate scrutiny in Second Amendment challenges, even the Second Circuit in *Cuomo* acknowledged that the Firearms Ban "implicate[s] the core of the Second Amendment's protections . . . ."  804 F.3d at 258.  After all, the Second Amendment protects the right of law abiding citizens to keep and bear arms for defensive and other lawful purposes, which is what Plaintiffs seek to do here.  Compl. ¶¶ 1, 39–40.  This course of conduct is affected with a constitutional interest.



Hon. Kenneth M. Karas  July 7, 2023
Page 3

### B.  Plaintiffs' intentions are sufficiently concrete for standing.

Second, Defendant Rocah continues to mischaracterize Plaintiff's desire to own modern rifles outlawed by the Firearms Ban as mere "some-day" intentions, lacking concreteness.  Dkt. 51, at 1.  *Vitagliano* confirms, however, that Plaintiffs have alleged sufficiently detailed facts "to establish" their "earnest desire" to purchase the rifles "but for" the Firearms Ban.  2023 WL 4095164, at *5-6 (citing *Silva*, 47 F.4th at 87; *Picard*, 42 F.4th at 95, 97-101; *Susan B. Anthony List*, 573 U.S. at 159).  Plaintiffs have identified:  (1) the specific models they would purchase but for the Firearms Ban (Springfield Armory Saint; LMT MARS-L 5.56); (2) the specific features of those rifles that render them illegal (detachable magazines, telescoping stocks, pistol grips, and muzzle devices); and (3) the specific purposes for which Plaintiffs would use the rifles (defense of self and others; target shooting).  Compl. ¶¶ 39–40; Lane Decl. ¶¶ 3–6; Sears Decl. ¶¶ 3–7.  Purchasing a gun is not a complex task.  It is hard to imagine what additional detail Plaintiffs could have included to further show they really want to buy these guns.

Defendant Rocah now asserts (in a conclusory fashion) that Plaintiffs lack the training to use these rifles.  Dkt. 51, at 2.  But she points to no New York State training requirement to possess legal semi-automatic rifles (there is no such requirement), and she ignores that Plaintiff Sears completed the firearms training required for his pistol permit prior to commencing this action.  Sears Decl. ¶¶ 11, 12 (Sears' unrestricted concealed carry permit approved); *cf.* Penal Law § 400.00(19) (requiring completion of mandatory training hours before issuance of unrestricted concealed carry permit).

Further, Plaintiffs explained that they would already have purchased the rifles but for the Firearms Ban, and would proceed to do so if enforcement is enjoined, *i.e.*, their intentions are yesterday, today, and tomorrow intentions, not remote or speculative.  Compl. ¶¶ 39–40; Lane Decl. ¶¶ 7–8; Sears Decl. ¶¶ 8–9, 14.  As the Second Circuit made clear in *Vitagliano*, "a plaintiff asserting a pre-enforcement challenge need only allege 'an intention to engage in a course of conduct,' which does not necessarily require specification of the date and time she plans to do something of constitutional significance."  2023 WL 4095164, *5 (citing *Picard*, 42 F.4th at 97; *Susan B. Anthony List*,



Hon. Kenneth M. Karas  July 7, 2023
Page 4

573 U.S. at 159).  Plaintiffs have provided ample detail to meet all three prongs of the pre-enforcement injury-in-fact test.[2]

## II. Plaintiffs' injuries are fairly traceable to the Firearms Ban, and can be redressed by enjoining its enforcement.

Although Defendants now make key concessions about injury-in-fact, they continue to emphasize that the state had not yet issued semi-automatic rifle licenses to Plaintiffs when the complaint was filed, as if it were a "gotcha" moment on redressability.  Dkt. 50, at 1; Dkt. 51, at 2.  It is not, which *Vitagliano* reinforces.  Plaintiff Sears has received his semi-automatic rifle license, and still cannot purchase an LMT MARS-L 5.56 rifle, which demonstrates that the Firearms Ban is the key impediment.  Pls.' Opp. (Dkt. 46), at 6, 21, 24.  Plaintiffs' injuries will be redressed by enjoining enforcement of the Firearms Ban.  *Id.* at 23–24.

Even assuming *arguendo* that New York State's semi-automatic rifle licensing scheme is an "absolute barrier" independent of the Firearms Ban, this would not defeat Plaintiffs' standing for at least two reasons.  First, as explained in Plaintiffs' opposition brief, a plaintiff need not eliminate all other barriers before it has standing to challenge one of them.  *Id.* at 21, 23.  Each barrier imposes its own injury, which is remedied by removing the barrier.  *Id.*  Plaintiffs can challenge the Firearms Ban, even if there are other steps they need to take before fulfilling their ultimate goal of purchasing modern rifles.[3]

Second, *Vitagliano* reinforces that Plaintiffs' standing is not dependent on whether they had the license on the day the complaint was filed.  This is true, *even if* it is assumed that an unlicensed citizen cannot be injured by the Firearms Ban.  *Vitagliano* confirmed that "[a]n allegation of *future* injury may suffice if the threatened injury is

---

[2] In addition to meeting this three-prong test, Plaintiffs have also suffered an intangible injury due to the prohibition on exercise of their constitutional rights, and the corresponding injury from elimination of the legal market for these rifles in New York State.  Pls.' Opp. (Dkt. 46), at 1-2, 7-10.

[3] The plain language of the semi-automatic rifle license statute expressly does not apply to "assault weapons."  Pls.' Opp. (Dkt. 46), at 18-19.  Plaintiffs dispute that the current licensing scheme encompasses the banned rifles they wish to acquire.  This Court need not reach that question to find standing, however, because Plaintiffs can independently challenge each impediment to their desired course of conduct, and in any event Plaintiff Sears has the semi-automatic rifle license.



Hon. Kenneth M. Karas  July 7, 2023
Page 5

'certainly impending' or there is a 'substantial risk' that the harm will occur." 2023 WL 4095164, at * 5 (quoting *Clapper*, 568 U.S. at 409, 414 n.5) (emphasis added). When the complaint was filed, Plaintiff Sears' application for a semi-automatic rifle license was fully submitted. Sears Decl. ¶ 11. His license was issued on April 10, 2023, when this case was still in its infancy. *Id.* ¶ 12, Ex. A. Even if this Court concludes that Plaintiff Sears was not injured by the Firearms Ban until he obtained his license on April 10, 2023, *Vitagliano* makes clear that this future injury was sufficient for standing. Issuance of Sears' license was "certainly impending," or at the very least, he was likely to receive the "shall issue" license, so he faced a "substantial risk" that the Firearms Ban would injure him. *Vitagliano*, 2023 WL 4095164, at * 5. There can be no legitimate doubt that Plaintiff Sears has standing, given that his license application was pending when the suit was commenced, and the license was issued shortly thereafter. The "certainly impending" or "substantial risk" standard applies equally to Plaintiff Lane, who can simply apply and wait for his "shall issue" permit to be granted.

As in *Vitagliano*, Redressing Plaintiffs' constitutional injuries from the Firearms Ban can be achieved by declaring it unconstitutional and enjoining enforcement. 2023 WL 4095164, at * 7. Contrary to Defendants' June 29 letters, *Vitagliano* confirms that Plaintiffs have standing to challenge the Firearms Ban.

Respectfully submitted,

Phillips Lytle LLP

By *[signature]*

Nicolas J. Rotsko

Enclosure

cc:   Counsel of record (via CMECF)