UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

J. MARK LANE AND JAMES SEARS,

                        Plaintiffs,

      v.

MIRIAM E. ROCAH, *in her official capacity as District Attorney for the County of Westchester, New York*, and DOMINICK L. CHIUMENTO, *in his official capacity as Acting Superintendent of the New York State Police*,

                    Defendants.

No. 22-CV-10989 (KMK)

OPINION & ORDER

---

Appearances:

Adam Kraut, Esq.
Second Amendment Foundation
Bellevue, WA
*Counsel for Plaintiffs*

Cody J. Wisniewski, Esq.
FPC Action Foundation
Las Vegas, NV
*Counsel for Plaintiffs*

Nicolas Rotsko, Esq.
Phillips Lytle LLP
Buffalo, NY
*Counsel for Plaintiffs*

Suzanna Publicker Mettham, Esq.
James Martin Thompson, Esq.
Yuval Rubinstein, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant Chiumento*

John Nonna, Esq.
Gianfranco Arlia, Esq.
MaryBeth Catherine Allen-Knecht, Esq.
Westchester County Law Department
White Plains, NY
*Counsel for Defendant Rocah*

KENNETH M. KARAS, United States District Judge:

Plaintiffs J. Mark Lane and James Spears bring this Action against Miriam E. Rocah ("Rocah"), in her official capacity as District Attorney for Westchester County, and Dominick Chiumento ("Chiumento"; collectively, "Defendants"), in his capacity as Acting Superintendent of the New York State Police.  (*See generally* Compl. (Dkt. No. 1).)[1]  Plaintiffs allege that New York's ban on assault weapons (the "Assault Weapons Ban") violates their Second Amendment rights as incorporated against New York State by the Fourteenth Amendment.  (Compl. ¶ 65 (citing N.Y. Penal Law §§ 265.00(22)(a)–(f), 265.02(7), 265.10, 70.02).)  Before the Court are Defendants' Rule 12(b)(1) Motions To Dismiss.  (Rocah Not. of Mot. (Dkt. No. 37); Chiumento Not. of Mot. (Dkt. No. 40).)  For the foregoing reasons, Defendants' Motions are denied.

## I.  Background

This case arises out of relatively simple facts.  Plaintiffs claim that they intend to purchase specific models of assault weapons, but New York has long prohibited their possession. Plaintiffs believe that law is unconstitutional given the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).[2]  As a threshold issue,

---

[1] This case's caption has changed in two respects in the past year.  First, Plaintiffs voluntarily dismissed their claims against Letitia James in her official capacity as Attorney General.  (*See* Stip. of Dismissal (Dkt. No. 35).)  Second, Chiumento was substituted for his predecessor, Steven A. Nigrelli, who resigned in October.  (*See* Memo Endorsement (Dkt. No. 56).)

[2] The Second Circuit previously upheld the Assault Weapons Ban against a Second Amendment challenge, but it relied on a test that *Bruen* has since repudiated.  *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 261–63 (2d Cir. 2015) (applying "intermediate

Defendants contend that Plaintiffs' "intentions" are just that—some-day aspirations that do not give rise to a concrete and imminent injury sufficient to confer standing. The relevant facts are few, and they are drawn from the Complaint.

### A.  The Assault Weapons Ban

New York has long criminalized the possession of "assault weapons." *See* N.Y. Penal Law § 265.02(7). Assault weapons are a subset of semiautomatic weapons—firearms that use each pull of the trigger to help load the next round—that are fitted to "accept a detachable magazine" and have one or more "military-style features." *See id.* §§ 265.00(21), 265.00(22)(a)–(c); *see Cuomo*, 804 F.3d at 249 (characterizing definitions). Those features include "a folding or telescoping stock," "a pistol grip that protrudes conspicuously beneath the action of the weapon," certain muzzle devices, or even "a grenade launcher." N.Y. Penal Law § 265.00(22)(a)(i)–(ii), (vi)–(vii). The statute contains various other provisions including a grandfather clause, *see id*. § 265.00(22)(g)(v), but they are not relevant here.

### B.  Factual Background

Plaintiffs are two Westchester residents who claim they intend to keep and bear assault weapons for various purposes, including home defense and target shooting. (Compl. ¶¶ 39–40.) Lane, if allowed, would purchase a Springfield Armory Saint rifle, an AR-15 style gun fitted to accept a detachable magazine, with a telescoping stock, pistol grip, and muzzle device. (*Id*. ¶ 39.) And Sears, if allowed, would purchase a LMT MARS-L 5.56 rifle, another AR-15 style gun with the same characteristics. (*See id*. ¶ 40.) Plaintiffs allege that AR-15 style weapons are

---

scrutiny" and concluding that the Assault Weapons Ban did not violate the Second Amendment); *see also Bruen*, 597 U.S. at 19 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context.").

in common use throughout the country, citing various surveys and gun-sale statistics, (*id*. ¶¶ 19–20), and similarly allege that they are appropriate for self-defense and hunting, (*id*. ¶¶ 25–32).

Plaintiffs are each citizens over 21 and allege that they are legally eligible under federal and state law to possess firearms.  (*Id*. ¶¶ 8–9.)  Both of them would immediately acquire their desired AR-15-model firearms were it not for New York's enforcement of the Assault Weapons Ban and the associated threat of prosecution.  (*Id*. ¶¶ 39–40.)[3]

C.  Procedural History

Plaintiffs filed their Complaint on December 30, 2022.  (Compl.)  On March 3, 2023, Defendants each filed a pre-motion letter in anticipation of filing the instant Motions To Dismiss.  (Dkt. Nos. 20, 21.)  Plaintiffs responded on March 10, 2023, and outlined their own request to file a cross-motion for summary judgment on the merits.  (Dkt. No. 22.)  The Court held Plaintiffs' requested summary judgment motion in abeyance and set a briefing schedule for Defendants' 12(b)(1) Motions in lieu of a pre-motion conference.  (*See* Memo Endorsement (Dkt. No. 28).)

Defendants filed their Motions pursuant to that schedule on May 3 and May 4, 2023.  (Rocah Not. of Mot.; Chiumento Not. of Mot.; Mem of Law in Supp. of Mot. ("Rocah Mem.") (Dkt. No. 39); Mem. of Law in Supp. of First Mot. ("Chiumento Mem.") (Dkt. No. 42).)  Plaintiffs filed their opposition on June 5, 2023, (Mem. of Law in Opp. ("Pls' Mem.") (Dkt. No. 46)), and Defendants filed their replies on June 19 (Reply Mem. in Supp. of Mot. ("Rocah

_____

[3] Throughout their Complaint and briefing, Plaintiffs refer to a "Semiautomatic Firearm Ban," (*see, e.g.*, Compl. ¶ 37), or a "Firearms Ban," (Pls' Mem. 1).  Plaintiffs appear to object to the use of the term "assault weapon," (*id*. ¶ 2), but alternative, more generic, language risks confusion about New York law.  Because Plaintiffs' challenge is targeted specifically at provisions related to "assault weapons," (*see id*. ¶ 65), the Court uses that term.

Reply") (Dkt. No. 47), and June 20, 2023, (Reply Mem. in Supp. of First Mot. ("Chiumento Reply") (Dkt. No. 48)).

One day later, on June 21, 2023, the Second Circuit decided *Vitagliano v. County of Westchester*, 71 F.4th 130 (2d Cir. 2023) (per curiam), a case with significant implications for Plaintiffs' theory of standing. The Parties filed several letters addressing *Vitagliano*'s application to this case, (Dkt. Nos. 50–54), which the Court considers below where relevant.

## II.  Discussion

### A.  Standard of Review

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 Northern LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*, 211 F.3d at 700–01). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

The Second Circuit has explained that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id*. at 56 (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id*. (alterations adopted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *Id*. at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017).  "If the extrinsic evidence presented by the defendant is material and controverted, the . . . [C]ourt will need to make findings of fact in aid of its decision as to standing."  *Carter*, 822 F.3d at 57.

B.  Materials Considered

The Court must first determine the appropriate materials to consider in deciding Defendants' Motions.  Specifically, it must decide whether to consider documents related to Plaintiff Sears' applications for and receipt of a semiautomatic firearm license, some of which reference events that post-date the Complaint.  Those documents state that (1) Plaintiff Sears applied for a semiautomatic firearm license in 2022 and was fingerprinted in connection with that application on November 16, 2022 (prior to filing the complaint), (Decl. of James Sears in Opp. to Mot. ("Sears Decl."), ¶ 11 (Dkt. No. 45)); (2) that a Westchester County judge approved

that application on March 29, 2023, (*id.* ¶ 12); and (3) that New York State issued Plaintiff Sears a semiautomatic firearm license on April 10, 2023, (*id.* ¶ 12; *see also id.*, Ex. A).[4]

Two lines of caselaw inform this analysis. First, Defendants' Motions arise under Rule 12(b)(1), which means the Court "may refer to evidence outside the pleadings" when deciding whether to dismiss for lack of subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, 515 F. Supp. 3d 95, 102 (S.D.N.Y. 2021) (same). Second, however, Plaintiffs bear the burden of establishing standing "as of the time [they] brought this lawsuit." *Carney v. Adams*, 592 U.S. 53, 59 (2020) (citing, inter alia, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) (explaining that standing is assessed "at the time the action commences")). And the Second Circuit has stressed that "[e]vents occurring after the filing of the complaint cannot operate so as to create standing where none previously existed." *Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12-CV-6154, 2013 WL 4015901, at *6 (S.D.N.Y. Aug. 7, 2013) (quoting *City of Hartford v. Town of Glastonbury*, 561 F.2d 1032, 1051 n.3 (2d Cir. 1977) (en banc)); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571–72 (2004) (applying similar rule to allegations of diversity jurisdiction and rejecting a plaintiff's "attempted postfiling salvage operation"); *Fed. Defenders of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir 2020) ("Under established standing doctrine, . . . [courts] evaluate[] whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*.") (emphasis in original) (internal quotation marks omitted)).

---

[4] Chiumento confirms that Sears was issued a license but states that it was not received by the New York State Police until May 10, 2023. (*See* Decl. of Michael W. Deyo in Supp. of Mot. (Dkt. No. 49).)

Combining those principles, the Court finds that it is appropriate to consider Plaintiffs'

additional evidence but only to the extent it discusses facts as they existed "at the time the action

[was] commence[d]." *See Friends of the Earth*, 528 U.S. at 191.  In other words, the Court will

consider the fact that Plaintiff Sears *applied* for a license by the time the Complaint was filed.

But it may not consider the fact that Plaintiff Sears later obtained a license.

The Court accordingly moves on to Defendants' standing arguments.

### C.  Standing

Article III of the Constitution restricts the federal judicial power to the resolution of

"Cases" and "Controversies."  U.S. Const. art. III, § 2.  Under Article III, "a case or controversy

can exist only if a plaintiff has standing to sue."  *United States v. Texas*, 599 U.S. 670, 675

(2023); *accord TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To satisfy that bedrock

requirement, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection

between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be

redressed by a favorable decision.'" *Vitagliano*, 71 F.4th at 136 (quoting *Picard v. Magliano*, 42

F.4th 89, 97 (2d Cir. 2022)).  An injury in fact, in turn, means "an invasion of a legally protected

interest," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992)), that is "concrete and particularized" and "actual or

imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (internal quotation marks

omitted).

### 1.  Causation & Redressability

As a threshold matter, Defendants argue that the Complaint's failure to plead facts

regarding Plaintiffs' firearm licenses (or lack thereof) defeats standing.  (*See* Chiumento Mem.

7–15; Rocah Mem. 4–5.)  Briefly, New York law prohibits an individual from purchasing or

possessing a "semiautomatic rifle" without a license.  N.Y. Penal Law § 265.65; *Frey v. Nigrelli*,

— F. Supp. 3d. —, 2023 WL 2473375, at *1 (S.D.N.Y. Mar. 13, 2023) ("New York maintains a general prohibition on the possession of firearms without a license.").  New York's "shall-issue" licensing provision, in turn, directs the state to issue a "license for a semiautomatic rifle, other than an assault weapon or disguised gun," if applicants meet certain criteria.  *See* N.Y. Penal Law § 400.00(2); *see also id.* § 400.00(3)(b).  Defendants argue that two results flow from these provisions: (a) Plaintiffs cannot obtain *any* semiautomatic weapon without a license, and (b) it is impossible to obtain a license *for an assault weapon* because they are excluded from the provision authorizing licenses for semiautomatic weapons generally.  (*See* Chiumento Mem. 7 (referencing New York's prohibition "on the possession of firearms without a license"); *id*. at 12 ("[N]o license may be issued for banned weapons.").)  Accordingly, Defendants maintain that Plaintiffs' alleged injuries are not traceable to the Assault Weapons Ban, alone, and would not be redressed by a judgment that the Ban is unconstitutional.  (*See, e.g.*, *id*. at 10.)  Plaintiffs respond that the "other than an assault weapon" language in § 400.00(2) operates to *exempt* assault weapons from the licensing scheme altogether.  (Pls' Mem. 17–19.)  Alternatively, they contend that any licensing requirement is futile.  (*Id*. at 20–22.)  While there may be serious questions about Plaintiffs' exemption argument, the Court need not address that question here because Plaintiffs adequately allege standing under Defendants' interpretation of the statute.

The Court must address whether Plaintiffs plausibly allege standing where they challenge only one of two laws potentially inhibiting the same course of conduct.  Basic standing law does not bar standing in such a circumstance.  In particular, "[t]he Supreme Court has held that there is standing where 'the challenged action of the [government] stands as an absolute barrier' that will be removed 'if [the plaintiff] secures the . . . relief it seeks.'"  *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (alterations in original) (quoting *Village of*

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)) ("Where, as here, a plaintiff is threatened by the enforcement of a statute that specifically targets the plaintiff, the [causation] requirement is met." (citing *Lujan*, 504 U.S. at 561–62)); *see also Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 404 (E.D.N.Y. 2021) (same).  Importantly, "[a] plaintiff *is not required* to show that a statute is the sole or the but-for cause of an injury."  *Tweed-New Haven Airport*, 930 F.3d at 71 (emphasis added).  An injury can still be fairly traceable "when future contingencies of one kind or another might disrupt or derail [planned conduct]."  *Id.*; *see also Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 602 (2d Cir. 2016) (finding standing even though overturning zoning provision "would not *guarantee* [the p]laintiffs' success" (emphasis in original)); *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 689 F.2d 391, 395 (2d Cir. 1982) (holding that the plaintiffs demonstrated causation and redressability where "[i]nvalidation of the challenged ordinance . . . would tangibly improve the chances of [completing a] construction [project]").[5]  Here, Plaintiffs seek to invalidate a statute that bans the weapons they seek to possess.  Under these well-established principles, "those allegations are sufficient notwithstanding the present unavailability" of licenses for those same weapons.  *See Huntington Branch, N.A.A.C.P.*, 689 F.2d at 394–95.

Defendants cite several cases where the lack of a license *did* operate to bar standing, but they are all distinguishable.  (Chiumento Mem. 9–10.)  Broadly speaking, these cases stand for the proposition that "a plaintiff must submit to the challenged policy" to establish standing.

---

[5] These principles apply to both causation and redressability.  Just as plaintiffs need not challenge the sole cause of their injury, courts "do not require allegations of certain success at the pleading stage" if a challenged law is overturned.  *Mhany Mgmt.*, 819 F.3d at 602 n.4 (emphasis omitted); *see also id.* at 602 ("Redressability is not a demand for mathematical certainty." (quoting *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 143 (3d Cir. 2009))).

*United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (quoting *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)).  So in *Global Network Communications, Inc. v. City of New York*, for instance, a payphone company lacked standing to challenge regulations that applied only to payphone franchisors because the company had been validly denied a franchise and thus could not be affected by the challenged laws.  562 F.3d 145, 152 (2d Cir. 2009); *Glob. Network Commc'ns, Inc. v. City of New York*, 507 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (stating "Global was validly denied a franchise"); *see also Marotte v. City of New York*, No. 16-CV-8953, 2019 WL 1533304, at *9 (S.D.N.Y. Feb. 7, 2019) ("[E]ven if the City were to adopt a new regulatory scheme as Plaintiff seeks, Plaintiff would not receive any actual benefit, as the provisions of the regulatory scheme he challenges affect only entities operating under a franchise agreement, which he does not have, and for which he has never applied."), *report and recommendation adopted*, 2019 WL 1033798, at *1 (S.D.N.Y. Mar. 5, 2019).  Similarly, in *Libertarian Party of Erie County v. Cuomo*, the Second Circuit held that individuals who never applied for a firearms license—and did not attempt to make a futility showing—lacked standing to "challenge the New York firearm licensing laws."  970 F.3d 106, 116, 122 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 597 U.S. at 1.  It follows that if Plaintiffs attempted to challenge the firearm *licensing* regime, the Complaint should have included allegations about licenses.  But they did not.  They instead challenged a provision proscribing the purchase and possession of weapons *regardless* of licensure.  (Compl. ¶ 65 (seeking declaratory judgment invalidating, inter alia, N.Y. Penal Law § 265.02(7).)  And nothing in the cases cited above indicates a license is required for that type of challenge.

      Moreover, even if licensure was a pre-requisite, Plaintiffs have made a sufficient showing that applying for one would have been a "futile gesture."  *Carney*, 592 U.S. at 66 (quoting

*Teamsters v. United States*, 431 U.S. 324, 365–366 (1977)); *see also Decastro*, 682 F.3d at 164 (explaining that futility is an exception to the general rule that a plaintiff "must submit to the challenged policy"); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc*., 191 F.3d 198, 202 (2d Cir. 1999) (same); *cf. Carr v. Saul*, 593 U.S. 83, 93 (2021) (noting "the Court has consistently recognized a futility exception to exhaustion requirements" and collecting cases).  Futility may arise under various circumstances, but one common one is where litigants must "present claims to adjudicators who are powerless to grant the relief requested."  *Carr*, 593 U.S. at 93.  The Second Circuit considered a topical application of this rule in *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), *overruled on other grounds by McDonald v. City of Chicago*, 561 U.S. 742 (2010). There, a Virginia resident argued that New York's firearms licensing regime violated the Privileges and Immunities clause by denying licenses based on non-resident status.  *Id*. at 76–77, 86–87.  It made no sense to require the plaintiff, as a precondition to suit, to complete an application "for which he [was] statutorily ineligible" and to "file it with an officer without authority to review it."  *Id*. at 83 (explaining such a requirement amounted to a "futile gesture"). Both aspects of futility are present here.  According to Defendants, it is impossible to obtain a license *for assault weapons*.  (Chiumento Mem. 13–14.)  And, Plaintiffs have "nothing to gain" from applying for available licenses as even a semiautomatic weapons license could never allow plaintiffs to purchase assault weapons.  (*See* Chiumento Mem. 12–13.)  *See also Bach*, 408 F.3d at 82 (agreeing with the district court's conclusion that "imposing an application requirement . . . would serve no purpose" (internal quotation marks omitted)).  The Court "will not require such a

futile gesture as a prerequisite for adjudication in federal court." *Williams v. Lambert*, 46 F.3d 1275, 1280 (2d Cir. 1995).[6]

Defendants respond that it is the failure to obtain *any* license, as opposed to a failure to obtain a license *for assault weapons*, that defeats standing.  (Chiumento Reply 7; Rocah Reply 2.)  In essence, they argue that New York's general prohibition on possessing a gun without a license operates as an independent ban on assault weapons that would apply even if the Assault Weapons Ban, itself, were invalidated.  This point, although styled as a response to futility, appears to be more of a redressability argument.  And there is some caselaw to back it up. Indeed, plaintiffs "who have *absolutely no* realistic [] capability [to proceed] have no standing, because, as to them, invalidation of an offending [law] would afford only moral satisfaction rather than a realistic opportunity to proceed" with their intended course of conduct.  *See Mhany Mgmt.*, 819 F.3d at 601 (emphasis added) (quoting *Huntington Branch, N.A.A.C.P.*, 689 F.2d at 394).  Right up to that point, however, plaintiffs have standing as long as "[i]nvalidation of the challenged [law] . . . would tangibly improve the chances of [proceeding with a course of conduct]."  *Id.*; *see also Village of Arlington Heights*, 429 U.S. at 261 (finding standing even if

_____

[6] Moreover, even if the requirement was not futile, it is satisfied at least as to Plaintiff Sears.  A plaintiff need not go through the entire process to submit to a challenged policy. Instead, it is enough that they are "able and ready" to apply.  *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 505 (S.D.N.Y. 2022) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, (1993)).  This involves more than a plaintiff's mere belief that they meet relevant qualifications, *id.* (citing *Carney*, 592 U.S. at 61), but may be satisfied by a "'description of concrete plans' to apply" for the relevant authorization, *Faculty v. N.Y. Univ.*, 11 F.4th 68, 77 (2d Cir. 2021) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).  Plaintiff Sears cleared that bar, having already applied for a semiautomatic weapons license before the Complaint was filed.  (*See* Sears Decl. ¶ 11.)  And where, "as here, there are multiple plaintiffs, only one plaintiff need possess the requisite standing for a suit to go forward."  *New York v. U.S. Dep't of Agric.*, 454 F. Supp. 3d 297, 303 (S.D.N.Y. 2020) (citing, inter alia, *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)).

removing a barrier would not "guarantee" relief).  As between the two, this case rests on the "tangible chance" side of the line.

Put simply, Defendants have failed to explain how invalidating the Assault Weapons Ban would have *no* effect on the ability to obtain licenses for those same weapons.  Indeed, Defendants recognize the provisions are linked.  The same legislation established both the Assault Weapons Ban—i.e., the provision criminalizing possession of assault weapons—and the language excluding assault weapons from the state's shall-issue licensing regime.  *See* 2000 N.Y. Sess. Laws Ch. 189 (S. 8234, A. 11535) (amending N.Y. Penal Law § 400.00(2) to include "other than an assault weapon," and amending N.Y. Penal Law § 265.02 to list "possess[ion] [of] an assault weapon" as a felony offense).  (*See also* Chiumento Mem. 12 n.12 (offering similar understanding).)  Applying basic statutory interpretation principles, it is implausible to conclude that the legislature intended to enact two separate assault weapons bans with that one law. Starting with the plain language, one provision defines assault weapons possession as a crime, *see* N.Y. Penal Law § 265.02, while the other simply excludes those weapons from a provision that would otherwise provide for their license, *see id.* § 400.00(2); *see also Grajales v. Commissioner of Internal Revenue*, 47 F.4th 58, 62 (2d Cir. 2022) ("Statutory interpretation always 'begins with the plain language of the statute.'" (quoting *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 584 (2d Cir. 2007))).  That textual distinction provides a way to give meaning to each provision and avoid rendering them superfluous.  *See State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) ("It is our duty to give effect, if possible, to every clause and word of a statute." (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).  Consider what would happen if the state granted a license for "semiautomatic weapons" and the exclusion did not exist.  Because assault weapons are a subset of semiautomatic weapons, that broad license

14

could be read to exempt its holder from § 265.02's criminal prohibition.  By excluding assault weapons from the licensing provision, § 400.00(2) can be read to eliminate that possibility and ensure that the ban operates as intended.  (Chiumento Mem. 11–12 (offering similar interpretation).)  All that is to say, there is at least a chance that invalidating the Assault Weapons Ban would precipitate a change in licensing laws allowing Plaintiffs to acquire the weapons they seek.[7]  And that chance is sufficient to confer standing.  *See Mhany Mgmt.*, 819 F.3d at 601.

### 2.  Injury in Fact

Plaintiffs present three injury-in-fact theories: (1) that the Assault Weapon Ban affects a present and ongoing injury by thwarting their "desire" to purchase assault weapons, (Pls' Mem. 7–9); (2) that the ban eliminates the "legal market" for assault weapons, (Pls' Mem. 9–10); and (3) that Plaintiffs face a credible threat of prosecution if they attempt to acquire assault weapons, (Pls' Mem. 10–17).  Of course, they need only succeed on one theory to satisfy Article III.

The Court considers only the "credible threat of prosecution" theory here.  As Defendant Rocah points out, Plaintiffs first theory boils down to a merits question, as it turns on whether the Assault Weapons Ban "stifles Plaintiffs' opportunity to exercise their constitutional rights."  (*See* Pls' Mem. 8; Rocah Reply 2.)  Answering that question would, at a minimum, require the Court to examine the contours of Plaintiffs Second Amendment rights.  The Second Circuit has repeatedly warned against "collaps[ing] the standing inquiry into the merits" and the Court heeds that warning at this stage.  *See, e.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir.

---

[7] The Court notes that Plaintiffs seek declaratory judgment as to "N.Y. Penal Law §§ 265.00(22)(a)–(f); 265.02(7), 265.10, 70.02[,] *and all related regulations, policies, and/or customs designed to enforce or implement the same*."  (Compl. ¶ 65 (emphasis added).)  No Party discusses this language, but it plausibly covers licensing provisions to the extent they serve to "enforce" the Assault Weapons Ban.  That said, the Court need not make that determination to resolve the pending Motions.

2020) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003)).  As to the second theory,

the Court agrees with Defendants that it appears to be insufficiently plead, as the Complaint

contains no allegations about the "market for AR-15 style rifles," (Pls' Mem. 9; *see generally*

Compl.)), and that it is "improper" to allow Plaintiffs' brief in opposition to supplement the

Complaint, *see Gutierrez v. Dubois*, No. 20-CV-2079, 2020 WL 3072242, at *4 (S.D.N.Y. June

10, 2020) ("[T]he Court does not rely on factual assertions made for the first time in [the

p]laintiff's opposition brief . . . as it is axiomatic that the Complaint cannot be amended by

briefs" (quoting *Troy v. City of New York*, No. 13-CV-5082, 2014 WL 4804479, at *1 (S.D.N.Y.

Sept. 25, 2014))).

     As to Plaintiffs' third theory, the Court begins by noting that the injury complained of

need not have happened to confer standing.  "An allegation of future injury may suffice if the

threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will

occur.'"  *Vitagliano*, 71 F.4th at 136 (additional internal quotation marks omitted) (quoting

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)).  This theory of injury

regularly anchors "[p]re-enforcement challenges to criminal statutes" like the one here.  *See*

*Picard*, 42 F.4th at 97.  Those suits—which are "cognizable under Article III," *Cayuga Nation v.*

*Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)—rely on the axiom that a plaintiff need not "expose

himself to liability before brining suit" to challenge an allegedly unconstitutional law, *Picard*, 42

F.4th at 97 (2d Cir. 2022) (quoting *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015));

*see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (same).

     Instead, courts apply "a three-prong test" to assess such challenges where a plaintiff must

demonstrate: "(1) 'an intention to engage in a course of conduct arguably affected with a

constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and

(3) that 'there exists a credible threat of prosecution thereunder.'" *Vitagliano*, 71 F.4th at 136

(quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).  A "credible threat" of

prosecution, as with a typical injury in fact, must be "imminent" as opposed to "imaginary or

speculative." *Knife Rts., Inc.*, 802 F.3d at 384 (quoting *Susan B. Anthony List*, 573 U.S. at 159,

then *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  The credibility of

an enforcement threat "necessarily depends on the particular circumstances at issue," but the

Second Circuit has repeatedly emphasized that the standard "is quite forgiving to plaintiffs

seeking such pre[-]enforcement review." *Cayuga Nation*, 824 F.3d at 331 (quoting *Knife Rts.

Inc.*, 802 F.3d at 384, then *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)).  Plaintiffs

satisfy each element of the test here.

First, Plaintiffs' desire to possess assault weapons involves a course of conduct affected

with a constitutional interest.  The Supreme Court has held that the Second Amendment protects

"the sorts of weapons" that are "in common use" for "lawful purposes like self defense."

*District of Columbia v. Heller*, 554 U.S. 570, 624–625, 627 (2008).  Plaintiffs allege an intent to

exercise that right by purchasing different models of AR-15 style rifles, which they allege are a

particularly popular type of firearm among American gun owners.  (Compl. ¶¶ 17–20.)  *See also

Cuomo*, 804 F.3d at 255 (recognizing that "Americans own millions of the firearms that the

challenged legislation prohibits").  No Party disputes that, "[e]ven accepting the most

conservative estimates," those weapons are "in common use" as the term was used in *Heller* and

*Bruen*.  *See Cuomo*, 804 F.3d at 255; *see also Bruen*, 597 U.S. at 21 (characterizing *Heller*).  Nor

does either Defendant challenge, at least at this stage, Plaintiffs' allegations that AR-15 style

weapons are typically used for self defense and hunting.  (Compl. ¶¶ 29–35.)  Their desire to

possess such weapons is thus "clearly affected with a Second Amendment interest." *Goldstein v. Hochul*, — F. Supp. 3d —, 2023 WL 4236164, at *7 (S.D.N.Y. June 28, 2023).

Rocah nevertheless argues that Plaintiffs lack "a legally protected interest" in part because "the Law merely limits the types of arms that the Plaintiffs may bear." (Rocah Mem. 4–5.) That statement previews Defendants' likely merits argument—that the assault weapons ban is consistent with the Second Amendment's text and history—but it is inappropriate at this stage. Again, the Second Circuit has "cautioned against arguments that 'would essentially collapse the standing inquiry into the merits,'" *SM Kids, LLC*, 963 F.3d at 212 (quoting *Baur*, 352 F.3d at 642), and that "attempt[] to 'conflate the threshold question of standing under Article III . . . with the question of whether [a plaintiff] has a valid claim on the merits,'" *id.* (alteration omitted) (quoting *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 n.9 (2d Cir. 2000)).[8]  At this point, it is enough that Plaintiffs' proposed conduct is "*arguably* affected with a constitutional interest," regardless of whether that conduct is protected by the Second Amendment and whether a law prohibiting that conduct turns out to be constitutional.  *See Susan B. Anthony List*, 573 U.S. at 159 (emphasis added) (citation omitted); *see also Goldstein*, 2023 WL 4236164, at *7 (finding a plaintiff "satisfied the first prong of the pre-enforcement injury-in-fact test" where the complaint "raise[d] questions regarding the scope of the Second Amendment"). [9]

---

[8] For the same reason, the Court need not consider Rocah's argument that other weapons are available in New York for use in self-defense.  (*See* Rocah Mem. 5.)

[9] To be clear, the Court is not deciding that possession of assault weapons, as defined by New York law, falls within "the original scope of the [Second Amendment] right."  *See Bruen*, 597 U.S. at 18.  All the Court finds at this stage is that Plaintiffs *allege* an *arguable* constitutional interest in their proposed activity, which is sufficient for standing purposes.  *See, e.g.*, *Libertarian Party of Conn. v. Merrill*, No. 15-CV-1851, 2016 WL 10405920, at *4 (D. Conn. Jan. 26, 2016) ("For standing purposes, it suffices that [proposed] activity 'arguably [is] affected with a constitutional interest.'" (quoting *Babbitt*, 442 U.S. at 298)).

Defendants also claim, at various points, that Plaintiffs' allegations as to their future conduct are too vague.  (*See* Rocah Mem. 4; Rocah Reply 2; *see also* Chiumento Mem. 16.) Rocah, for instance, notes that Plaintiffs do not allege "that they have ever fired a gun" and that the Complaint "is completely silent as to whether or not Plaintiffs have a license to own any firearm."  (Rocah Mem. 4.)  But that sort of past experience is not required—"a pre-enforcement challenge need only allege an *intention* to engage in a course of conduct" in the future. *Vitagliano*, 71 F.4th 137 (emphasis added) (internal quotation marks omitted) (holding that an individual had standing to challenge buffer zone around abortion clinic despite having "never engaged in sidewalk counseling" before); *accord Nastri v. Dykes*, — F. Supp. 3d —, 2023 WL 4491621, at *5 (D. Conn. July 12, 2023); *see also Angelo v. District of Columbia*, 648 F. Supp. 3d 116, 123 (D.D.C. 2022) (finding intent inquiry satisfied based on allegations that "[b]ut for D.C. law, [plaintiffs] would carry [their] concealed handgun[s] on Metro trains and buses for self-defense" (first, third, and fourth alterations in original)).  On that front, the Complaint is sufficiently detailed.  It contains clear allegations as to intent, and even lists the specific rifle models Plaintiffs seek to purchase.  *Cf. Knife Rts., Inc.*, 802 F.3d at 386 n.5 (finding that "make and model" allegations are *not* required to challenge law proscribing possession of switchblade knives but suggesting that such allegations support standing).

Second, the weapons Plaintiffs seek to purchase are "squarely proscribed" by the Assault Weapons Ban.  *See Vitagliano*, 71 F.4th at 138.  The statute defines "[a]ssault weapon[s]" as, among other things, semiautomatic rifles, with detachable magazines and certain military-style features, including "a flash suppressor, muzzle break, [or] muzzle compressor."  N.Y. Penal Law § 265.00(22)(a).  And the Complaint contains allegations that Plaintiffs would like to acquire rifle models with those exact characteristics.  (*See, e.g.*, Compl. ¶ 25.)  Such specific allegations

meet, and might even exceed, the applicable standard at this prong of the standing analysis.  *See Vitagliano*, 71 F.4th at 138 (explaining that "a plaintiff's intended conduct need only be '*arguably* proscribed by the challenged statute'" (emphasis in original) (additional internal quotation marks and citation omitted)); *see also Picard*, 42 F.4th at 98 (same).

Third, Plaintiffs have also demonstrated that they face a credible threat of enforcement if they follow through with attempting to acquire assault weapons.  This flows from the "well-established proposition that '[w]here a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against [him].'"  *Vitagliano*, 71 F.4th at 138 (quoting *Tweed-New Haven Airport*, 930 F.3d at 71); *Hedges*, 724 F.3d at 197 (same).  Rather, courts presume intent "in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Vitaliano*, 71 F.4th at 138 (citation omitted); *see also Cayuga Nation*, 824 F.3d at 331 (stating courts are "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund" (citation omitted)).

The statute here is "hardly moribund" and Plaintiffs' anticipated conduct falls within its reach.  *See Vitagliano*, 71 F.4th at 139.  Although Defendant Rocah states that she has not taken "affirmative actions . . . *against either Plaintiff*," she and Chiumento are careful to avoid representing that they do not enforce the Assault Weapons Ban generally.  (*See* Roach Mem. 7 (emphasis added); *see generally* Chiumento Mem.)  Indeed, Plaintiff presents judicially noticeable evidence that Defendants enforce the Assault Weapons Ban throughout the state, and in Westchester County specifically.  (*See* Decl. of Nicolas J. Rotsko in Supp. of Mot., Exs. A–D (press releases from Westchester County, New York State Police, and the Attorney General's Office announcing arrests and charges for possession of assault weapons) (Dkt. No. 43).)  *See*

Aff. in Opp., *People v. Rivera*, No. 00994-2019, 2021 WL 7627676 (N.Y. Sup. Ct. Dec. 3, 2021) (affirmation submitted on behalf of Defendant Rocah in prosecution for, inter alia, violation of N.Y. Penal Law 265.02(7)); *see also Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-CV-8842, 2023 WL 5971144, at *7 (S.D.N.Y. Sept. 14, 2023) (explaining that courts may judicially notice "documents filed with governmental entities and available on their official websites, and information publicly announced on certain non-governmental websites" (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015))). The Court may therefore presume that Defendants would enforce the Assault Weapons Ban against Plaintiffs, too, if they managed to acquire a covered gun.

Defendants argue that any such presumption is "speculative" or "hypothetical" and that more individualized allegations are required. (Chiumento Mem. 16–19; Rocah Mem. 5–8.) For support, they rely heavily on *Adam v. Barr*, 792 F. App'x 20 (2d. Cir. 2019)—an unpublished summary order holding that the presumption that the government will enforce its own laws "in and of itself, is not sufficient to confer standing, as courts [must] also consider the extent of that enforcement in determining whether a credible threat . . . exists." *Id*. at 23; *see also Does 1–10 v. Suffolk County*, No. 21-1658, 2022 WL 2678876, at *3 (2d Cir. July 12, 2022) (finding no imminent injury where the plaintiffs did not allege that "any individual [plaintiff] ha[d] been arrested or had their firearm forcibly confiscated for failing to comply with [a] Suffolk County Police Department[] request"); *Giambalvo v. Suffolk County*, 656 F. Supp. 3d 374, 384–85 (E.D.N.Y. 2023) (applying *Does 1–10* and stating "there is nothing suggesting that any plaintiff has been arrested or prosecuted or that there is otherwise a substantial risk of such action"). To the extent *Adam* and related cases can be construed to *require* an individualized threat of

prosecution, the Second Circuit rejected that argument in *Vitagliano*.[10]  That case held that a

plaintiff need not be subject to "a past enforcement action or an overt threat of prosecution" "to

make out an injury in fact."  *Vitagliano*, 71 F.4th at 139–40 (citing *Susan B. Anthony List*, 573

U.S. at 164).  To require "an 'overt threat to enforce' a criminal prohibition," the Second Circuit

explained, "would run afoul of the Supreme Court's admonition not to put 'the challenger to the

choice between abandoning his rights or risking prosecution.'"  *Id.* at 139 (quoting *Tweed-New*

*Haven Airport*, 930 F.3d at 70)).  That rationale makes sense here.  Because assault weapons are

prohibited in New York, Defendants have little reason to affirmatively threaten prosecution

unless they have reason to believe Plaintiffs possess such weapons.  The Court will not require

Plaintiffs to (illegally) obtain assault weapons as a precondition to suit.

    It is unclear how much of Defendants' credible-threat argument remains in light of

*Vitagliano*.[11]  There still appears to be room for an argument that certain facts may displace a

presumption of enforcement.  For instance, it may not be appropriate to assume enforcement if

---

    [10] As Defendants point out, numerous Second Circuit cases discuss such threats.  *See, e.g.*, *Brokamp v. James*, 66 F.4th 374, 388 (2d Cir. 2023) ("[A] credible threat of prosecution . . . is evident [] from the N.Y. Board's explicit communication to Brokamp that she could not lawfully continue unlicensed mental health counseling . . . ."); *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (finding credible threat where "[e]ach plaintiff ha[d] already been subject to fines and enforcement proceedings for violating [certain] fishing regulations"); *Picard*, 42 F.4th at 100 (similar).  But these cases are careful to clarify that "past enforcement against the same conduct is *good evidence* that the threat of enforcement is not chimerical," not that such actions are required to allege standing.  *See Silva*, 47 F.4th at 87–88 (emphasis added) (quoting *Susan B. Anthony List*, 573 U.S. at 164).

    [11] In light of *Vitagliano*, Chiumento withdrew a portion of his injury-in-fact argument, stating "[t]o the extent the Superintendent's motion cited *Adam* in arguing that Plaintiffs were required to allege a particularized threat of criminal enforcement to establish standing, the Superintendent withdraws that argument."  (Letter from Yuval Rubinstein, Esq. to Court (June 29, 2023) (Dkt. No. 50).)  Rocah also filed a letter, agreeing that evidence of past enforcement is "not necessary to make out an injury in fact," but maintaining that Plaintiffs "have not established anything more than a some-day intention to possess assault weapons."  (Letter from MaryBeth Allen-Knecht, Esq. to Court (June 29, 2023) (Dkt. No. 51).)

officials "represent that [they] would not enforce the law," *Nastri*, 2023 WL 4491621, at \*7
(quoting *Vitagliano*, 71 F.4th at 139), or where "[a] plaintiff was unable to marshal [any]
examples of enforcement actions that involved the [conduct] in which [the plaintiff] planned to
partake," *Vitagliano*, 71 F.4th at 139 (citing *Adam*, 792 F. App'x at 22–23).[12]  But neither
circumstance exists here.  Defendants enforce the law, and nothing in the record indicates they
distinguish between violators in a way that would leave Plaintiffs in the clear.[13]

     Defendants' reliance on *Does 1–10* is similarly unavailing.  (*See* Chiumento Mem. 17–
18; Chiumento Reply 9.)  In that case, a group of plaintiffs alleged that they received a letter
from the Suffolk County Police Department warning that certain weapons they possessed were
"not in compliance with the New York State Penal Law," and that they "may be subject to arrest
and criminal charges" if they did not turn those weapons over.  *Does 1–10*, 2022 WL 2678876, at
\*3.  Despite the factual similarity, the standing determination in *Does 1–10* is not applicable

---

[12] It is worth emphasizing *Adam*'s narrow factual circumstances.  *Adam* held that a
plaintiff who intended to possess marijuana for personal religious use lacked standing to
challenge the Controlled Substances Act, because he could not point to *any* examples of the
federal government enforcing it in similar circumstances, despite the law's decades-long history.
*Adam*, 792 F. App'x at 22–23.

[13] Chiumento also cites *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121,
1127 (9th Cir. 1996), for the proposition that Plaintiffs have not alleged a particularized injury
because they are no different from "anyone desiring to possess semiautomatic assault weapons."
(*See* Chiumento Mem. 18 (citing *Reno*, 98 F.3d at 1131 and another case "echo[ing] *Reno*").)
After Defendants completed their briefing, the Ninth Circuit partially abrogated *Reno* and
cabined its standing holding.  *See Teter v. Lopez*, 76 F.4th 938, 944 (9th Cir. 2023).  As
explained in *Teter*, *Reno* "addressed a narrow question—whether a subjective, unspecified
'chilling' of one's ability to acquire an arm constituted an injury in fact."  *Id*.  *Teter* contrasted
that theory with allegations closely analogous to this case: Hawaii citizens alleged that they
"would purchase butterfly knives" but for a law "completely bann[ing]" those weapons.  *Id*. at
944–45.  No more was required given the challenged law rendered the plaintiffs "completely
unable to acquire the arms that they allege[d] [were] protected by the Second Amendment."  *Id*.
at 944.

here: the plaintiffs argued that the *letter* evidenced an imminent injury, the court did not apply or consider the presumption that Suffolk County would enforce New York criminal law.[14]  Other than the letter, the plaintiffs could not marshal evidence that "*any* purchaser" of similar weapons "had been arrested or had their firearm forcibly confiscated" pursuant to similar requests.  *Id.* (emphasis in original).  Here, by contrast, a presumption of enforcement applies; "there is [thus] reason to believe that the plaintiffs will be targets of criminal prosecution, and [as] there has been no disavowal of an intention to prosecute those individuals, the plaintiffs have adequately alleged a credible threat of prosecution."  *Cayuga Nation*, 824 F.3d at 331–32 (footnote omitted).[15]

---

[14] Applying the enforcement presumption would not have made sense.  In *Does 1–10*, the plaintiffs argued on the merits that their weapons were "not technically [] 'firearm[s]' under federal and New York Law."  2022 WL 2678876, at *1 n.1.  It would thus have been inconsistent to also argue that possessing such weapons was "squarely proscribed" by the statute.  *See Vitagliano*, 71 F.4th at 138.

[15] Chiumento also argues that "Plaintiffs' suit is neither constitutionally nor prudentially ripe for the same reasons that Plaintiffs themselves lack standing."  (*See* Chiumento Mem. 19.)  Because the Court "h[as] already concluded that [Plaintiffs] have alleged a sufficient Article III injury," they have also satisfied any constitutional ripeness requirement.  *See Susan B. Anthony List*, 573 U.S. at 167; *see also Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 534 (S.D.N.Y. 2018) ("Because Plaintiffs have sufficiently established an injury-in-fact, their [] challenge . . . is ripe for adjudication at this time.").  "To the extent [Defendants] would have [the Court] deem [Plaintiffs'] claims nonjusticiable 'on grounds that are [purely] prudential, rather than constitutional,' [t]hat request is in some tension with . . . a federal court's obligation to hear and decide cases within its jurisdiction . . . ."  *Susan B. Anthony List*, 573 U.S. at 167 (fifth alteration in original) (additional internal quotation marks omitted) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014)).  In any event, Plaintiffs' challenge is "purely legal" and denying review would impose hardship on Plaintiffs by forcing them to choose between conduct arguably protected by the Second Amendment on the one hand "and criminal prosecution on the other."  *See id.* at 1676–68 (citation omitted).

### III.  Conclusion

For the aforementioned reasons, Defendants' Motions are denied.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 37, 40.)

Plaintiffs' motion for summary judgment, which the Court previously held in abeyance pending this Opinion, (*see* Memo Endorsement (Dkt. No. 28)), is due by no later than February 9, 2024.  Defendants shall file responses by no later than March 11, 2024, and Plaintiffs shall reply by no later than March 25, 2024.

SO ORDERED.

Dated:   January 4, 2024
        White Plains, New York

_____
    KENNETH M. KARAS
   United States District Judge