# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

J. MARK LANE,
Larchmont, NY 10538, and                                    **COMPLAINT**

JAMES SEARS
Irving, NY 10533,                                           Civil Action No.:

          Plaintiffs,

       v.

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York
Office of the Attorney General
The Capitol
Albany, NY 12224

STEVEN A. NIGRELLI, in his official capacity as
Superintendent of the New York State Police
1220 Washington Avenue
Building 22
Albany, NY 12226, *and*

MIRIAM E. ROCAH, in her official capacity as
District Attorney for the County of Westchester, New York
111 Dr. Martin Luther King, Jr. Blvd.,
White Plains, New York 10601.

          Defendants.

_____

J. Mark Lane and James Sears, by and through counsel of record, bring this complaint against Defendants, New York officials responsible for enforcing a state law infringing the right of law-abiding, peaceable citizens to keep and bear commonly possessed firearms for defense of self and family and for other lawful purposes, and allege as follows:

**INTRODUCTION**

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms."  U.S. CONST. amend. II.  Under this constitutional provision, Plaintiffs Sears, Lane, and other law-abiding, responsible New Yorkers, have a fundamental, constitutionally guaranteed right to keep common firearms for defense of self and family and for other lawful pursuits.

2.      But Defendants have enacted and enforced a flat prohibition on the possession, manufacture, transport, or disposal of many common semiautomatic firearms—tendentiously labeled "assault weapons"—by ordinary citizens, making it criminal for law-abiding, peaceable citizens to exercise their fundamental right to keep and bear such arms. N.Y. PENAL LAW §§ 265.00(22), 265.02(7), 265.10.

3.      Defendants' enforcement of New York's ban denies individuals who reside in New York, including Plaintiffs, their fundamental, individual right to keep and bear common arms.

4.      The Second Circuit previously upheld the laws at issue against a Second Amendment challenge.  *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 243 (2d. Cir. 2015).  The recent Supreme Court case *New York State Rifle and Pistol Association v. Bruen*, however, abrogated that decision and no governing caselaw forecloses Plaintiffs' claims.  597 U.S. ---, 142 S. Ct. 2111 (2022).

## JURISDICTION & VENUE

5.     This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

6.     Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

7.     Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

8.     Plaintiff J. Mark Lane is a natural person, a resident of Westchester County, New York, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms.

9.     Plaintiff James Sears is a natural person, a resident of Westchester County, New York, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms.

10.     Defendant Letitia James is the Attorney General of New York.  As Attorney General, she exercises, delegates, or supervises all the powers and duties of the New York Department of Law, which is responsible for executing and enforcing New York's laws and regulations governing the possession of firearms.  Her official address is Office of the Attorney General, The Capitol, Albany, NY 12224-0341.  She is being sued in her official capacity.

11.     Defendant Steven A. Nigrelli is the Superintendent of the New York State Police.  As Superintendent, subject to the oversight and supervision of the Governor, he exercises, delegates, or supervises all the powers and duties of the New York Division of State Police, including executing and enforcing New York's laws and regulations governing

-3-

the possession of firearms. His official address is New York State Police Office of the Superintendent, Bldg. 22, 2220 Washington Ave, Albany, NY 12226. He is being sued in his official capacity.

12. Defendant Miriam E. Rocah is the District Attorney for Westchester County. As District Attorney, Rocah "is the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which [she] serves." *People v. Di Falco,* 44 N.Y.2d 482, 487, 377 N.E.2d 732, 735 (1978). Her official address is Westchester County District Attorney, 111 Dr. Martin Luther King, Jr. Blvd., White Plains, New York 10601. She is being sued in her official capacity.

## FACTUAL ALLEGATIONS

### I. NEW YORK'S UNCONSTITUTIONAL SEMIAUTOMATIC FIREARM BAN

13. New York tendentiously applies the inaccurate label of "assault weapon"[1] to many semiautomatic[2] firearms in common use and criminalizes their possession ("Semiautomatic Firearm Ban"). N.Y. PENAL LAW §§ 265.00(22)(a)-(f); 265.02(7), 265.10, 70.02.

14. Specifically, New York defines "assault weapon" as:

(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

      (i)     a folding or telescoping stock;

---

[1] N.Y. PENAL LAW § 265.00(22).

[2] "Semiautomatic" means "any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell." N.Y. PENAL LAW § 265.00(21). *See also Staples v. United States*, 511 U.S. at 602 n.1.

    (ii)    a pistol grip that protrudes conspicuously beneath the action of the weapon;

    (iii)    a thumbhole stock;

    (iv)    a second handgrip or a protruding grip that can be held by the non-trigger hand;

    (v)    a bayonet mount;

    (vi)    a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

    (vii)    a grenade launcher; or

(b) a semi-automatic shotgun that has at least one of the following characteristics:

    (i)    a folding or telescoping stock;

    (ii)    a thumbhole stock;

    (iii)    a second handgrip or a protruding grip that can be held by the non-trigger hand;

    (iv)    a fixed magazine capacity in excess of seven rounds;

    (v)    an ability to accept a detachable magazine; or

(c) a semi-automatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

    (i)    a folding or telescoping stock;

    (ii)    a thumbhole stock;

    (iii)    a second handgrip or a protruding grip that can be held by the non-trigger hand;

    (iv)    capacity to accept an ammunition magazine that attaches to the pistol outside

of the pistol grip;

> (v)     a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

> (vi)    a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

> (vii)   a manufactured weight of fifty ounces or more when the pistol is unloaded, or;

> (viii)  a semi-automatic version of an automatic rifle, shotgun, or firearm;

(d) a revolving cylinder shotgun;

(e) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined by [New York Penal Law § 265.00(22)(e)(v) as that section read under] the laws of [2000 and otherwise lawfully possessed] prior to September [14, 1994]; or

(f) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined [above] in [sub]paragraph (a), (b), or (c) [and] possessed prior to [January 15, 2013].

N.Y. PENAL LAW § 265.00(22)(a)-(f).

15.     New York categorically prohibits possession of all such firearms.  *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2015).

16.     Violation of New York's Semiautomatic Firearm Ban is a Class D felony punishable by up to seven years in prison and a fine between $2,000 and $10,000.  N.Y. PENAL LAW §§ 265.02(7), 265.10, 70.02.

## II.     NEW YORK BANS RIFLES IN COMMON USE

17.     Semiautomatic firearms "traditionally have been widely accepted as lawful possessions," *e.g., Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and the Second Circuit has previously held that "[e]ven accepting the most conservative estimates" firearms banned by New York law "are 'in common use' as that term was used in *Heller*." *Cuomo*, 804 F.3d at 255.

18.     Rifles built on an "AR-style" platform are a paradigmatic example of the type of arm New York bans ("AR" is short for ArmaLite Rifle; ArmaLite originally designed the platform).

19.     AR-15 rifles are among the most popular firearms in the nation, and they are owned by millions of Americans.  A recent survey of gun owners indicates that about 24.6 million Americans have owned up to 44 million AR-15s or similar modern sporting rifles, with the "median owner" identified as owning a single rifle.  William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 1, 33 (May 13, 2022).[3]

20.     And according to industry sources, approximately 20% of all firearms sold in recent years were rifles of the type banned by New York.  Nat'l Shooting Sports Found., Inc., *Firearms Retailer Survey Report, 2021* at 9.  In 2020, more than 20 million adults participated in target or sport shooting with semiautomatic rifles like those banned in New York.  Nat'l Shooting Sports Found., Inc., *Sport Shooting Participation in the U.S. in 2020* at iii.

---

[3] This citation, and others below that are underscored, are hyperlinks to web-based copies.

21.      The banned semiautomatic firearms, like all other semiautomatic firearms, fire only one round for each pull of the trigger.  They are not machine guns.  *Staples*, 511 U.S. at 602 n.1.  What is more, the designation "assault weapons" is a complete misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

22.      A comparison to firearms used by the military demonstrates just how disingenuous the "assault weapon" moniker is.  While an AR-15 can only fire as often as a person can pull its trigger, an M249 light machine gun, commonly used by the U.S. military, can fire between 750 and 1,000 rounds per minute.  FAS Military Analysis Network, *Squad Automatic Weapon (SAW), M249 Light Machine Gun*.  "Heavy" machine guns like the M61 series can fire significantly larger caliber ammunition (20mm) much faster yet (6,000 rounds per minute).  FAS Military Analysis Network, *M61A1/M61A2 20mm Automatic Gun*.

23.      Unlike these "weapons of war," central among the common uses of semiautomatic firearms banned in New York is self-defense in the home.  A majority of owners of AR-style rifles owned their firearms for self-defense.  English, *2021 National Firearms Survey, supra,* at 34 (61.9% owned for home defense; 34.6% owned for defense outside the home).

24.      An AR-15 rifle is an optimal firearm to rely on in a self-defense encounter. Most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition.  This is a relatively inexpensive and very common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered, but loses velocity relatively quickly after passing through a

target and other objects, thus decreasing the chance that an errant shot will strike an unintended target. Although most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risk to unintended targets in the home.

25. Like the AR-15 generally, the specific features banned by New York aid home defense. A flash suppressor, for example, not only reduces the chances that a home-invader will identify his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 397 (1994).

26. Folding and telescoping stocks increase the likelihood of successful home defense by permitting safe storage of defense instruments in accessible spaces and making the rifle maneuverable in confined spaces. *Id.* at 398–99. A telescoping stock also allows a firearm to be better fitted to an individual shooter, thereby enhancing the ability of an individual to use the firearm safely and effectively.

27. Pistol grips improve accuracy and reduce the risk of stray shots by stabilizing the firearm while firing from the shoulder. *Id.* at 396.

28. Most common semiautomatic firearms, including those banned under New York law, can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters reload their weapon in stressful defense circumstances, but in the case of some platforms, including the common AR-15, they are required to safely and quickly remedy malfunctions.

29.     Encounters with criminal intruders in the home are not uncommon.  For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases.  Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property.  Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. of Crim. L. & Criminology 150, 164 (1995); *see also* English, *National Firearms Survey, supra* at 9 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 defensive firearm uses a year).

30.     Other common, lawful uses of the banned firearms are hunting and sport.  At least a third of all gun-owners use a firearm for hunting or sport shooting, and recreational target shooting is a top reason for owning semiautomatic rifles like those banned by New York.

31.     Here again, the banned features of semiautomatic firearms—mischaracterized as assault weapons—serve lawful purposes.  Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat.  These stocks also ease carrying over long distances while hunting.

32.     Both telescoping stocks and protruding grips open hunting and sport-shooting to those for whom recoil poses a challenge.  Detachable magazines have the same benefits in hunting and sport-shooting as they do in home defense—improved reloading and

remedying of malfunctions.  And flash suppressors promote accuracy in target-shooting and hunting (especially at dawn).

33.     By contrast, one use that is not common for so-called "assault weapons" is crime.  According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes."  Christopher Koper, *Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994-2003*, U.S. Dep't of Just. (2004).  This has long been true.  Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'").  Indeed, according to FBI statistics in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects.  Expanded Homicide Table 8, Crime in the United States (FBI 2019).

34.     The arms banned as "assault weapons" under New York's Semiautomatic Firearm Ban are not both dangerous *and* unusual.

35.     The arms banned as "assault weapons" under New York's Semiautomatic Firearm Ban are common in all respects: 1) They are common categorically, as they are all functionally semiautomatic in their operation; 2) they are common characteristically, as they are all popular configurations of arms (e.g., rifles, shotguns, handguns) with varying barrel lengths and common characteristics like pistol grips and the like; and 3) they are common jurisdictionally, lawful to possess and use in the vast majority of states now and throughout relevant history for a wide variety of lawful purposes including self-defense, proficiency training, competition, recreation, hunting, and collecting.

36.     There is no constitutionally relevant difference between a semiautomatic handgun, shotgun, and rifle.  While some exterior physical attributes may differ—wood vs. metal stocks and furniture, the number and/or location of grips, having a bare muzzle vs. having muzzle devices, different barrel lengths, etc.—they are, in all *relevant* respects, the same.

37.     Indeed, they are all common firearms that insert cartridges into a firing chamber, burn powder to expel projectiles through barrels, and are functionally semiautomatic in nature.  They are all common firearms that have the same cyclical rate of fire: one round fired per pull of the trigger pull until ammunition is exhausted or the firearm or feeding device malfunctions.  They are all common under the same jurisdictional analysis.  And they are all subject to the same constitutionally relevant history under which New York's Semiautomatic Firearm Ban is clearly and categorically unconstitutional.

38.     The statute's ban on acquiring, purchasing, receiving, transporting, possessing, and lawfully using an "assault weapon" is, therefore, a ban on keeping and bearing semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home.

## III.    THE EFFECT ON PLAINTIFFS

39.     Plaintiff J. Mark Lane lives in Westchester County, New York.  Lane intends and desires to exercise his right to keep and bear a so-called "assault weapon," for lawful purposes, especially home defense and target shooting.  Specifically, if allowed, Lane would purchase (and would have already purchased) a Springfield Armory Saint rifle, which is an AR-15 style rifle capable of accepting a detachable magazine, with a telescoping stock, pistol grip, and muzzle device.  Lane would purchase this rifle now, if not prohibited.  But

this rifle, and others with these common features, are illegal under New York's Semiautomatic Firearm Ban. Lane would immediately acquire, purchase or receive, and lawfully use this firearm (and would have already), were it not for Defendants' enforcement of New York's Semiautomatic Firearm Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment, Lane continues to refrain from acquiring, possessing, and lawfully using a Springfield Armory Saint rifle, or any similarly prohibited firearm, for self-defense and other lawful purposes.

40.     Plaintiff James Sears lives in Westchester County, New York. Sears intends and desires to exercise his right to keep and bear a so-called "assault weapon," for lawful purposes, especially home defense and target shooting. Specifically, if allowed, Sears would purchase (and would have already purchased) an LMT MARS-L 5.56 rifle, which is an AR-15 style rifle capable of accepting a detachable magazine, with a telescoping stock, pistol grip, and muzzle device. Sears would purchase this rifle now, as well as other commonly owned firearms, if not prohibited by the Semiautomatic Firearm Ban. But this rifle, and others with these common features, are illegal under New York's Semiautomatic Firearm Ban. Sears would immediately acquire, purchase or receive, and lawfully use an LMT MARS-L 5.56 rifle (and would have already), were it not for Defendants' enforcement of New York's Semiautomatic Firearm Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment, Sears continues to refrain from acquiring, possessing, and lawfully using an LMT MARS-L 5.56 rifle, or any similarly prohibited firearm, for self-defense and other lawful purposes.

## IV.  DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AMENDMENT.

41.    The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

42.    The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

43.    The Second Amendment is fully applicable to the States through the Fourteenth Amendment.  *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

44.    "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008) (emphasis in original).

45.    "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634–35.

46.    For this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582 (citations

omitted).

47.     When the Second Circuit upheld the constitutionality of New York's Semiautomatic Firearm Ban in 2015, it relied on a two-step test that was "one step too many." *Bruen*, 142 S. Ct. at 2127; *see also Cuomo*, 804 F.3d at 253.  Because the Second Circuit concluded that the so-called "assault weapons" at issue here are in common use, it should have held that the ban on ownership of such firearms violates the Second Amendment.  *Cuomo*, 804 F.3d at 254; *see also Bruen*, 142 S. Ct. at 2127.

48.     In order to justify a law that affects Plaintiffs' Second Amendment rights, the government bears the affirmative burden of proving that the regulation is consistent with our nation's history and tradition.  *Bruen*, 142 S. Ct. at 2127.  As a matter of law, any regulation that bans firearm ownership in common use for lawful purposes like self-defense is inconsistent with this nation's history and tradition, and thus violates the Second Amendment.  *Id.* at 2128; *Heller*, 554 U.S. at 624.

49.     The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions.  And they are, moreover, exactly what they would bring to service in militia duty, should such be necessary.  In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

50.     When seconds count, and the police are minutes or hours away, if they come at all—they certainly have no obligation to, *see, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)—the People have a constitutional right to make use of common firearms for effective self-defense and not to be disarmed by the enforcement of the Semiautomatic Firearm Ban.

51. Assuming ordinary citizens are not disqualified from exercising Second Amendment rights, the State must permit them to keep and bear the common firearms banned by New York for lawful purposes.

52. The Second Amendment is an "unqualified command." *Bruen*, 142 S. Ct. at 2130. The Second Amendment does not accommodate the use of any "means-ends scrutiny" of the kind that the Second Circuit applied when it upheld the constitutionality of New York's laws. *Id.*; *Cuomo*, 804 F.3d at 253. When a law—like New York's Semiautomatic Firearm Ban at issue here—prevents citizens from owning firearms that are in common use for lawful purposes, then the law violates the Second Amendment. *Bruen*, 142 S. Ct. at 2129–30. It cannot be justified by reference to any countervailing governmental interest. *Id.*

53. The right to keep and bear common firearms guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prohibit ordinary, law-abiding citizens from keeping and bearing common firearms—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

54. The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Heller*, 554 U.S. at 636.

55. Yet, this is precisely how New York's Semiautomatic Firearm Ban operates, completely shutting out ordinary, law-abiding citizens from exercising their constitutional rights in New York.

## COUNT ONE

**42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution**

56.     Plaintiffs reiterate paragraphs one through 55 as if fully set forth herein.

57.     There is an actual and present controversy between the parties.

58.     The Second and Fourteenth Amendments to the United States Constitution guarantee ordinary, law-abiding citizens of states their fundamental right to keep and bear arms, both in the home and in public.

59.     The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

60.     The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, purchase, receive, transport, possess, and lawfully use common firearms for all lawful purposes, including self-defense.

61.     New York' bans firearms that are commonly used for lawful purposes, grounding this ban on an arbitrary combination of features that do not make a firearm more powerful or dangerous.  No adequate basis exists to restrict such firearms, which fire only once per trigger pull, like all other semiautomatic firearms.

62.     42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

63.     Defendants, individually and collectively, and under color of state law at all relevant times, have deprived the fundamental constitutional rights of persons in New York, including Plaintiffs Lane and Sears, through enforcement of the Semiautomatic Firearm Ban.

64.     For all the reasons asserted herein, Defendants have acted in violation of, and

continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

**PRAYER FOR RELIEF**

65.     WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.     A declaratory judgment that Plaintiffs Lane and Sears have a

fundamental right to keep and bear arms, including by acquiring, purchasing,

receiving, transporting, possessing, and lawfully using common semiautomatic

firearms banned in New York for all lawful purposes including self-defense, as

guaranteed under the Second and Fourteenth Amendments to the United States

Constitution;

b.     A declaratory judgment that New York's ban on common

semiautomatic firearms, including N.Y. Penal Law §§ 265.00(22)(a)-(f); 265.02(7);

265.10, 70.02 and all related regulations, policies, and/or customs designed to

enforce or implement the same, prevent Plaintiffs Lane and Sears from exercising

their fundamental right to keep and bear arms, including by acquiring, purchasing,

receiving, transporting, possessing, and lawfully using common semiautomatic

firearms banned under New York law for all lawful purposes including self-defense,

as guaranteed under the Second and Fourteenth Amendments to the United States

Constitution;

c.     A permanent injunction prohibiting each Defendant, and Defendants'

respective employees, officers, agents, representatives, and all those acting in concert

or participation with them, from enforcing New York's ban on semiautomatic

firearms and all related regulations, policies, and/or customs designed to enforce or

implement the same;

        d.     Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

        e.     Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated:   Buffalo, New York
         December 30, 2022

<table>
<tr><td></td><td>PHILLIPS LYTLE LLP</td></tr>
<tr><td>Cody J. Wisniewski, Esq.*<br>FIREARMS POLICY COALITION, INC.<br>Attorneys for Plaintiffs<br>*J. Mark Lane and James Sears*<br>5550 Painted Mirage Rd.<br>Ste. 320<br>Las Vegas, NV 89149<br>(916) 378-5785<br>cwi@fpchq.org</td><td>By: /s/ Nicolas J. Rotsko<br>    Nicolas J. Rotsko<br>    Sam M. Williams<br>Attorneys for Plaintiffs<br>*J. Mark Lane and James Sears*<br>One Canalside<br>125 Main Street<br>Buffalo, New York  14203-2887<br>Telephone No. (716) 847-8400<br>nrotsko@phillipslytle.com<br>swilliams@phillipslytle.com</td></tr>
<tr><td>Adam J. Kraut, Esq.*<br>SECOND AMENDMENT FOUNDATION<br>Attorneys for Plaintiffs<br>*J. Mark Lane and James Sears*<br>12500 NE 10th Place<br>Bellevue, WA, 98005<br>1-800-426-4302<br>akraut@saf.org</td><td></td></tr>
</table>

*App. to appear *pro hac vice* forthcoming

JS 44C/SDNY
REV.
10/01/2020

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**
J. Mark Lane, and
James Sears

**DEFENDANTS**
Letitia James, in her official capacity as Attorney General of the State of New York,
Steven A. Nigrelli, in his official capacity as Superintendent of the New York State Police, and
Miriam E. Rocah, in her official capacity as District Attorney for the County of Westchester, New York

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**
Nicolas J. Rotsko
Phillips Lytle LLP, One Canalside, 125 Main St., Buffalo, NY 14203-2886
(716) 847-5467

ATTORNEYS (IF KNOWN)

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 1343; 28 U.S.C. §§ 1651, 2201, and 2202; 42 U.S.C. §§ 1983 and 1988; Challenge to New York Statute under U.S. Constitution

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [x] Yes [ ]    Judge Previously Assigned

If yes, was this case  Vol. [ ]  Invol. [ ]  Dismissed.  No [ ]  Yes [ ]  If yes, give date _____ & Case No. _____

**IS THIS AN INTERNATIONAL ARBITRATION CASE?**        No [x]      Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*                **NATURE OF SUIT**

### TORTS

### ACTIONS UNDER STATUTES

**CONTRACT**
[ ] 110  INSURANCE
[ ] 120  MARINE
[ ] 130  MILLER ACT
[ ] 140  NEGOTIABLE INSTRUMENT
[ ] 150  RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151  MEDICARE ACT
[ ] 152  RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153  RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160  STOCKHOLDERS SUITS
[ ] 190  OTHER CONTRACT
[ ] 195  CONTRACT PRODUCT LIABILITY
[ ] 196  FRANCHISE

**REAL PROPERTY**
[ ] 210  LAND CONDEMNATION
[ ] 220  FORECLOSURE
[ ] 230  RENT LEASE & EJECTMENT
[ ] 240  TORTS TO LAND
[ ] 245  TORT PRODUCT LIABILITY
[ ] 290  ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
[ ] 310  AIRPLANE
[ ] 315  AIRPLANE PRODUCT LIABILITY
[ ] 320  ASSAULT, LIBEL & SLANDER
[ ] 330  FEDERAL EMPLOYERS' LIABILITY
[ ] 340  MARINE
[ ] 345  MARINE PRODUCT LIABILITY
[ ] 350  MOTOR VEHICLE
[ ] 355  MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360  OTHER PERSONAL INJURY
[ ] 362  PERSONAL INJURY - MED MALPRACTICE

**PERSONAL INJURY**
[ ] 367  HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
[ ] 365  PERSONAL INJURY PRODUCT LIABILITY
[ ] 368  ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370  OTHER FRAUD
[ ] 371  TRUTH IN LENDING
[ ] 380  OTHER PERSONAL PROPERTY DAMAGE
[ ] 385  PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 463  ALIEN DETAINEE
[ ] 510  MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530  HABEAS CORPUS
[ ] 535  DEATH PENALTY
[ ] 540  MANDAMUS & OTHER

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
[ ] 440  OTHER CIVIL RIGHTS (Non-Prisoner)
[ ] 441  VOTING
[ ] 442  EMPLOYMENT
[ ] 443  HOUSING/ ACCOMMODATIONS
[ ] 445  AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446  AMERICANS WITH DISABILITIES -OTHER
[ ] 448  EDUCATION

**PRISONER CIVIL RIGHTS**
[ ] 550  CIVIL RIGHTS
[ ] 555  PRISON CONDITION
[ ] 560  CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**FORFEITURE/PENALTY**
[ ] 625  DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 690  OTHER

**PROPERTY RIGHTS**
[ ] 820  COPYRIGHTS
[ ] 830  PATENT
[ ] 835  PATENT-ABBREVIATED NEW DRUG APPLICATION
[ ] 840  TRADEMARK

**LABOR**
[ ] 710  FAIR LABOR STANDARDS ACT
[ ] 720  LABOR/MGMT RELATIONS
[ ] 740  RAILWAY LABOR ACT
[ ] 751  FAMILY MEDICAL LEAVE ACT (FMLA)
[ ] 790  OTHER LABOR LITIGATION
[ ] 791  EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
[ ] 462  NATURALIZATION APPLICATION
[ ] 465  OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
[ ] 422  APPEAL 28 USC 158
[ ] 423  WITHDRAWAL 28 USC 157

**SOCIAL SECURITY**
[ ] 861  HIA (1395ff)
[ ] 862  BLACK LUNG (923)
[ ] 863  DIWC/DIWW (405(g))
[ ] 864  SSID TITLE XVI
[ ] 865  RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870  TAXES (U.S. Plaintiff or Defendant)
[ ] 871  IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 375  FALSE CLAIMS
[ ] 376  QUI TAM
[ ] 400  STATE REAPPORTIONMENT
[ ] 410  ANTITRUST
[ ] 430  BANKS & BANKING
[ ] 450  COMMERCE
[ ] 460  DEPORTATION
[ ] 470  RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480  CONSUMER CREDIT
[ ] 485  TELEPHONE CONSUMER PROTECTION ACT

[ ] 490  CABLE/SATELLITE TV
[ ] 850  SECURITIES/ COMMODITIES/ EXCHANGE

[ ] 890  OTHER STATUTORY ACTIONS
[ ] 891  AGRICULTURAL ACTS
[ ] 893  ENVIRONMENTAL MATTERS
[ ] 895  FREEDOM OF INFORMATION ACT
[ ] 896  ARBITRATION
[ ] 899  ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION
[x] 950  CONSTITUTIONALITY OF STATE STATUTES

[ ] 880  DEFEND TRADE SECRETS ACT

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____  OTHER  Injunction; Attorneys' Fees

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?

IF SO, STATE:

JUDGE _____    DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [x] NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN x IN ONE BOX ONLY)*

**ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from (Specify District)  ☐ 6 Multidistrict Litigation (Transferred)  ☐ 7 Appeal to District Judge from Magistrate Judge

☐ a. all parties represented

☐ b. At least one party is pro se.

☐ 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)*

**BASIS OF JURISDICTION**

*IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)  ☐ 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

J. Mark Lane, Larchmont, NY 10538 (Westchester County)

James Sears, Irving NY 10533 (Westchester County)

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

Letitia James, in her official capacity as Attorney General of the State of New York, Office of the Attorney General, The Capitol, Albany, NY 12224

Steven E. Nigrelli, in his official capacity as Superintendent of the New York State Police, 1220 Washington Avenue, Building 22, Albany, NY 12226

Miriam E. Rocah, in her official capacity as District Attorney for the County of Westchester, New York, 111 Dr. Martin Luther King, Jr. Blvd., White Plains, New York 10601

**DEFENDANT(S) ADDRESS UNKNOWN**

REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:  THIS ACTION SHOULD BE ASSIGNED TO:  ☒ WHITE PLAINS  ☐ MANHATTAN

DATE 12/30/2022  /s/ Nicolas J. Rotsko  
SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT  
[ ] NO  
[x] YES (DATE ADMITTED Mo. 11  Yr. 2022 )  
Attorney Bar Code # 4964169

RECEIPT #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)