# EXHIBIT N

in any newspaper having a general circulation within the town may be made in place of such posting.

§ 3-4.0 Notice of publication of assessment roll to non-residents. Between the twenty-fourth and twenty-ninth days of [June] *May* the board of assessors shall mail a copy of the notice prescribed by section 3-3.0 to each non-resident corporation and person who has filed a written demand therefor with the town clerk on or before the fifteenth day of the preceding [May] *April.* In addition to the matters included in such notice pursuant to section 3-3.0, such notice shall also specify each parcel of land assessed to such non-resident corporation or person and the assessed valuation thereof. Upon application made before the first Tuesday of [July] *June* by any such owner of real estate, the assessors shall fix a time subsequent to the first Tuesday in [July] *June,* but not later than the second Tuesday of [July] *June,* for a hearing to review their assessment.

§ 3-5.0 Final completion. The assessment roll shall be finally completed, verified and filed with the town clerk in accordance with the provisions of the state real property tax law, on or before the first day of [August] *July* in each year.

§ 2. This act shall take effect September 1, 2000.

---

## CHAPTER 189

AN ACT to amend the criminal procedure law, the general business law and the penal law, in relation to assault weapons and large capacity ammunition feeding devices, gun locking devices, creating a ballistic identification databank, sales of firearms, rifles or shotguns at gun shows and establishing a minimum age to possess a firearm; to amend the executive law and the state finance law, in relation to establishing a gun trafficking interdiction program and a gun tracer program; to amend the penal law, in relation to requiring the report of a stolen or lost weapon to a police agency; and to authorize a study relating to the availability and effectiveness of existing technology for use of smart guns

Became a law August 8, 2000, with the approval of the Governor. Passed on message of necessity pursuant to Article III, section 14 of the Constitution by a majority vote, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subparagraph (iv) of paragraph (d) of subdivision 5 of section 220.10 of the criminal procedure law, as amended by chapter 33 of the laws of 1999, is amended to read as follows:

(iv) Where the indictment charges the class D violent felony offenses of criminal possession of a weapon in the third degree as defined in subdivision four of section 265.02 of the penal law and the provisions of subparagraph (iii) of this paragraph do not apply, or subdivision five, *seven or eight* of section 265.02 of the penal law, then a plea of guilty must include at least a plea of guilty to a class E violent felony offense.

§ 2. Subparagraph (v) of paragraph (b) of subdivision 3 of section 220.30 of the criminal procedure law, as amended by chapter 33 of the laws of 1999, is amended to read as follows:

(v) A plea of guilty, whether to the entire indictment or part of the indictment, for any crime other than a violent felony offense as defined in section 70.02 of the penal law, may not be accepted on the condition that it constitutes a complete disposition of one or more other indictments against the defendant wherein is charged the class D violent felony offenses of criminal possession of a weapon in the third degree as defined in subdivision four [or], five, *seven or eight* of section 265.02 of the penal law; provided, however, a plea of guilty, whether to the entire indictment or part of the indictment, for the class A misdemeanor of criminal possession of a weapon in the fourth degree as defined in subdivision one of section 265.01 of the penal law may be accepted on the condition that it constitutes a complete disposition of one or more other indictments against the defendant

wherein is charged the class D violent felony offense of criminal possession of a weapon in the third degree as defined in subdivision four of section 265.02 of the penal law when the defendant has not been previously convicted of a class A misdemeanor defined in the penal law in the five years preceding the commission of the offense.

§ 3. The general business law is amended by adding a new section 396-ee to read as follows:

§ 396-ee. *Sale of certain weapons; locking devices therefor. (1) No person, firm or corporation engaged in the retail business of selling rifles, shotguns or firearms, as such terms are defined in section 265.00 of the penal law, shall sell, deliver or transfer any such rifle, shotgun or firearm to another person unless the transferee is provided at the time of sale, delivery or transfer with a gun locking device and a label containing the quoted language specified in subdivision two of this section is either affixed to such rifle, shotgun or firearm or placed in the container in which such rifle, shotgun or firearm is sold, delivered or transferred. For the purposes of this section, the term "gun locking device" shall mean an integrated design feature or an attachable accessory that is resistant to tampering and is effective in preventing the discharge of such rifle, shotgun or firearm by a person who does not have access to the key, combination or other mechanism used to disengage the device. The division of state police shall develop and promulgate rules and regulations setting forth the specific devices or the minimum standards and criteria therefor which constitute an effective gun locking device.*

*(2) Every person, firm or corporation engaged in the retail business of selling rifles, shotguns or firearms, as such terms are defined in section 265.00 of the penal law, shall, in the place where such rifles, shotguns or firearms are displayed or transferred to the purchaser, post a notice conspicuously stating in bold print that: "The use of a locking device or safety lock is only one aspect of responsible firearm storage. For increased safety firearms should be stored unloaded and locked in a location that is both separate from their ammunition and inaccessible to children and any other unauthorized person."*

*(3) Any person, firm or corporation who fails to comply with the provisions of this section shall be guilty of a violation punishable as provided in the penal law. Any person, firm, or corporation who fails to comply with the provisions of this section after having been previously convicted of a violation of this section shall be guilty of a class A misdemeanor, punishable as provided in the penal law.*

§ 4. The general business law is amended by adding a new section 396-ff to read as follows:

§ 396-ff. *Pistol and revolver ballistic identification databank. (1) For the purposes of this section, the following terms shall have the following meanings:*

*(a) "Manufacturer" means any person, firm or corporation possessing a valid federal license that permits such person, firm or corporation to engage in the business of manufacturing pistols or revolvers or ammunition therefor for the purpose of sale or distribution.*

*(b) "Shell casing" means that part of ammunition capable of being used in a pistol or revolver that contains the primer and propellant powder to discharge the bullet or projectile.*

*(2) On and after March first, two thousand one, any manufacturer that ships, transports or delivers a pistol or revolver to any person in this state shall, in accordance with rules and regulations promulgated by the division of state police, include in the container with such pistol or revolver a separate sealed container that encloses:*

*(a) a shell casing of a bullet or projectile discharged from such pistol or revolver; and*

*(b) any additional information that identifies such pistol or revolver and shell casing as required by such rules and regulations.*

*(3) A gunsmith or dealer in firearms licensed in this state shall, within ten days of the receipt of any pistol or revolver from a manufacturer that fails to comply with the provisions of this section, either (a) return such pistol or revolver to such manufacturer, or (b) notify the division of state police of such noncompliance and thereafter obtain a substitute sealed container through participation in a program operated by the state police as provided in subdivision four of this section.*

*(4) The division of state police shall no later than October first, two thousand, promulgate rules and regulations for the operation of a program which provides a gunsmith or a dealer in firearms licensed in this state with a sealed container enclosing the items specified in subdivision two of this section. The program shall at a minimum:*

EXPLANATION--Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

(a) be operational by January first, two thousand one;
(b) operate in at least five regional locations within the state; and
(c) specify procedures by which such gunsmith or dealer is to deliver a pistol or revolver to the regional program location closest to his or her place of business for testing and prompt return of such pistol or revolver.

(5) On and after March first, two thousand one, a gunsmith or dealer in firearms licensed in this state shall, within ten days of delivering to any person a pistol or revolver received by such gunsmith or dealer in firearms on or after such date, forward to the division of state police, along with the original transaction report required by subdivision twelve of section 400.00 of the penal law, the sealed container enclosing the shell casing from such pistol or revolver either (a) received from the manufacturer, or (b) obtained through participation in the program operated by the division of state police in accordance with subdivision four of this section.

(6) Upon receipt of the sealed container, the division of state police shall cause to be entered in an automated electronic databank pertinent data and other ballistic information relevant to identification of the shell casing and to the pistol or revolver from which it was discharged. The automated electronic databank will be operated and maintained by the division of state police, in accordance with its rules and regulations adopted after consultation with the Federal Bureau of Investigation and the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms to ensure compatibility with national ballistic technology.

(7) Any person, firm or corporation who knowingly violates any of the provisions of this section shall be guilty of a violation, punishable as provided in the penal law. Any person, firm or corporation who knowingly violates any of the provisions of this section after having been previously convicted of a violation of this section shall be guilty of a class A misdemeanor, punishable as provided in the penal law.

§ 5. The general business law is amended by adding a new article 39-DD to read as follows:

## ARTICLE 39-DD

### SALE OF FIREARMS, RIFLES OR SHOTGUNS AT GUN SHOWS

Section 895. Definitions.
   896. Operation of a gun show.
   897. Sale of a firearm, rifle or shotgun at a gun show.

§ 895. Definitions. For the purposes of this article:
1. "Gun show" means an event sponsored, whether for profit or not, by an individual, national, state or local organization, association or other entity devoted to the collection, competitive use, sporting use, or any other legal use of firearms, rifles or shotguns, or an event at which (a) twenty percent or more of the total number of exhibitors are firearm exhibitors or (b) ten or more firearm exhibitors are participating or (c) a total of twenty-five or more pistols or revolvers are offered for sale or transfer or (d) a total of fifty or more firearms, rifles or shotguns are offered for sale or transfer. The term gun show shall include any building, structure or facility where firearms, rifles or shotguns are offered for sale or transfer and any grounds used in connection with the event.

2. "Firearm exhibitor" means any person, firm, partnership, corporation or company that exhibits, sells, offers for sale, transfers, or exchanges firearms, rifles or shotguns at a gun show.

3. "Gun show operator" means any person, firm, partnership, corporation or company that organizes, produces, sponsors or operates a gun show.

4. "Firearm" has the same meaning as that term is defined in 18 U.S.C. 921(a)(3), but shall not include an "antique firearm" as that term is defined in 18 U.S.C. 921(a)(16).

5. "Rifle" has the same meaning as that term is defined in 18 U.S.C. 921(a)(7).

6. "Shotgun" has the same meaning as that term is defined in 18 U.S.C. 921(a)(5).

§ 896. Operation of a gun show. 1. A gun show operator shall:
(a) at all times during such show conspicuously post and maintain signs stating "A National Instant Criminal Background Check must be completed prior to all firearm sales or transfers, including sales or transfers of rifles or shotguns". Signs must be posted at all

entrances to the gun show, at all places where admission tickets to the gun show are sold and not less than four additional locations within the grounds of the gun show;

(b) notify all firearm exhibitors in writing that a national instant criminal background check must be completed prior to all firearm sales or transfers, including sales or transfers of rifles or shotguns; and

(c) provide access at the gun show to a firearm dealer licensed under federal law who is authorized to perform a national instant criminal background check where the seller or transferor of a firearm, rifle or shotgun is not authorized to conduct such a check by (i) requiring firearm exhibitors who are firearm dealers licensed under federal law and who are authorized to conduct a national instant criminal background check to provide such a check at cost or (ii) designating a specific location at the gun show where a firearm dealer licensed under federal law who is authorized to conduct a national instant criminal background check will be present to perform such a check at cost. Any firearm dealer licensed under federal law who performs a national instant criminal background check pursuant to this paragraph shall provide the seller or transferor of the firearm, rifle or shotgun with a copy of the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms Form ATF F 4473 and such dealer shall maintain such form and make such form available for inspection by law enforcement agencies for a period of ten years thereafter.

2. Whenever the attorney general shall believe from evidence satisfactory to him or her that a gun show operator has violated any of the provisions of this section, the attorney general may bring an action or special proceeding in the supreme court for a judgment enjoining the continuance of such violation and for a civil penalty in an amount not to exceed ten thousand dollars. If it shall appear to the satisfaction of the court or justice that the defendant has violated any provisions of this section, no proof shall be required that any person has been injured thereby nor that the defendant intentionally violated such provision. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules. In connection with any such proposed application, the attorney general is authorized to take proof, issue subpoenas and administer oaths in the manner provided in the civil practice law and rules.

§ 897. *Sale of a firearm, rifle or shotgun at a gun show.* 1. *A national instant criminal background check shall be conducted and no person shall sell or transfer a firearm, rifle or shotgun at a gun show, except in accordance with the provisions of 18 U.S.C. 922(t).*

2. *No person shall offer or agree to sell or transfer a firearm, rifle or shotgun to another person at a gun show and transfer or deliver such firearm, rifle or shotgun to such person or person acting on his or her behalf thereafter at a location other than the gun show for the purpose of evading or avoiding compliance with 18 U.S.C. 922(t).*

3. *Any person who knowingly violates any of the provisions of this section shall be guilty of a class A misdemeanor punishable as provided for in the penal law.*

§ 6. Paragraphs (c) and (d) of subdivision 1 of section 70.02 of the penal law, paragraph (c) as amended by chapter 635 of the laws of 1999 and paragraph (d) as amended by chapter 378 of the laws of 1998, are amended to read as follows:

(c) Class D violent felony offenses: an attempt to commit any of the class C felonies set forth in paragraph (b); assault in the second degree as defined in section 120.05, stalking in the first degree, as defined in subdivision one of section 120.60, sexual abuse in the first degree as defined in section 130.65, course of sexual conduct against a child in the second degree as defined in section 130.80, aggravated sexual abuse in the third degree as defined in section 130.66, criminal possession of a weapon in the third degree as defined in [subdivisions] *subdivision* four, five [and], six, *seven or eight* of section 265.02, and intimidating a victim or witness in the second degree as defined in section 215.16.

(d) Class E violent felony offenses: an attempt to commit any of the felonies of criminal possession of a weapon in the third degree as defined in [subdivisions] *subdivision* four, five [and], six, *seven or eight* of section 265.02 as a lesser included offense of that section as defined in section 220.20 of the criminal procedure law.

§ 7. Paragraph (b) and the opening paragraph of paragraph (c) of subdivision 2 of section 70.02 of the penal law, as amended by chapter 33 of the laws of 1999, are amended to read as follows:

(b) Except as provided in subdivision six of section 60.05 and subdivision four of this section, the sentence imposed upon a person who stands convicted of a class D violent felony

EXPLANATION--Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

offense, other than the offense of criminal possession of a weapon in the third degree as defined in [subdivisions] *subdivision* four [and], five, *seven or eight* of section 265.02, must be in accordance with the applicable provisions of this chapter relating to sentencing for class D felonies provided, however, that where a sentence of imprisonment is imposed which requires a commitment to the state department of correctional services, such sentence shall be a determinate sentence in accordance with paragraph (c) of subdivision three of this section.

Except as provided in subdivision six of section 60.05, the sentence imposed upon a person who stands convicted of the class D violent felony offenses of criminal possession of a weapon in the third degree as defined in [subdivisions] *subdivision* four [and], five, *seven or eight* of section 265.02 or the class E violent felonies of attempted criminal possession of a weapon in the third degree as defined in [subdivisions] *subdivision* four [and], five, *seven or eight* of section 265.02 must be a sentence to a determinate period of imprisonment, or, in the alternative, a definite sentence of imprisonment for a period of no less than one year, except that:

§ 8. Subdivision 3 of section 265.00 of the penal law, as amended by chapter 264 of the laws of 1988, is amended to read as follows:

3. "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; *or (e) an assault weapon*. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm.

§ 9. Subdivisions 8 and 9 of section 265.00 of the penal law, subdivision 8 as amended by chapter 588 of the laws of 1972 and subdivision 9 as amended by chapter 462 of the laws of 1974, are amended to read as follows:

8. "Gunsmith" means any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, manufacturing, cleaning, polishing, engraving or trueing, or who performs any mechanical operation on, any firearm, *large capacity ammunition feeding device* or machine-gun.

9. "Dealer in firearms" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any *assault weapon, large capacity ammunition feeding device,* pistol or revolver.

§ 10. Section 265.00 of the penal law is amended by adding three new subdivisions 21, 22 and 23 to read as follows:

*21. "Semiautomatic" means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell.*

*22. "Assault weapon" means (a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least two of the following characteristics:*

*(i) a folding or telescoping stock;*
*(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;*
*(iii) a bayonet mount;*
*(iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor;*
*(v) a grenade launcher; or*
*(b) a semiautomatic shotgun that has at least two of the following characteristics:*
*(i) a folding or telescoping stock;*
*(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;*
*(iii) a fixed magazine capacity in excess of five rounds;*
*(iv) an ability to accept a detachable magazine; or*
*(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least two of the following characteristics:*
*(i) an ammunition magazine that attaches to the pistol outside of the pistol grip;*

(ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

(iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;

(iv) a manufactured weight of fifty ounces or more when the pistol is unloaded;

(v) a semiautomatic version of an automatic rifle, shotgun or firearm; or

(d) any of the weapons, or functioning frames or receivers of such weapons, or copies or duplicates of such weapons, in any caliber, known as:

(i) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all models);

(ii) Action Arms Israeli Military Industries UZI and Galil;

(iii) Beretta Ar70 (SC-70);

(iv) Colt AR-15;

(v) Fabrique National FN/FAL, FN/LAR, and FNC;

(vi) SWD M-10, M-11, M-11/9, and M-12;

(vii) Steyr AUG;

(viii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and

(ix) revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12;

(e) provided, however, that such term does not include: (i) any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm as defined in 18 U.S.C. 921(a)(16);

(ii) a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition;

(iii) a semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine;

(iv) a rifle, shotgun or pistol, or a replica or a duplicate thereof, specified in Appendix A to section 922 of 18 U.S.C. as such weapon was manufactured on October first, nineteen hundred ninety-three. The mere fact that a weapon is not listed in Appendix A shall not be construed to mean that such weapon is an assault weapon; or

(v) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or any of the weapons defined in paragraph (d) of this subdivision lawfully possessed prior to September fourteenth, nineteen hundred ninety-four.

23. "Large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device, manufactured after September thirteenth, nineteen hundred ninety-four, that has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

§ 11. Subdivisions 4, 5 and 6 of section 265.02 of the penal law, subdivision 4 as added by chapter 1041 of the laws of 1974, subdivision 5 as amended by chapter 175 of the laws of 1981 and subdivision 6 as added by chapter 378 of the laws of 1998, are amended and two new subdivisions 7 and 8 are added to read as follows:

(4) [He] *Such person* possesses any loaded firearm. Such possession shall not, except as provided in subdivision one *or seven*, constitute a violation of this section if such possession takes place in such person's home or place of business[.]; *or*

(5) (i) [He] *Such person* possesses twenty or more firearms; or (ii) [he] *such person* possesses a firearm and has been previously convicted of a felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person's home or place of business[.]; *or*

(6) [He] *Such person* knowingly possesses any disguised gun[.]; *or*

*(7) Such person possesses an assault weapon; or*

*(8) Such person possesses a large capacity ammunition feeding device.*

§ 12. Section 265.10 of the penal law, subdivisions 1 and 2 as amended by chapter 378 of the laws of 1998, subdivision 3 as amended by chapter 695 of the laws of 1987, subdivision 4 as amended by chapter 233 of the laws of 1980, subdivision 5 as amended by chapter 3 of the laws of 1978 and subdivision 7 as amended by chapter 1041 of the laws of 1974, is amended to read as follows:

EXPLANATION--Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

§ 265.10 Manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances.

1. Any person who manufactures or causes to be manufactured any machine-gun, *assault weapon, large capacity ammunition feeding device* or disguised gun is guilty of a class D felony. Any person who manufactures or causes to be manufactured any switchblade knife, gravity knife, pilum ballistic knife, metal knuckle knife, billy, blackjack, bludgeon, metal knuckles, Kung Fu star, chuka stick, sandbag, sandclub or slungshot is guilty of a class A misdemeanor.

2. Any person who transports or ships any machine-gun, firearm silencer, *assault weapon or large capacity ammunition feeding device* or disguised gun, or who transports or ships as merchandise five or more firearms, is guilty of a class D felony. Any person who transports or ships as merchandise any firearm, *other than an assault weapon*, switchblade knife, gravity knife, pilum ballistic knife, billy, blackjack, bludgeon, metal knuckles, Kung Fu star, chuka stick, sandbag or slungshot is guilty of a class A misdemeanor.

3. Any person who disposes of any machine-gun, *assault weapon, large capacity ammunition feeding device* or firearm silencer is guilty of a class D felony. Any person who knowingly buys, receives, disposes of, or conceals a machine-gun, firearm, *large capacity ammunition feeding device*, rifle or shotgun which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun, firearm, *large capacity ammunition feeding device*, rifle or shotgun is guilty of a class D felony.

4. Any person who disposes of any of the weapons, instruments or appliances specified in subdivision one of section 265.01, except a firearm, is guilty of a class A misdemeanor, and he is guilty of a class D felony if he has previously been convicted of any crime.

5. Any person who disposes of any of the weapons, instruments, appliances or substances specified in section 265.05 to any other person under the age of sixteen years is guilty of a class A misdemeanor.

6. Any person who wilfully defaces any machine-gun, *large capacity ammunition feeding device* or firearm is guilty of a class D felony.

7. Any person, other than a wholesale dealer, or gunsmith or dealer in firearms duly licensed pursuant to section 400.00, lawfully in possession of a firearm, who disposes of the same without first notifying in writing the licensing officer in the city of New York and counties of Nassau and Suffolk and elsewhere in the state the executive department, division of state police, Albany, is guilty of a class A misdemeanor.

§ 13. Subdivision 1 of section 265.11 of the penal law, as amended by chapter 310 of the laws of 1995, is amended to read as follows:

(1) sells, exchanges, gives or disposes of a firearm *or large capacity ammunition feeding device* to another person; or

§ 14. Subdivision 3 of section 265.15 of the penal law, as amended by chapter 219 of the laws of 1995, is amended to read as follows:

3. The presence in an automobile, other than a stolen one or a public omnibus, of any firearm, *large capacity ammunition feeding device*, defaced firearm, defaced rifle or shotgun, *defaced large capacity ammunition feeding device*, firearm silencer, explosive or incendiary bomb, bombshell, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, dagger, dirk, stiletto, billy, blackjack, metal knuckles, chuka stick, sandbag, sandclub or slungshot is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except under the following circumstances: (a) if such weapon, instrument or appliance is found upon the person of one of the occupants therein; (b) if such weapon, instrument or appliance is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his *or her* trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in his *or her* possession a valid license to have and carry concealed the same.

§ 14-a. The penal law is amended by adding a new section 265.17 to read as follows:

*§ 265.17 Criminal purchase of a weapon.*

*A person is guilty of criminal purchase of a weapon when:*

1. Knowing that he or she is prohibited by law from possessing a firearm, rifle or shotgun because of a prior conviction or because of some other disability which would render him or her ineligible to lawfully possess a firearm, rifle or shotgun in this state, such person attempts to purchase a firearm, rifle or shotgun from another person; or

2. Knowing that it would be unlawful for another person to possess a firearm, rifle or shotgun, he or she purchases a firearm, rifle or shotgun for, on behalf of, or for the use of such other person.

Criminal purchase of a weapon is a class A misdemeanor.

§ 15. Paragraph 2 of subdivision a of section 265.20 of the penal law, as amended by chapter 328 of the laws of 1986, is amended to read as follows:

2. Possession of a machine-gun, *large capacity ammunition feeding device*, firearm, switchblade knife, gravity knife, pilum ballistic knife, billy or blackjack by a warden, superintendent, headkeeper or deputy of a state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or detained as witnesses in criminal cases, in pursuit of official duty or when duly authorized by regulation or order to possess the same.

§ 15-a. Subdivision a of section 265.20 of the penal law is amended by adding a new paragraph 7-e to read as follows:

*7-e. Possession and use of a pistol or revolver, at an indoor or outdoor pistol range located in or on premises owned or occupied by a duly incorporated organization organized for conservation purposes or to foster proficiency in small arms or at a target pistol shooting competition under the auspices of or approved by an association or organization described in paragraph 7-a of this subdivision for the purpose of loading and firing the same by a person at least eighteen years of age but under the age of twenty-one who has not been previously convicted of a felony or serious offense, and who does not appear to be, or pose a threat to be, a danger to himself or to others; provided however, that such possession shall be of a pistol or revolver duly licensed to and shall be used under the immediate supervision, guidance and instruction of, a person specified in paragraph seven of this subdivision.*

§ 16. Paragraph 8 of subdivision a of section 265.20 of the penal law, as amended by chapter 378 of the laws of 1998, is amended to read as follows:

8. The manufacturer of machine-guns, *assault weapons, large capacity ammunition feeding devices*, disguised guns, pilum ballistic knives, switchblade or gravity knives, billies or blackjacks as merchandise and the disposal and shipment thereof direct to a regularly constituted or appointed state or municipal police department, sheriff, policeman or other peace officer, or to a state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, or to the military service of this state or of the United States.

§ 17. Paragraphs 11 and 16 of subdivision a of section 265.20 of the penal law, paragraph 11 as added by chapter 498 of the laws of 1976 and paragraph 16 as added by chapter 378 of the laws of 1998, are amended to read as follows:

11. Possession of a [pistol or revolver] *firearm or large capacity ammunition feeding device* by a police officer or sworn peace officer of another state while conducting official business within the state of New York.

16. The terms *"rifle," "shotgun,"* "pistol," "revolver," and "firearm" as used in paragraphs three, *four, five, seven*, seven-a, seven-b, nine, nine-a, ten, twelve, thirteen and thirteen-a of this subdivision shall not include a disguised gun *or an assault weapon*.

§ 18. Subdivision 1 of section 400.00 of the penal law, as amended by chapter 446 of the laws of 1997, is amended to read as follows:

1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) *twenty-one years of age or older, provided, however, that where such applicant has been honorably discharged from the United States army, navy, marine corps, air force or coast guard, or the national guard of the state of New York, no such age restriction shall apply;* (b) of good moral character; [(b)] *(c)* who has not been convicted anywhere of a felony or a serious offense; [(c)] *(d)* who has stated whether he *or she* has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; [(d)] *(e)* who has not had a license revoked or who is not under a suspension or ineligibility

EXPLANATION--Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

order issued pursuant to the provisions of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act; [(e)] *(f)* in the county of Westchester, who has successfully completed a firearms safety course and test as evidenced by a certificate of completion issued in his or her name and endorsed and affirmed under the penalties of perjury by a duly authorized instructor, except that: (i) persons who are honorably discharged from the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York, and produce evidence of official qualification in firearms during the term of service are not required to have completed those hours of a firearms safety course pertaining to the safe use, carrying, possession, maintenance and storage of a firearm; and (ii) persons who were licensed to possess a pistol or revolver prior to the effective date of this paragraph are not required to have completed a firearms safety course and test; and [(f)] *(g)* concerning whom no good cause exists for the denial of the license. No person shall engage in the business of gunsmith or dealer in firearms unless licensed pursuant to this section. An applicant to engage in such business shall also be a citizen of the United States, more than twenty-one years of age and maintain a place of business in the city or county where the license is issued. For such business, if the applicant is a firm or partnership, each member thereof shall comply with all of the requirements set forth in this subdivision and if the applicant is a corporation, each officer thereof shall so comply.

§ 19. Subdivision 2 of section 400.00 of the penal law, as amended by chapter 378 of the laws of 1998, is amended to read as follows:

2. Types of licenses. A license for gunsmith or dealer in firearms shall be issued to engage in such business. A license for a pistol or revolver, other than *an assault weapon or* a disguised gun, shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (g) have, possess, collect and carry antique pistols which are defined as follows: (i) any single shot, muzzle loading pistol with a matchlock, flintlock, percussion cap, or similar type of ignition system manufactured in or before 1898, which is not designed for using rimfire or conventional centerfire fixed ammunition; and (ii) any replica of any pistol described in clause (i) hereof if such replica--

(1) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or

(2) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

§ 20. Subdivision 8 of section 400.00 of the penal law, as amended by chapter 320 of the laws of 1992, is amended to read as follows:

8. License: exhibition and display. Every licensee while carrying a pistol or revolver shall have on his *or her* person a license to carry the same. Every person licensed to possess a pistol or revolver on particular premises shall have the license for the same on such premises. Upon demand, the license shall be exhibited for inspection to any peace officer, who is acting pursuant to his *or her* special duties, or police officer. A license as gunsmith or dealer in firearms shall be prominently displayed on the licensed premises. A gunsmith or dealer of firearms may conduct business temporarily at a location other than the location specified on the license if such temporary location is the location for a gun show or event sponsored by any national, state, or local organization, or any affiliate of any such organization devoted to the collection, competitive use or other sporting use of firearms. *Any sale or transfer at a gun show must also comply with the provisions of article thirty-nine-DD of the general business law.* Records of receipt and disposition of firearms transactions conducted at such temporary location shall include the location of the sale or

other disposition and shall be entered in the permanent records of the gunsmith or dealer of firearms and retained on the location specified on the license. Nothing in this section shall authorize any licensee to conduct business from any motorized or towed vehicle. A separate fee shall not be required of a licensee with respect to business conducted under this subdivision. Any inspection or examination of inventory or records under this section at such temporary location shall be limited to inventory consisting of, or records related to, firearms held or disposed at such temporary locations. Failure of any licensee to so exhibit or display his *or her* license, as the case may be, shall be presumptive evidence that he *or she* is not duly licensed.

§ 21. The executive law is amended by adding a new section 230 to read as follows:

*§ 230. Gun trafficking interdiction program. 1. There is hereby created within the division of criminal justice services a gun trafficking interdiction program to be administered by the commissioner of the division of criminal justice services to distribute funds in accordance with the provisions of this section for the purpose of interdicting guns and components of guns illegally entering New York with a focus on those "supplier" states from which substantial numbers of guns illegally enter this state.*

*2. The superintendent of the division of state police, in cooperation with the United States department of treasury, bureau of alcohol, tobacco and firearms and district attorneys in New York state, shall develop and implement a strategy for the interdiction of guns illegally entering New York from supplier states. The strategy shall include identifying and prosecuting gun traffickers and suppliers of such guns who may be violating federal, state or local laws, and cooperating with the United States department of treasury, bureau of alcohol, tobacco and firearms and appropriate prosecutorial agencies and law enforcement agencies in supplier states in the investigation and enforcement of such laws. District attorneys are authorized to enter into collaborative agreements with prosecutorial and other governmental agencies and entities in supplier states in an effort to stop the movement of illegal guns into New York.*

*3. The commissioner of the division of criminal justice services shall award grant monies to district attorneys for programs which are designed to interdict the flow of illegal guns across New York state borders. In order to qualify for such grant monies, a district attorney must submit an application to the commissioner of the division of criminal justice services in accordance with guidelines prescribed by the division of criminal justice services. The application shall identify a strategy and implementation plan for preventing the entry of illegal guns across New York's borders. Funds awarded under this section shall not be used to supplant federal, state or local funds. No more than fifty percent of the funds available pursuant to this section in any one fiscal year shall be awarded for programs within a single city, county, town or village.*

*4. The superintendent of the division of state police shall establish and maintain within the division a criminal gun clearinghouse as a central repository of information regarding all guns seized, forfeited, found or otherwise coming into the possession of any state or local law enforcement agency which are believed to have been used in the commission of a crime. The superintendent of the division of state police shall adopt and promulgate regulations prescribing reporting procedures for such state or local law enforcement agencies, including the form for reporting such information. In addition to any other information which the superintendent of the division of state police may require, the form shall require (a) the serial number or other identifying information on the gun, if available and (b) a brief description of the circumstances under which the gun came into the possession of the law enforcement agency, including the crime which was or may have been committed with the gun.*

*5. In any case where a state or local law enforcement agency investigates the commission of a crime in this state and a specific gun is known to have been used in such crime, such agency shall submit a request to the national tracing center of the United States Department of Treasury, bureau of alcohol, tobacco and firearms to trace the movement of such gun and such federal agency shall be requested to provide the superintendent of the division of state police and the local law enforcement agency with the results of such a trace. This subdivision shall not apply where the source of a gun is already known to a local law enforcement agency.*

§ 22. The state finance law is amended by adding a new section 97-www to read as follows:

*§ 97-www. Gun trafficking interdiction fund. 1. There is hereby established in the custody of the state comptroller a special fund to be known as the "gun trafficking interdiction fund".*

EXPLANATION--Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

2. Such fund shall consist of all moneys appropriated for the purpose of such fund, all other moneys credited or transferred to such fund pursuant to law, all moneys required by the provisions of this section or any other law to be paid into or credited to such fund, and all moneys received by the fund or donated to it.

3. Moneys of such fund shall be available for appropriation and allocation to the division of criminal justice services for the purpose of funding the gun trafficking interdiction program as set forth in section two hundred thirty of the executive law.

4. Moneys shall be paid out on the audit and warrant of the comptroller on vouchers certified or approved by the commissioner of the division of criminal justice services.

§ 23. Subdivision 1 of section 400.10 of the penal law, as added by chapter 531 of the laws of 1984, is amended to read as follows:

1. (a) Any owner or other person lawfully in possession of a firearm, rifle or shotgun who suffers the loss or theft of said weapon shall within twenty-four hours of the discovery of the loss or theft report the facts and circumstances of the loss or theft to a police department or sheriff's office.

(b) Whenever a person reports the theft or loss of a firearm, rifle or shotgun to any [peace officer,] police department or sheriff's office, the officer or department receiving such report shall forward notice of such theft or loss to the division of state police via the New York [State Automated Criminal Justice Information System] *Statewide Police Information Network*. The notice shall contain information in compliance with the New York Statewide Police Information Network Operating Manual, including the caliber, make, model, manufacturer's name and serial number, if any, and any other distinguishing number or identification mark on the weapon.

§ 24. Section 400.10 of the penal law is amended by adding a new subdivision 3 to read as follows:

3. Notwithstanding any other provision of law, a violation of paragraph (a) of subdivision one of this section shall be punishable only by a fine not to exceed one hundred dollars.

§ 25. The legislature believes that many needless deaths caused by firearms may be prevented by the use of personalized firearms, more commonly known as "smart guns", which may only be fired by the authorized user. As an important first step in the possible use of this new type of personalized or "smart gun", the legislature is hereby directing the division of state police to conduct a comprehensive study of the feasibility of requiring the use of personalized firearms in this state.

The superintendent of the division of state police shall, in consultation with the United States Secretary of the Treasury, bureau of alcohol, tobacco and firearms, the National Law Enforcement and Correction Technology Lab located in Rome, New York, and such other private and public entities as the superintendent deems appropriate, conduct a comprehensive study of the availability and effectiveness of existing technology for the use of personalized firearms, commonly known as "smart guns" which may only be fired by the authorized user. Such study, shall include, but not be limited to, an examination of the availability and effectiveness of personalized firearms that incorporate within their design, and as part of their original manufacture, technology which limits their operational use and an examination of the availability and effectiveness of technology to transform non-personalized firearms into personalized firearms. Such technology may involve a variety of systems, such as mechanical or electronic systems, which restrict the operation of the firearm through radio frequency tagging, touch memory, remote control, fingerprint, magnetic encoding or other automated user identification systems. In addition, the superintendent shall examine and evaluate reports and studies conducted on the use of personalized firearms.

The superintendent of the division of state police shall, in collaboration with the United States Secretary of the Treasury, bureau of alcohol, tobacco and firearms, the National Law Enforcement and Correction Technology Lab located in Rome, New York, and such other public or private entities as the superintendent deems appropriate, formulate the necessary testing procedures for personalized firearms and test such firearms and prototypes of firearms or observe the testing of firearms and prototypes of firearms, to evaluate the effectiveness and safety of such firearms, including, but not limited to, whether such personalized firearms effectively preclude or prevent the personalized characteristics of such firearms from being deactivated.

A report, with recommendations, shall be submitted to the governor and the legislature not later than October 1, 2001. As part of such report, the superintendent of the division

of state police shall make recommendations as to the feasibility or desirability of requiring the use of personalized firearm technology for all firearms manufactured, possessed, sold, offered for sale, received, transferred, shipped, transported or distributed within this state, including whether, or to what extent the use of personalized firearm technology may not be appropriate for certain categories of firearms. For purposes of this section, the terms: (a) "authorized user" means the person who lawfully owns the firearm or a person to whom the owner has given express consent to lawfully use the firearm; and (b) "firearm" means a pistol or revolver.

§ 26. Nothing in this act shall be construed to prohibit a municipality or other unit of local government from adopting or maintaining a stricter standard regulating the subject matters contained in sections three, ten or the amendments made to paragraph (a) of subdivision 1 of section 400.00 of the penal law by section eighteen of this act by local law or ordinance.

§ 27. Severability. If any clause, sentence, paragraph, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid, the judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part of this act directly involved in the controversy in which the judgment shall have been rendered.

§ 28. This act shall take effect immediately; provided, however, that:

1. Sections one through three, six through nineteen and twenty-three and twenty-four of this act shall take effect on the first day of November next succeeding the date on which it shall have become a law; provided, further, however, that effective immediately the division of state police is authorized and directed to promulgate such rules and regulations as may be necessary to effectuate the provisions of sections three and four of this act; provided, further, that the amendments to subdivision 3 of section 265.00 of the penal law made by section eight of this act shall apply to offenses committed in violation of article 265 or 400 of the penal law on or after the first day of November next succeeding the date on which this act shall have become a law; and

2. The gun trafficking interdiction program and gun tracer program contained in section twenty-one of this act shall take effect November 1, 2000, provided further, however, that the superintendent of the division of state police is authorized and directed to immediately adopt, amend and promulgate such rules and regulations as may be necessary and desirable to effectuate the purposes of sections twenty-one and twenty-two of this act.

---

## CHAPTER 190

AN ACT prohibiting the recovery of costs in connection with a radiation leak at the Indian Point 2 Nuclear Facility on February 15, 2000

Became a law August 8, 2000, with the approval of the Governor.
Passed by a majority vote, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Declaration of legislative findings. The operator of a nuclear generating facility has a high duty of care to protect the health, safety and economic interests of its customers. Rate regulation of nuclear operators should discourage the taking of risks with regard to potential threats to public health and safety.

By continuing to operate steam generators known to be defective, and thereby increasing the risk of a radioactive release and/or an expensive plant outage, the Consolidated Edison Company failed to exercise reasonable care on behalf of the health, safety and economic interests of its customers. Therefore it would not be in the public interest for the company

EXPLANATION--Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.