UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                            :

J. MARK LANE and JAMES SEARS,         :

                       Plaintiffs,       :

         - against -         :

                           :    Case No. 22 Civ. 10989 (KMK)

STEVEN G. JAMES, in his official capacity as  :
Acting Superintendent of the New York State  :
Police, and MIRIAM E. ROCAH, in her official  :   **ORAL ARGUMENT**
capacity as District Attorney for the County of  :   **REQUESTED**
Westchester, New York,                        :

                    Defendants.      :
------------------------------------------------------------ X

## SUPERINTENDENT JAMES' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

                                         LETITIA JAMES
                                         Attorney General
                                         State of New York
                                         *Attorney for Superintendent Steven G. James*
                                         28 Liberty Street
                                         New York, New York 10005
                                         (212) 416-6295

Brenda E. Cooke
Suzanna Publicker Mettham
Yuval Rubinstein
James M. Thompson
Assistant Attorneys General
  *Of Counsel*

# **TABLE OF CONTENTS**

Page(s)

ARGUMENT..................................................................................................................................1

POINT I      ASSAULT RIFLES ARE OUTSIDE THE SECOND AMENDMENT'S SCOPE .1

         A.     § 265.00(22) Prohibits Unprotected "Accoutrements," Not "Arms"....................1

         B.     Assault Rifles Are Not Commonly Used for Self-Defense ....................................2

         C.     Assault Rifles Are Dangerous and Unusual Weapons...........................................4

POINT II:     THE PROHIBITION ON ASSAULT RIFLES IS CONSISTENT WITH AMERICAN LEGAL HISTORY AND TRADITION …………..............................5

         A.     New York's Assault Weapons Laws Are Relevantly Similar to Weapons Prohibitions Throughout Anglo-American History ..................................................5

         B.     The Assault Weapon Laws Are Further Supported by the Tradition of Prohibiting the Carriage of Weapons That Cause Public Terror............................7

POINT III:    PLAINTIFFS' NEW AND INADMISSIBLE "FACTS" SHOULD BE DISREGARDED ........................................................................................................8

CONCLUSION.............................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                        **Page(s)**

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023),
   *cert. granted, judgment vacated*, 2024 WL 3259671 (U.S. July 2, 2024) ...................................3

*Ass'n of N.J. Rifle & Pistol Clubs v. Platkin*, *("ANJRPC")*, No. 18 Civ. 10507,
   2024 WL 3585580 (D.N.J. July 30, 2024) ................................................................... 3, 10

*Burroughs v. Cnty. of Nassau*, No. 13 Civ. 6784,
   2014 WL 2587580 (E.D.N.Y. June 9, 2014) .........................................................................8

*Capen v. Campbell*, No. 22-cv-11431,
   2024 WL 8851005 (D. Mass. Dec. 21, 2023) ......................................................................7

*City of New Brunswick v. Borough of Milltown*, 686 F.2d 120 (3d Cir. 1982) .............................10

*District of Columbia v. Heller*, 554 U.S. 570 (2008)..........................................................2, 3, 4, 6

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, __F.4th__,
   2024 WL 3406290 (3d Cir. July 15, 2024) ....................................................................... 3, 4

*Goldstick v. The Hartford, Inc.*, No. 00-CV-8577,
   2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) ......................................................................9

*Hanson v. District of Columbia*, 671 F.Supp.3d 1 (D.D.C. 2023) ...............................................7

*In re Application of Lake Hldg. & Fin. S.A.*, No. 20-MC-652,
   2021 WL 2581427 (S.D.N.Y. June 23, 2021) .......................................................................9

*Landell v. Sorrell*, 382 F.3d 91 (2d Cir. 2004),
   *rev'd on other grounds sub nom. Randall v. Sorrell*, 548 U.S. 230 (2006) ......................................10

*Langevin v. Chenango Ct., Inc.*, 447 F.2d 296 (2d Cir. 1971) ......................................................9

*Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023) .....................................................1

*Nat'l Ass'n for Gun Rights v. Lamont*, ("*NAGR*"), 2023 WL 4975979 (D. Conn. Aug. 3, 2023),
   *appeal pending*, No. 23-1162 (2d Cir.)........................................................................... 3, 4

*New Look Party Ltd. v. Louise Paris Ltd.*, No. 11 Civ. 6433,
   2012 WL 251976 (S.D.N.Y. Jan. 11, 2012) .........................................................................9

*NYSRPA v. Bruen*, 597 U.S. 1 (2022) ..........................................................................*passim*

*Ocean State Tactical, LLC v. Rhode Island*, 646 F.Supp.3d 368 (D.R.I. 2022),
   *aff'd on other grounds*, 95 F.4th 38 (1st Cir. 2024) ..................................................................2

*Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024)........................................7

*Or. Firearms Fed'n v. Kotek,* ("*Kotek I*"), No. 22 Civ. 1815,
   2023 WL 4700378 (D. Or. June 2, 2023) ..................................................................................10

*Or. Firearms Fed'n v. Kotek*, ("*Kotek II*"), 682 F.Supp.3d 874 (D. Or. 2023) ...............................10

*Rupp v. Bonta*, 2024 WL 1142061 (C.D. Cal. Mar. 15, 2024) ............................................. 3, 4, 7

*Second Amendment Arms v. City of Chicago*, 2024 WL 3495010 (N.D. Ill. July 22, 2024) ...................... 1, 2

*Teter v. Lopez,* 76 F.4th 938 (9th Cir. 2023) ....................................................................................3

*Tripathy v. McCloskey*, No. 21-CV-6584 (CS),
   2024 WL 2135623 (S.D.N.Y. May 13, 2024) ..................................................................... 8, 9

*United States v. Alsenat*, No. 23 Cr. 60209,
   2024 WL 2270209 (S.D. Fla. May 20, 2024) .............................................................................1

*United States v. Berger*, 2024 WL 449247 (E.D. Pa. Feb. 6, 2024) .................................................2

*United States v. Davis*, 726 F.3d 357 (2d Cir. 2013) ....................................................................10

*United States v. Herriott*, No. 23 Cr. 37,
   2024 WL 3103275 (N.D. Ind. June 24, 2024) ...........................................................................5

*United States v. Rahimi*, 144 S.Ct. 1889 (2024) ................................................................*passim*

*United States v. Rowson*, 652 F. Supp. 3d 436 (S.D.N.Y. 2023) ....................................................7

*Vidal v. Elster*, 602 U.S. 286 (2024) ................................................................................................4

*Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319,
   2020 WL 3497285 (S.D.N.Y. June 29, 2020) ............................................................................9

*Vt. Fed'n of Sportsmen's Clubs v. Birmingham*, 2024 WL 3466482 (D. Vt. July 18, 2024) .................. 3, 4, 5

Defendant Steven G. James, in his official capacity as Superintendent of the New York State Police, by his attorney Letitia James, Attorney General of the State of New York, respectfully submits this reply memorandum of law in further support of his motion for summary judgment.

## ARGUMENT

### I. ASSAULT RIFLES ARE OUTSIDE THE SECOND AMENDMENT'S SCOPE

#### A. Penal Law § 265.00(22) Prohibits Unprotected "Accoutrements," Not "Arms"

The Superintendent demonstrated via expert testimony that detachable magazines and the seven "characteristics" listed in § 265.00(22)(a)(i)–(vii) are not "arms," as that term was historically understood, but are instead accessories that fall outside the Second Amendment's plain text. ECF No. 81 at 8-10. Plaintiffs' opposition fails to address the cases following *NYSRPA v. Bruen*, 597 U.S. 1 (2022), that the Superintendent cited making this critical distinction, or the multiple additional cases decided on this ground during the briefing of this motion. *See, e.g.*, *Second Amendment Arms v. City of Chicago*, No. 10 Civ. 4257, 2024 WL 3495010, *7-10 (N.D. Ill. July 22, 2024) (laser sights are not "arms"); *United States v. Alsenat*, No. 23 Cr. 60209, 2024 WL 2270209, at *9 (S.D. Fla. May 20, 2024) (machine gun conversion devices not protected because "[a]ccessories, or 'accoutrements' to firearms have long been distinguished from 'Arms' under the Second Amendment."). Plaintiffs instead argue that, because the Second Amendment protects firearms, it "*necessarily* protects the component parts of those same arms," so that restricting any accessory that "affect[s] *at all* the use of a firearm" thereby "infringes" the use of that firearm. ECF No. 93 at 4, 5 (emphases added).

But Plaintiffs' assertions are devoid of any supporting authority.[1] Instead, courts have "draw[n] a line for Second Amendment protection based on whether the particular firearm component is *necessary or integral* to a firearm's operation." *Second Amendment Arms*, 2024 WL 3495010,

---

[1] Plaintiffs cite the panel decision in *Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1044 n.8 (4th Cir. 2023), which merely noted in dicta that regulations that do not "wholly or effectively prohibit firearm possession" may still infringe upon the right to keep and bear arms. And that case was vacated by the full Fourth Circuit, which will rehear the case en banc. 2024 WL 124290 (4th Cir. Jan. 11, 2024).

*8 (quoting *United States v. Berger*, No. 22 Cr. 00033, 2024 WL 449247, *16 (E.D. Pa. Feb. 6, 2024)) (emphasis added). Plaintiffs do not—and indeed cannot—argue that detachable magazines and the banned accessories are "necessary or integral" to a firearm's operability.[2]

Plaintiffs' position also erases the historical distinction between "arms" and "accoutrements" that was well-understood at the Founding. *See* ECF No. 84, Declaration of Professor Dennis Baron, ¶¶ 23-56. The website that Plaintiffs have plucked, which briefly discusses the functionality of a flint (ECF No. 93 at 4-5), is both inadmissible hearsay and in no way establishes that accoutrements such as flints were historically understood as "arms." *See Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 387 (D.R.I. 2022), *aff'd on other grounds*, 95 F.4th 38 (1st Cir. 2024) (crediting Baron's determination that historical meaning of "arms" did not include accoutrements such as flints).

Plaintiffs also maintain that firearms cannot be distinguished from accessories because New York bans "'semiautomatic rifle[s]' made in certain configurations," and the seven "characteristics" listed in § 265.00(22)(a) are "not accessories to those firearms." ECF No. 93 at 3. Plaintiffs' strained reading of the statutory text is baseless. Unlike the categorical handgun ban that was challenged in *District of Columbia v. Heller*, 554 U.S. 570 (2008), New York does not ban the semiautomatic rifle (or even the AR-15 platform) itself. It is only the combination of external features that render such rifles unlawful. That is precisely why the distinction between "arms" and "accessories"—which Plaintiffs seek to elide—is the threshold issue in this case.

### B. Assault Rifles Are Not Commonly Used for Self-Defense

Plaintiffs rehash their argument that the "common use" analysis is a "historical test" for which the Superintendent bears the burden, and that *Bruen* "did not treat 'common use' as part of the textual analysis at all." ECF No. 93 at 5-7. Plaintiffs are still unable to cite any authority establishing that the

---

[2] Plaintiffs tout the supposed "ergonomic and accuracy-enhancing features" of the accessories in § 265.00(22), ECF No. 93 at 3-4, which is wholly irrelevant. *See Second Amendment Arms*, 2024 WL 3495010 at *9 (plaintiffs effectively admitted that laser lights are "merely unprotected firearm accessories" by emphasizing their helpfulness to use of firearm).

2

government bears this burden, aside from the vacated panel decision in *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023), *reh'g en banc granted, op. vacated*, 93 F.4th 1150 (2024). Indeed, the overwhelming majority of post-*Bruen* decisions—including the Second Circuit's decision in *Antonyuk v. Chiumento,* 89 F.4th 271 (2d Cir. 2023),[3] and district court decisions in both of the other states within the Circuit—have imposed this burden upon the plaintiff. *See, e.g.*, *Antonyuk*, 89 F.4th at 383 ("Plaintiffs . . . were required to show" that conduct at issue was "within the plain text of the Second Amendment."); *Vt. Fed'n of Sportsmen's Clubs v. Birmingham*, No. 23 Civ. 710, 2024 WL 3466482, *5 (D. Vt. July 18, 2024) ("according to *Bruen*, a plaintiff must prove that the regulated weapons are in common use in order to qualify for presumptive protection under the Second Amendment"); *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 88 (D. Conn. 2023) ("*Bruen* and *Heller* make clear that Plaintiffs have the burden of making the initial showing that they are seeking to possess or carry firearms that are 'in common use today for self-defense' and are typically possessed by law-abiding citizens for that purpose."); *Grant v. Lamont*, No. 22 Civ. 1223, 2023 WL 5533522 (D. Conn. Aug. 28, 2023).[4]

In addition, Plaintiffs cling to their position that assault rifles are "in common use" simply because they "are very popular." ECF No. 93 at 12. As discussed below and in the Superintendent's opening brief, the survey data Plaintiffs cite is fundamentally flawed and inadmissible in the first place. In any event, courts have also rejected Plaintiffs' assertion that "mere common ownership is enough to satisfy 'common use,'" and have held that under *Bruen*, "the relevant weapons must be commonly

---

[3] Although the Supreme Court vacated the Second Circuit's judgment in *Antonyuk* for further consideration in light of *Rahimi*, *see* 2024 WL 3259671 (U.S. July 2, 2024), the Second Circuit's analysis still "serves as persuasive authority," particularly on subjects like the textual burden that *Rahimi* "did not address." *Vt. Fed'n*, 2024 WL 3466482, at *23 n.27.

[4] The recent decision in *Ass'n of N.J. Rifle & Pistol Clubs v. Platkin ("ANJRPC")*, No. 18 Civ. 10507, 2024 WL 3585580 (D.N.J. July 30, 2024), supports the position that the burden is on plaintiffs to establish common use. There, the Court upheld New Jersey's ban on large-capacity magazines despite finding that they were "commonly owned," focusing on their "lethality" and "prevalence . . . in high-fatality mass shootings," while also concluding that New Jersey's prohibition on one specific model of the AR-15 was unconstitutional to the extent it barred the weapon's use for "self-defense within the home." *Id.* at *9, 22, 25. While much of the analysis in *ANJRPC* supports New York's position, to the extent its holdings with respect to "common use" are inconsistent with the bulk of district court precedent within the Second Circuit (*e.g.*, *NAGR*, *Grant*, and *Vt. Fed'n*) and around the country (*e.g.*, *Del. State Sportsmen*, *Rupp*, and *Kotek II*), the Court should disregard *ANJRPC* as an outlier.

used for self-defense." *Vt. Fed'n*, 2024 WL 3466482, *5 (citing post-*Bruen* cases); *accord NAGR*, 685 F. Supp. 3d at 85-86. Perhaps recognizing that their position is untenable, Plaintiffs complain that self-defense is only an "illustrative example of a lawful purpose" under *Heller*, and that *Bruen* does not mean what it plainly says. ECF No. 93 at 13. But Plaintiffs' assertion is, once again, contrary to the weight of authority. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, __F.4th__, 2024 WL 3406290, *12 (3d Cir. July 15, 2024) (Roth, J., concurring) ("*Bruen* confirms that the only weapons protected by the right are those that are commonly used for self-defense—not for any lawful purpose *like* self-defense") (emphasis in original); *Or. Firearms Fed'n v. Kotek*, ("*Kotek II*"), 682 F.Supp.3d 874, 917 (D. Or. 2023) (same).

Plaintiffs also downplay the fact that assault rifles have been banned in New York since 1994 by claiming that the common use analysis "must be national in scope," and citing to *Heller*. ECF No. 93 at 15. But *Heller* noted that handguns have been chosen by the American people for "the inherent right of self-defense," 554 U.S. at 228, which is decidedly not the case for assault rifles. In any event, *Heller* does not support the unusual contention that § 265.00(22)'s constitutionality has somehow morphed over time due to sales patterns from *other* states. Nor is there merit to Plaintiffs' argument that the suitability of a firearm for self-defense cannot be considered in the common use analysis. ECF No. 93 at 16. Plaintiffs' assertion—that the Court is barred from utilizing objective metrics to determine whether assault rifles are in common use for self-defense—is both nonsensical and has been firmly rejected. *Del. State Sportsmen's Ass'n*, 2024 WL 3406290 at *13; *Rupp v. Bonta*, No. 18 Civ. 00746, 2024 WL 1142061, *16, n.17 (C.D. Cal. Mar. 15, 2024).

### C. Assault Rifles Are Dangerous and Unusual Weapons

Plaintiffs argue that "the Supreme Court has always used the terms dangerous and unusual conjunctively when describing the historical limitation on the right [to bear arms]." ECF No. 93 at 8. However, they fail to address the Superintendent's citation to the *Heller* decision, whose "use of the

4

phrase 'dangerous and unusual' does not state that it must be conjunctive, but instead cites to several sources . . . all of which use the phrase 'dangerous or unusual weapons.'" *NAGR*, 685 F. Supp. 3d at 90 (citations omitted). More notably, Plaintiffs ignore the fact that the Court in *Rahimi* itself described the going armed laws on which its decision relied, as prohibiting "riding or going armed, with dangerous or unusual weapons, [to] terrify[] the good people of the land." *United States v. Rahimi*, 144 S.Ct. 1889, 1901 (2024) (quoting 4 Blackstone 149).

## II.  THE PROHIBITION ON ASSAULT RIFLES IS CONSISTENT WITH AMERICAN LEGAL HISTORY AND TRADITION

Although Plaintiffs would have the "common use" test swallow up both law and history, that question goes only to "the first step of the *Bruen* analysis." *Vt. Fed'n*, 2024 WL 3466482 at *5. "If the weapons are in common use, they are presumptively protected; however, the government's regulation may still be justified with reference to a different and more specific analogous historical tradition of regulation." *Id.* (emphasis omitted). And as much as the Plaintiffs would prefer to sweep history under the rug, "the Nation's historical tradition of firearm regulation" demonstrates that the People retain the right to have their elected representatives pass laws protecting them from assault weapons. *Bruen*, 597 U.S. at 24.

### A. New York's Assault Weapons Laws Are Relevantly Similar to Weapons Prohibitions Throughout Anglo-American History

Plaintiffs' proposed historical analysis is at odds with the Supreme Court's decision in *Rahimi*, decided during the briefing of this motion. *Cf. United States v. Herriott*, No. 23 Cr. 37, 2024 WL 3103275, at *2 (N.D. Ind. June 24, 2024) ("If anything, *Rahimi* can be seen as a softening of the approach to the Second Amendment taken in *Bruen*."). While Plaintiffs repeatedly ask the Court to ignore history and tradition from outside the moment when the Second Amendment was enacted, this is exactly the approach the *Rahimi* Court rejected by an 8-1 margin, declaring that "[s]ome courts have misunderstood the methodology of our recent Second Amendment cases," and that "the Second

5

Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers."[5] 144 S.Ct at 1897-98.

Instead, the Supreme Court instructed that "the appropriate analysis involves considering whether the challenged regulation is *consistent with the principles* that underpin our regulatory tradition. A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* at 1898 (emphasis added) (quoting *Bruen*, 597 U.S. at 29). The testimony of the State's historical experts, along with a large body of post-*Bruen* federal caselaw (which Plaintiffs barely acknowledge in their briefing), demonstrates that New York's assault weapon law is fully consistent with the principle that weapons more appropriate for criminal violence than lawful self-defense may be banned to protect the public, and that the law is "relevantly similar" to a host of historical measures.

Medieval and Renaissance English weapon prohibitions are "relevantly similar" to the assault weapon law because they prohibited new technology associated with murder and criminality, not lawful self-defense. *See Bruen*, 597 U.S. at 41-42 (discussing these laws as distinguishing between weapons "generally worn or carried only when one intended to engage in lawful combat or—as most early violations of the Statute show—to breach the peace" as opposed to weapons that "'civilians wore [] for self-protection.'"). Bowie Knife laws from early days of the Republic are "relevantly similar" because they prohibited weapons that were commonly used, but uncommonly lethal. *See Ocean State*

---

[5] Although the *Rahimi* Court declined to settle the "ongoing scholarly debate on whether courts should *primarily* rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope," 144 S.Ct. at 1898 n.1 (emphasis added) (quoting *Bruen*, 597 U.S. at 37), the Court's Second Amendment precedent makes clear that 19th-Century history cannot be ignored. *See Heller*, 554 U.S. at 605 ("We now address how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th Century."); *accord Rahimi*, 2024 U.S. 2714 at *78 (Barrett, J., concurring) ("In *Bruen*, the Court took history beyond the founding era, considering gun regulations that spanned the 19th century."). Moreover, in cases from this year's term applying the *Bruen* test to other constitutional provisions, the Court considered late-19th and even 20th-century sources in determining the history and tradition that elucidates the Constitution's meaning. *See Vidal v. Elster*, 602 U.S. 286, 301-06 (2024); *id.* at 308 n.4 (discussing *Vidal* as an application of *Bruen*'s "history-focused approach[] to constitutional scrutiny").

6

*Tactical*, 95 F.4th at 46, 48. Colonial and early American laws prohibiting "trap guns" are "relevantly similar" because they were complete prohibitions on commonly-used firearms with modifications that made them particularly dangerous to human life, and particularly ill-suited to lawful self-defense. *See Rupp*, 2024 WL 1142061, at *23, 26. And the assault weapon law is "relevantly similar" to dozens of state and federal laws passed in the early 20th Century (many based on the Uniform Act to Regulate the Sale and Possession of Firearms promulgated by the National Rifle Association) in that it regulates weapons based on the "uniquely destructive capabilities" of weapons with large magazine capacities and high rates of fire. *Capen v. Campbell*, No. 22 Civ. 11431, 2024 WL 8851005, at *12 (D. Mass. Dec. 21, 2023); *see generally Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 21-25 (D.D.C. 2023).

**B. The Assault Weapon Laws Are Further Supported by the Tradition of Prohibiting the Carriage of Weapons That Cause Public Terror**

Lastly, the Plaintiffs cannot simply wave away the impact of the lengthy Anglo-American tradition of "going armed" laws, "prohibiting 'bearing firearms in a way that spreads fear or terror among the people.'" *United States v. Rowson*, 652 F. Supp. 3d 436, 469 (S.D.N.Y. 2023) (quoting *Bruen*, 597 U.S. at 50). Here again, *Rahimi* is instructive, as the Supreme Court found that going armed laws were "relevantly similar" to the federal law prohibiting persons under domestic violence restraining orders from possessing[6] firearms, a proposition much less analogous than the assault weapons laws at issue in this case. *See* 144 S.Ct. at 1901 (noting that the domestic violence law was "by no means identical" to the going armed laws, "but it does not need to be"). The public carriage of assault weapons would necessarily cause terror and breach the peace, as Plaintiffs acknowledged in their depositions. *See, e.g.*, 56.1 ¶ 79. Accordingly, New York's assault weapon law "fits neatly within the tradition the . . . going armed laws represent." *Rahimi*, 144 S.Ct. at 1901.

---

[6] To the extent that Plaintiffs attempt to distinguish the "going armed" laws by inventing a distinction between weapons possession and weapons carriage, *see* ECF No. 93 at 22, *Rahimi* once again forecloses the argument. Although the law at issue in *Rahimi* was a "prohibition on the possession of firearms," 144 S.Ct. at 1901, the Court nonetheless found that the "going armed" laws were a tradition sufficient to uphold its constitutionality.

7

### III. PLAINTIFFS' NEW AND INADMISSIBLE "FACTS" SHOULD BE DISREGARDED

Plaintiffs' opposition contains a torrent of new and procedurally improper documents: a 75-page, argument-laden response to the Superintendent's Local Civil Rule 56.1 Statement of Facts ("LR 56.1") and 99 separate exhibits introduced for the first time, none of which are authenticated, offered by a declarant with personal knowledge, or submitted with any explanation for why they were not part of Plaintiffs' case-in-chief. *See* ECF No. 94 and Exs. 1-99. This massive document dump, totaling 1,433 pages, is procedurally improper, and should be disregarded.

> [T]he purpose of a LR 56.1 response is simply to advise the Court as to whether the specific fact asserted by the moving party is or is not disputed, and if it is disputed, to provide the Court with the evidence on which the non-moving party relies to dispute that particular fact. It presents no occasion for context, argument, semantic quibbles, opinions or conclusions.

*Tripathy v. McCloskey*, No. 21 Civ. 6584, 2024 WL 2135623, at *2 (S.D.N.Y. May 13, 2024).

Plaintiffs' response violates LR 56.1(a) and (b)'s requirement that statements of material facts be "short, and concise." It violates LR 56.1(d)'s requirement that the statements include a "citation to evidence that would be admissible and set forth by Fed. R. Civ. P. 56(c)." It violates Rule 56(c)(1)(A)'s requirement that citations be to "materials in the record." It violates Rule 56(c)(4)'s requirement that facts be adduced in an affidavit or declaration "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." It is a transparent attempt to circumvent the governing page limits. *See* ECF No. 75. It is at odds with basic principles of fair play in litigation, including the principle "established beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply." *Burroughs v. Cnty. of Nassau*, No. 13 Civ. 6784, 2014 WL 2587580, at *13 (E.D.N.Y. June 9, 2014) (collecting cases); *see New Look Party Ltd. v. Louise Paris Ltd.*, No. 11 Civ. 6433, 2012 WL 251976, at *4 n.4 (S.D.N.Y. Jan. 11, 2012) (refusing to consider evidence on reply that "goes to the heart of plaintiff's contention and should have been submitted with its opening brief."). Additionally, Plaintiffs' LR 56.1

8

Response is rife with inappropriate opinions and legal arguments. *See Tripathy*, 2024 WL 2135623, at *2 (collecting cases); *see also Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) ("[W]hether so intended or not," a 56.1 response including argument is "a manifest evasion of the page limitation on plaintiff's memorandum in opposition to the motion for summary judgment."). And the last-minute submission of 1,433 pages of documents goes back on representations Plaintiffs made to bring a pre-discovery motion for summary judgment, including that no fact or expert discovery was "needed," and that "[t]his case turns on pure questions of law." ECF No. 63 at 1, 3; ECF No. 22 at 5.

Plaintiffs further acknowledge that they have not presented admissible evidence to support their claims. Hiding behind a contention that facts about guns are "legislative facts," they assert that "Plaintiffs do not need to provide admissible evidence of common use" and that "[r]estrictions against hearsay (indeed, the entirety of the Federal Rules of Evidence) do not apply." ECF No. 93 at 23, 24. But the "facts" that Plaintiffs wish to adduce without affidavits, declarants, or experts are "adjudicative" twice over. First, "[a]djudicative facts are those 'to which the law is applied in the process of adjudication,'" *Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319, 2020 WL 3497285, at *8 (S.D.N.Y. June 29, 2020) (quoting Advisory Committee Note to F. R. Evid. 201(a)), and the question of whether assault weapons are commonly used for self-defense is a core fact being adjudicated in this case – indeed, in Plaintiffs' view it is the only factual question that matters. Moreover, the facts at issue are "facts about the parties and their activities . . . and properties," *In re Application of Lake Hldg. & Fin. S.A.*, No. 20-MC-652, 2021 WL 2581427, at *14 (S.D.N.Y. June 23, 2021) (quoting *Langevin v. Chenango Ct., Inc.*, 447 F.2d 296, 200 (2d Cir. 1971)). These facts concern the characteristics, antecedents, market, and usage patterns for the guns *Plaintiffs wish to own.*[7]

---

[7] *ANJRPC*'s discussion of "legislative facts" is readily distinguishable from Plaintiffs' maximalist position in this case. The discussion of "legislative facts" in that case concerned whether the Court could resolve disputed issues on summary

Even if the facts at issue were legislative, judicial notice of them would still be improper. "The doctrines of 'legislative facts' and 'judicial notice' are not talismans by which gaps in a litigant's evidentiary presentation before the district court may be repaired." *City of New Brunswick v. Borough of Milltown*, 686 F.2d 120, 131 n.15 (3d Cir. 1982). Legislative facts must be "established truths." *United States v. Davis*, 726 F.3d 357, 366 (2d Cir. 2013). Plaintiffs' proposed facts are neither established nor true, consisting of hundreds of pages of hearsay documents, often funded by the gun industry, offered without expert testimony or a declarant with personal knowledge. The Second Circuit has emphasized that courts should not take judicial notice of "disputed legislative facts," but rather that such notice is appropriate only for "much more straightforward questions, e.g., geography and jurisdiction or the fact that cocaine is derived from coca leaves." *Landell v. Sorrell*, 382 F.3d 91, 135 n.24 (2d Cir. 2004), *rev'd on other grounds sub nom. Randall v. Sorrell*, 548 U.S. 230 (2006); *accord Davis*, 726 F.3d at 367 (judicial notice of legislative facts only proper "under appropriate circumstances" involving "straightforward questions").

Plaintiffs' position also contradicts *Bruen*, in which the Supreme Court contemplated that the Federal Rules of Evidence would apply to the test it announced, explaining that "[t]he job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies," and that the "legal inquiry" judges conduct "relies on various evidentiary principles and default rules to resolve uncertainties." *Bruen*, 597 U.S. at 25 n.6. Accordingly, courts have rejected requests to waive the Rules of Evidence in firearms cases, "find[ing] that such legislative facts are not admissible to resolve disputed facts essential to the elements of Plaintiffs' claims unless they comply with the Federal Rules of Evidence." *Or. Firearms Fed'n v. Kotek*, *("Kotek I")*, No. 22 Civ. 1815, 2023 WL 4700378, at *1 (D. Or. June 2, 2023).

---

judgment, not whether the Federal Rules of Evidence applied in the first place. Unlike Plaintiffs here, the *ANJRPC* plaintiffs provided expert testimony on the "common use" issue. *See* 2024 WL 3585580 at *4-5, 9.

**CONCLUSION**

The Superintendent respectfully requests that the Court grant his cross-motion for summary judgment, dismiss the Complaint in its entirety and with prejudice, and grant such other and further relief as it deems just and proper.

Dated: New York, New York
August 2, 2024

    Respectfully submitted,
    LETITIA JAMES
    Attorney General
    State of New York
    *Attorney for Superintendent Steven G. James*

    By:

    *Suzanna Publicker Mettham*
    Suzanna Publicker Mettham
    Brenda E. Cooke
    James M. Thompson
    Yuval Rubinstein
    *Assistant Attorneys General*
    28 Liberty Street
    New York, New York 10005
    suzanna.mettham@ag.ny.gov
    brenda.cooke@ag.ny.gov
    james.thompson@ag.ny.gov
    yuval.rubinstein@ag.ny.gov