UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

J. MARK LANE, *and* JAMES SEARS,

*Plaintiffs*,

v.

SUSAN CACACE, *in her official capacity as
District Attorney for the County of
Westchester, New York*, and
STEVEN G. JAMES, *in his official capacity
as Superintendent of the New York State
Police*,

*Defendants*.

No. 22-CV-10989 (KMK)

OPINION & ORDER

---

<u>Appearances</u>:

Adam Kraut, Esq.
Second Amendment Foundation
Bellevue, WA
*Counsel for Plaintiffs*

Cody J. Wisniewski, Esq.
FPC Action Foundation
Las Vegas, NV
*Counsel for Plaintiffs*

Nicolas Rotsko, Esq.
Fluet
Tysons, VA
*Counsel for Plaintiffs*

Francesca L. Mountain, Esq.
John Nonna, Esq.
Gianfranco Arlia, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant Susan Cacace*

Suzanna Publicker Mettham, Esq.
James Martin Thompson, Esq.
Yuval Rubenstein, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant Steven G. James*

KENNETH M. KARAS, United States District Judge:

Plaintiffs J. Mark Lane ("Lane") and James Sears ("Sears") bring this Action against Defendants Susan Cacace ("Cacace"), in her official capacity as District Attorney for the County of Westchester, New York, and Steven G. James ("James"), in his official capacity as Superintendent of the New York State Police.  (*See generally* Compl. (Dkt. No. 1).)[1]  Plaintiffs argue that New York's ban on assault weapons (the "Assault Weapons Ban" or "Ban") violates their Second Amendment right as incorporated against New York by the Fourteenth Amendment.  (*Id.* ¶ 65 (citing N.Y. Penal Law. §§ 265.00(22)(a)–(f), 265.02(7), 265.10, 70.02).)  Before the Court are Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment (together, the "Motions").  For the reasons discussed below, both Motions are denied.

---

[1] The Complaint names as defendants Miriam G. Rocah ("Rocah") in her official capacity as District Attorney for the County of Westchester, New York, and Steven A. Nigrelli ("Nigrelli") in his official capacity as Superintendent of the New York State Police.  (*See generally* Compl.)  In October 2023, Nigrelli was replaced by Dominick L. Chiumento ("Chiumento").  (*See* Dkt. Nos. 55–56.)  As of the date of this Opinion & Order, however, the proper defendants are the current office holders, Cacace and James.  Accordingly, because "[t]he court may order substitution at any time" in the event "a public officer who is party in an official capacity . . . ceases to hold office while the action is pending," Fed. R. Civ. P. 25(d), the Court hereby orders that Cacace is substituted for Rocah and James is substituted for Chiumento.

I.  Background

A.  New York Assault Weapons Ban

The Ban defines an "assault weapon" as a semiautomatic rifle, shotgun, or pistol with certain characteristics.  N.Y. Penal Law. §§ 265.00(22)(a)–(f).  In order to be considered an assault weapon under the Ban, a semiautomatic rifle must have a detachable magazine[2] and at least one of the following features:  a folding or telescoping stock, a pistol grip, a thumbhole stock, a second handgrip, a bayonet mount, a muzzle device, a threaded barrel, or a grenade launcher.  *Id.* §§ 265.00(22)(a)(i)–(vii).  Because the Parties' briefing focuses exclusively on semiautomatic rifles, as opposed to semiautomatic shotguns or pistols, the Court will do the same.[3]

New York law criminalizes possession of an assault weapon, *see* N.Y. Penal Law. § 265.02(7), and the manufacture, transport, disposition and defacement of assault weapons, *id.* § 265.10.  Violations of these laws are felony offenses.  *See id.* §§ 70.02(1), 265.02(7), 265.10.

B.  Factual Background

The following facts are taken from Plaintiffs' 56.1 Statement ("Pls' 56.1") (Dkt. No. 73), Defendants' 56.1 Statement in response to that of Plaintiffs ("Defs' 56.1 Resp.") (Dkt. No. 82); Defendants' 56.1 Statement ("Defs' 56.1") (Dkt. No. 83); Plaintiffs' 56.1 Statement in response

---

[2] "A magazine is a container that holds ammunition for a firearm, typically by holding bullets and feeding the ammunition into the firearm, but does not contain a firing mechanism.  A detachable magazine may be removed and replaced with another fully loaded magazine." *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 75 (D. Conn. 2023) (internal quotation marks and citation omitted), *appeal pending*, No. 23-1162 (2d Cir.).

[3] Plaintiffs characterize the label "assault weapon" as misleading and pejorative.  (*See* Plaintiffs' Mem. in Supp. of Mot. ("Pls' Mem.") (Dkt. No. 72) 5, 11.)  In any case and for clarity's sake, the Court will refer to semiautomatic rifles that qualify as "assault weapons" under the Assault Weapons Ban as "assault rifles."

to that of Defendants ("Pls' 56.1 Resp.") (Dkt. No. 94); and admissible evidence submitted by the Parties.

Plaintiffs are residents of Westchester County, New York, who would like to purchase assault rifles, the possession of which is prohibited by the Assault Weapons Ban. (Defs' 56.1 Resp. ¶¶ 1, 2, 9, 10.) The firearms in question are semiautomatic rifles with detachable magazines that have a telescoping stock, pistol grip, and a muzzle device. (*Id.* ¶¶ 3, 11.) Plaintiffs claim that they would already have acquired the firearms but for their fear of being arrested and prosecuted for violating the Assault Weapons Ban. (*Id.* ¶¶ 5, 6, 13, 14.) Lane does not possess a semi-automatic rifle license, (*id.* ¶ 8), but Sears does, (*id.* ¶16). Sears owns a semiautomatic rifle that is compliant with New York law—the rifle has a detachable magazine but does not have any of the characteristics listed in the Assault Weapons Ban. (*See* Decl. of Suzanna Publicker Mettham in Supp. of Defs' Cross-Mot., Ex. A (Dkt. No. 79-1) at 21:19–22:6.)

C. Procedural Background

Plaintiffs initiated this Action on December 30, 2022. (*See* Compl.) On March 20, 2023, the Court set a briefing schedule to address jurisdictional issues raised by the Parties. (*See* Dkt. No. 28.) On April 17, 2023, Plaintiffs stipulated to the dismissal of New York Attorney General Letitia James as defendant. (*See* Dkt. No. 35.) On January 4, 2024, the Court denied Defendants' Motions to Dismiss for lack of jurisdiction. (*See* Dkt. No. 57.)

On March 15, 2024, Plaintiffs moved for summary judgment. (Not. of Mot. (Dkt. No. 71); Pls' Mem.; Pls' 56.1.) On May 15, 2024, Defendants cross-moved. (Not. of Cross-Mot. (Dkt No. 78); Def. James' Mem. in Opp. to Pls' Mot. & in Supp. of Cross-Mot. ("Defs' Mem.") (Dkt. No. 81); Defs' 56.1 Resp.; Defs' 56.1.) Defendants also filed declarations from eight experts. (*See* Dkt. Nos. 84–91.) On July 15, 2024, Defendants filed their Reply, which

also served as an Opposition to Defendants' Cross-Motion.  (Pls' Reply in Supp. of Mot. & in

Opp. to Cross-Mot. ("Pls' Reply") (Dkt. No. 93); Pls' 56.1 Resp.)  On August 2, 2024,

Defendants filed their Reply.  (Def. James Reply in Supp. of Cross-Mot. ("Defs' Reply") (Dkt.

No. 96).)  On November 4, 2024, Defendants submitted a letter to the Court regarding new

relevant cases.  (Ltr. from Def. James to Court (Dkt. No 97).)  On November 25, 2024, Plaintiffs

submitted a response.  (Ltr. from Pls. to Court (Dkt. No. 98).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v.

John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to

award summary judgment, the court must construe the record evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v.

Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232,

240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute

exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also

Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4

(S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must

come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am.*,

*Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

As an initial matter, the Court must determine what materials, if any, it may consider in its review.  In their 56.1 Statement, Plaintiffs assert that:

> Other than those facts that relate to the standing of the parties, all of the facts relevant to the outcome of this case are "legislative facts" which are not concerned with the particular facts of the parties but are rather generalized facts about the world.  Fed. R. Evid. 201, 1972 Advisory Committee Note; *see Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011).  The Court's review of legislative facts, which are predicates to legal rules, is unrestricted, and such facts are appropriately related in the argument portion of Plaintiffs' brief in support of summary judgment. *Id.*

(Pls' 56.1 at 1 n.1.)  Defendants argue that Plaintiffs have failed to meet their evidentiary burden on summary judgment because their proffered evidence is inadmissible.  (*See* Defs' Mem. 4–6.)  Plaintiffs counter by repeating that the facts in their opening brief are "legislative facts" that are not subject to the Federal Rules of Evidence and that the Court may properly consider.  (*See* Pls' Reply 23–25.)  Plaintiffs' 56.1 Response Statement is replete with lengthy argumentative and expository "denials" of Defendants' undisputed facts, (*see generally* Pls' 56.1 Resp.), that

reference the appended 99 exhibits, (*see* Dkt. Nos. 94-1 to -99).  While Plaintiffs do not explicitly say as much, it appears that they intend their argument concerning legislative facts to extend to their 56.1 Response Statement.  Defendants argue that Plaintiffs' 56.1 Response Statement is "a transparent attempt to circumvent the governing page limits" and that the Court should disregard it because its evidentiary support is inadmissible, because the facts are disputed and "neither established nor true," and because the facts are adjudicative, not legislative.  (*See* Defs' Reply 8–10.)

Legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body."  Fed. R. Evid. 201, 1972 Advisory Comm. Note to subdiv. (a).  Adjudicative facts "are simply the facts of the particular case."  *Id.*  Stated differently, "[l]egislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case."  *United States v. Hernandez-Fundora*, 58 F.3d 802, 812 (2d Cir. 1995) (quoting *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976)).  While Rule 201 deals with judicial notice of an adjudicative fact, "[n]o rule deals with judicial notice of legislative facts."  *Id.* (quotation marks omitted).

The "legislative facts" contained in Plaintiffs' opening brief concern whether assault rifles are in common use.  (*See* Pls' Mem. 10–17.)  Plaintiffs cite to consumer surveys, firearm dealer surveys, and firearm production data and link to surveys and articles they contend support their argument about the common use of certain firearms.  (*Id.*)  The "legislative facts" contained in Plaintiffs' 56.1 Response Statement are much more wide-ranging, covering every possible argument in this Action, including the common use and popularity of assault rifles, the

functionality of attendant characteristics and accessories, and the history of allegedly relevant firearms regulations throughout American history.  (*See generally* Pls' 56.1 Resp.)  Plaintiffs also use their 56.1 Response Statement to make *Daubert*-like critiques of Defendants' experts. (*See, e.g.*, *id.* ¶ 13 ("Contrary to the State's expert . . . ."); *id.* ¶ 21 ("It is unclear what the State's expert means . . . .  Furthermore, as the State's expert admits . . . ."); *id.* ¶ 94 (highlighting an alleged inconsistency between the opinions of two of Defendants' experts); *id.* ¶ 97 ("[One of the State's experts] fails to control for magazine size in her analysis, which . . . renders her conclusions both faulty and misleading."); *id.* ¶ 102 ("As the State's expert admits . . . ."); *id.* ¶ 104 ("As noted above, the Colt revolver was patented in 1836, not as late as the State's expert suggests."); *id.* ¶ 112 (". . . [T]he State's two experts cannot even agree on their definition of a mass shooting, much less employ a generally accepted definition."); *id.* ¶ 116 (". . . [T]he State's expert's descriptions are far too general to satisfy the careful review which [*Bruen*] requires."); *id.* ¶ 119–21 (same); *id.* ¶ 123 ("In fact, that is not the case, as even the State's expert admits in his survey . . . .").)[4]

---

[4] As Plaintiffs' counsel well knows, a 56.1 statement response should contain "separate, *short*[,] and *concise* statement[s] of additional materials facts as to which it is contended that there exists a genuine issue to be tried."  S.D.N.Y. Loc. R. 56.1(b) (emphasis added).  Plaintiffs' 56.1 Response Statement is clearly in contravention of this local rule—it is 74 pages in length and contains numerous and lengthy argumentative statements.  (*See, e.g.*, Pls' 56.1 Resp. ¶ 53 (a response that runs for approximately six pages).)  "The purpose of [] Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2023 WL 2504734, at *2 (S.D.N.Y. Mar. 14, 2023) (citation and internal quotation marks omitted).  The questions at the heart of this Action, while weighty, are no excuse for counsel's failure to comply with clear and unambiguous rules.  The Court will overlook this failure now, but counsel is warned going forward that compliance is not optional.

Plaintiffs' "legislative facts" address questions that the Court must answer, including whether assault rifles are in common use for self-defense and whether certain historical firearms regulations are relevant and analogous. Plaintiffs' 56.1 Response Statement and its 99 exhibits total more than 1,400 pages. "It is not appropriate for th[e] Court to rummage through voluminous materials submitted by Plaintiffs to divine which facts, if any, might properly be deemed legislative facts. It is up to the party offering such legislative facts to provide concrete guidance." *Or. Firearms Fed. v. Kotek*, 682 F. Supp. 3d 874, 886 n.2 (D. Or. 2023) (refusing to consider as inadmissible hearsay thirteen exhibits that Plaintiffs claimed contained legislative facts); *cf. Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421, 427–28 (D.N.J. July 30, 2024) (relying in part on disputed legislative facts about which there were no evidentiary issues to find New Jersey's ban on the possession of certain firearms unconstitutional), *appeal pending*, No. 24-2415 (3d Cir.). The Court is "not obligated to sift the historical materials for evidence," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 60 (2022)—rather, it is "entitled to decide a [Second Amendment] case based on the historical record compiled by the [P]arties," *id.* at 25 n.6. To permit otherwise flies in the face of "'our adversarial system of adjudication, [in which] we follow the principle of party presentation.'" *Id.* (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)).

Plaintiffs argue that their facts are, in fact, legislative, and that to say otherwise would mean that there is "no sense in distinguishing between [legislative and adjudicative facts] at all, since the [R]ules of [E]vidence would apply to all facts, of whatever kind, that are relevant to a legal opinion." (Pls' Reply 24.) Even assuming that all of the evidence put forth by Plaintiffs properly constitute legislative facts, *Bruen* teaches that "[t]he job of judges is . . . to resolve *legal* questions presented in particular cases or controversies," and that the legal inquiry "relies on

various *evidentiary* principles and default rules to resolve uncertainties." 597 U.S. at 25 n.6 (first emphasis in original, second emphasis added) (internal quotation marks omitted).  At bottom, Plaintiffs simply download a mountain of documentation into the record that does not comply with Rule 56.1 and expect the Court to take both the evidence and Plaintiffs' reading of it as true. Plaintiffs' facts are dispersed throughout their briefing, 56.1 Statement, and 56.1 Response Statement.  Defendants' facts are located, as they rightly should be at this stage, in their 56.1 Statement and 56.1 Response Statement.

It is settled law that a necessary precondition for a court's ruling on summary judgment is a record containing admissible facts.  *See Picard Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170, 181 (2d Cir. 2022) (noting that "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment and a district court deciding a summary judgment has broad discretion in choosing whether to admit evidence" (alteration and quotation marks omitted) (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009))); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (noting that "[a] submission in opposition to (or in support of) summary judgment need be considered only to the extent that it would have been admissible at trial" (citing Fed. R. Civ. P. 56(e) and *Nora Beverages, Inc.*, 164 F.3d at 746)).  Here, the Court refuses to consider Plaintiffs' "legislative facts," as they are inadmissible and have not been subjected to the adversarial process, which serves to "ascertain the truth," "minimize the risk of error," and "exclud[e] evidence that is irrelevant or lacking indicia of reliability." *See Or. Firearms Fed.*, 682 F. Supp. 3d at 886 n.2 (alterations adopted) (citing *Mackey v. Montrym*, 443 U.S. 1, 13 (1979), and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)); *Brown v. Plata*, 563 U.S. 493, 541 (2011) (characterizing the

adversarial process as "afford[ing] the court an opportunity to weigh and evaluate[] evidence

presented by the parties"); *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J.,

concurring in part) ("Our adversary system is designed around the premise that the parties . . . are

responsible for advancing the facts and arguments entitling them to relief.").

B.  Second Amendment Jurisprudence

The Second Amendment provides:  "A well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const. amend. II.  Modern Second Amendment law derives from four Supreme Court cases:

*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742

(2010), *Bruen*, and *United States v. Rahimi*, 602 U.S. 680 (2024).  A very high-level summary of

these cases follows.[5]  In *Heller*, the Supreme Court held that "the Second Amendment codifies a

pre-existing individual right to keep and bear arms for self-defense in case of confrontation—a

right that is not limited to service in an organized militia."  *Antonyuk*, 120 F.4th at 963 (citing

*Heller*, 554 at 592, 595).  However, *Heller* made clear that the Second Amendment right "is not

unlimited" and does not afford "a right to keep and carry any weapons whatsoever in any manner

whatsoever and for whatever purpose."  *Heller*, 554 U.S. at 626.  *McDonald* held that the Second

Amendment is "fully applicable to the States" through the Fourteenth Amendment.  *McDonald*,

561 U.S. at 750, 791.  *Bruen* established a two-step framework:  first, a court considers whether

"the Second Amendment's plain text covers an individual's conduct."  *Bruen*, 597 U.S. at 24; *see*

*also Mills v. New York City, N.Y.*, --- F. Supp. 3d ----, 2024 WL 4979387, at *7 (S.D.N.Y. Dec.

---

[5] The Second Circuit's recent decision in *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024), *cert. petition filed*, No. 24-795 (Jan. 27, 2025), provides a more fulsome explanation of the relevant principles.  *See id.* at 960–74.

4, 2024) (describing Second Amendment caselaw as "requir[ing] courts to adopt [the *Bruen*] two-step approach"). If so, the Constitution "presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Then, it is the government's burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," *id.*, or, stated differently, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 19. This historical inquiry considers "the prevailing understanding of the right to bear arms in 1868 and 1791." *Antonyuk*, 120 F.4th at 972–73 (citing *Bruen*, 597 U.S. at 34, and *McDonald*, 561 U.S. at 778). Finally, *Rahimi* provides some clarity to *Bruen*'s second step: "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition," and present-day regulations need not "precisely match" historical precedents in order to be "analogous enough to pass constitutional muster." *Rahimi*, 602 U.S. at 692.

The Second Amendment's reference to "bearable arms" "does not apply only to those arms in existence in the 18th century." *Bruen*, 597 U.S. at 28 (alteration adopted) (quotation marks and citation omitted); *see also Heller*, 554 U.S. at 582 (noting the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding"). While "the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28 (citing *Caetano v. Massachusetts*, 577 U.S. 411, 411–12 (2016) (per curiam)). In *Heller*, the Supreme Court defined arms by referring to the term's 18th century meaning—"weapons of offence, or armour of defence," or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike

13

another." *Heller*, 554 U.S. at 581 (quoting first 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978), then 1 A New and Complete Law Dictionary) (alteration adopted)).  The term applies to "weapons that were not specifically designed for military use and were not employed in a military capacity." *Id.*

"[T]he Second Amendment protects the right to keep and bear the sorts of *weapons that are in common use—a limitation that is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." Antonyuk, 120 F.4th at 961 (quoting Heller, 554 U.S. at 627) (internal quotation marks omitted) (alteration adopted); see also Vt. Fed. of Sportsmen's Clubs v. Birmingham, 741 F. Supp. 3d 172,186 (D. Vt. July 18, 2024) ("If the weapons are in common use, they are presumptively protected." (emphasis in original)), appeal pending*, No. 24-2026 (2d Cir.); *Lamont*, 685 F. Supp. 3d at 90–91 (noting that "a weapon must be both possessed for the purpose of and actually used for self-defense in order to fall within the Second Amendment's protection"); *cf. Bianchi v. Brown*, 111 F.4th 438, 460 (4th Cir. 2024) (holding that "weapons that are *not* in common use can safely be said to be *outside* the ambit of the Second Amendment" (emphasis in original)), *cert. petition filed*, No. 24-203 (Aug. 23, 2024). This means that the common use inquiry determines whether the weapon in question is presumptively protected—in other words, whether the weapon is an "arm" within the meaning of the Second Amendment.  *See Antonyuk*, 120 F.4th at 964–65.

Plaintiffs argue that the common use inquiry is addressed at step two because the text of the Second Amendment "says nothing at all about commonality" and because *Heller* and *Bruen* have addressed the inquiry at step two (that is, as part of the history and tradition analysis).  (*See* Pls' Reply 5–6.)  Defendants argue that the majority of post-*Bruen* decisions have addressed "common use" at step one.  (*See* Defs' Mem. 10–11; Defs' Reply 2–3.)

14

"The initial confusion over the location of the common-use issue in *Bruen*['s] Second Amendment analysis undoubtedly arises from *Bruen* itself."  *United States v. Berger*, 715 F. Supp. 3d 676, 681 (E.D. Pa. 2024).  In *Bruen*, at step one, the Supreme Court stated:

> It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of "the people" whom the Second Amendment protects.  Nor does any party dispute that handguns are weapons "in common use" today for self-defense.  We therefore turn to whether the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct—carrying handguns publicly for self-defense.

*Bruen*, 597 U.S. at 31–32 (internal citations omitted).  It is possible to read this as the Supreme Court's "seemingly includ[ing] the common-use issue at step one of [the *Bruen* analysis]."  *Berger*, 715 F. Supp. 3d at 681.

The overwhelming majority of courts considering Second Amendment challenges address common use at step one.  *See, e.g.*, *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 113–14 (10th Cir. Nov. 5, 2024); *Hanson v. District of Columbia*, 120 F.4th 223, 232 & n.3 (D.C. Cir. Oct. 29, 2024); *Antonyuk*, 120 F.4th at 981; *United States v. Price*, 111 F.4th 392, 402 (4th Cir. 2024), *cert. petition filed*, No. 24-5937 (Nov. 7, 2024); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety and Homeland Sec.*, 108 F.4th 194, 212 (3d Cir. 2024) (Roth, J., concurring), *cert. petition filed*, No. 24-309 (Sept. 18, 2024); *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023); *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir. 2023), *rev'd*, 602 U.S. 680 (2024); *Vt. Fed. of Sportsmen's Clubs*, 741 F. Supp. 3d at 188–89; *but see Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1198 (7th Cir. 2023) (assuming without deciding that the common use inquiry resides in step two).  Accordingly, the Court addresses common use at step one.

C.  Application

Plaintiffs bring a facial challenge to the Ban.  "To mount a successful facial challenge, the plaintiff must establish that no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep."  *Antonyuk*, 120 F.4th at 983 (alteration adopted) (quotation marks omitted) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)).  Because "a facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications . . ., facial challenges are the most difficult to mount successfully."  *Id.* (alteration adopted) (citations and quotation marks omitted).

There is no dispute that Plaintiffs are "ordinary, law-abiding, adult citizens," making them "part of 'the people' whom the Second Amendment protects."  *Bruen*, 597 U.S. at 31–32. The Parties dispute whether assault rifles constitute "arms" under the Second Amendment, (*see* Pls' Mem. 5–6; Defs' Mem. 7–10), whether assault rifles are in "common use," (*see* Pls' Mem. 10–17; Defs' Mem. 11–15), whether the "common use" inquiry resides in step one or two of *Bruen*, (*see* Defs' Mem. 10–11; Pls' Reply 5–7), and whether the Ban is consistent with history and tradition, (Pls' Mem. 7–17; Defs' Mem. 18–28; Pls' Reply 16–22; Defs' Reply 5–7).  The Parties' disputes about whether an assault rifle is an "arm," whether it is in common use, and where the common use inquiry is located in the *Bruen* framework are part and parcel a threshold inquiry that must be resolved before proceeding.

"*Bruen* and *Heller* make clear that Plaintiffs have the burden of making the initial showing that they are seeking to possess or carry firearms that are in common use today for self-defense and are typically possessed by law-abiding citizens for that purpose."  *Lamont*, 685 F. Supp. 3d at 89 (internal quotation marks omitted); *see also Polis*, 121 F.4th at 113 ("At [*Bruen*] step one, the plaintiff has the burden of establishing that 'the Second Amendment's plain text

covers' either the conduct they engaged or intended to engaged in." (quoting *Bruen*, 597 U.S. at

17)); *Hanson*, 120 F.4th at 232 (in affirming a denial of a preliminary injunction, noting that the

plaintiff was "likely to succeed in showing that [extra-large capacity magazines] are 'Arms'

within the meaning of the Second Amendment"); *Knife Rights, Inc. v. Bonta*, No. 23-CV-474,

2024 WL 4224809, at *7 (S.D. Cal. Aug. 23, 2024) ("Because Plaintiffs bear the burden of

satisfying *Bruen* step one and fail to prove that the regulated switchblades are in common use

today for self-defense or that the weapons are not dangerous and unusual, it follows that there is

no genuine dispute of material fact as to this issue."), *appeal pending*, No. 24-5536 (9th Cir.

Sept. 11, 2024); *Vt. Fed. of Sportsmen's Clubs*, 741 F. Supp. 3d at 189 ("Plaintiffs bear the

burden of showing that their conduct is presumptively protected by the Second Amendment.");

*Rupp v. Bonta*, 723 F. Supp. 3d 837, 849 (C.D. Cal. Mar. 15, 2024) (holding that the plaintiff has

the burden at *Bruen* step one), *appeal pending*, No. 24-2583 (9th Cir. Apr. 24, 2024); *Or.

Firearms Fed.*, 682 F. Supp. 3d at 888 n.4 (finding that "the most logical reading of [*Bruen*]"

places the burden on plaintiff, "in the first instance, to show that the challenged law implicates

conduct covered by the plain text of the Second Amendment"); *Frey v. Nigrelli*, 661 F. Supp. 3d

176, 200 (S.D.N.Y. 2023) (in denying plaintiff's motion for a preliminary injunction, the court

found at *Bruen* step one that plaintiffs "met their burden of showing that the prohibition against

carrying arms . . . implicates the text of the Second Amendment"); *Ocean State Tactical, LLC v.

Rhode Island*, 646 F. Supp. 3d 368, 388 (D.R.I. 2022) ("[P]laintiffs have failed to meet their

burden of establishing that [large capacity magazines] are 'Arms' within the textual meaning of

the Second Amendment.").

　　　　Plaintiffs have failed to carry their burden here.  As discussed earlier, Plaintiffs have

adduced little, if any, *admissible* evidence.  *See* supra Section II.A.  In the absence of facts,

undisputed or otherwise, Plaintiffs have not made a showing that assault rifles prohibited by the Ban are "bearable arms" under the Second Amendment or that they are in common use for self-defense.  Plaintiffs argue that it is Defendants' burden to show that assault rifles "are not in common use" for self-defense.  (*See* Pls' Mem. 10 (emphasis omitted).)  To the contrary, as discussed above, it is Plaintiffs' burden.  Plaintiffs argue the fact that "millions of law-abiding citizens choose to possess" a particular firearm renders it "in common use."  (*Id.* 12.)  In this vein, Plaintiffs link to consumer surveys, firearm dealer surveys, and firearm production data as supporting common use.  (*Id.* 12–16.)  Even if these references were admissible, and they are not for the reasons that are explained below, they fail to demonstrate common use *for self-defense*, which is a necessary showing.  *See Bruen*, 597 U.S. at 29 (noting that "[a]s [the Supreme Court] stated in *Heller* and repeated in *McDonald*, 'individual self-defense is the *central component*' of the Second Amendment right'" (emphasis in original) (quoting *McDonald*, 561 U.S. at 767)); *United States v. Cooper*, 127 F.4th 1092, 1098 (8th Cir. 2025) (noting that "individual self-defense is 'the *central component*' of the Second right, not an exception to it" (emphasis in original) (quoting *McDonald*, 561 U.S. at 767)); *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583, 591 (5th Cir. 2025) (noting that "the right to self-defense" is "the central component of the Second Amendment" (internal quotation marks omitted) (quoting *Heller*, 554 U.S. at 599)); *Polis*, 121 F.4th at 113 (same); *Antonyuk*, 120 F.4th at 963 (same); *see also Mills*, 2024 WL 4979387, at *9 (stating that "the relevant Supreme Court caselaw is clear that the central purpose of the [Second] Amendment is individual self-defense").  In reply, Plaintiffs simply double down on claiming that the common use inquiry is not their burden.  (*See* Pls' Reply 5–7, 23.)  Despite this, Plaintiffs stuff their 56.1 Response Statement with massive amounts of materials regarding common use, little of which, if any, is admissible; they reference

books, law review articles, blog posts, and surveys, and append them in the form of 99 exhibits

to their 56.1 Response Statement.  (*See* Dkt. Nos. 94-1 to -99.)  Yet, there are no witness

declarations authenticating these materials or any specific representations about which portions

of each of these exhibits Plaintiffs believe are material.  "District courts deciding motions for

summary judgment should 'consider only evidence that would be admissible at trial.'"  *Baisley v.

Slade Indus., Inc.*, No. 22-CV-3791, 2024 WL 3012568, at *9 (S.D.N.Y. June 13, 2024) (quoting

*Latimer*, 2023 WL 6795495, at *3); *see also* Local Rule 56.1(d) (requiring that each paragraph in

both the movant and the non-movant's Rule 56.1 Statements "be followed by citation to

evidence which would be admissible").  "Authenticity is a condition precedent to admissibility."

*Platt v. Michaan*, 695 F. Supp. 3d 420, 437 (S.D.N.Y. 2023) (citing *United States v. Dhinsa*, 243

F.3d 635, 658 (2d Cir. 2001)).  "To satisfy the requirement of authenticating . . . an item of

evidence, the proponent must produce evidence sufficient to support a finding that the item is

what the proponent claims it is."  Fed. R. Evid. 901(a).  The authenticity requirement in the

Federal Rules of Evidence can be satisfied by, among other things, the testimony by declaration

of a witness with the requisite knowledge that "an item is what it is claimed to be."  Fed. R. Evid.

901(b)(1).  There are no such declarations here.  On this record, "the Court has little trouble in

concluding that Plaintiff[s] [have] failed to authenticate [their proffered evidence]."  *Baisley*,

2024 WL 3012568, at *10.  Plaintiffs also make numerous vague citations, either without

pincites or quotes, to their exhibits.  (*See, e.g.*, Pls' 56.1 Resp. ¶¶ 1, 3, 7, 8, 11, 12, 18, 39.)

Vague citations like these "defeat the purpose of Local Rule 56.1, which was instituted, in part,

to obviate burdening the courts with the onerous task of hunting through voluminous records for

evidence."  *Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*, No. 17-CV-8796, 2024 WL

3520231, at *1 (S.D.N.Y. July 24, 2024) (alteration adopted) (citation and internal quotation

marks omitted) (collecting cases); *see also Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 99 n.9 (S.D.N.Y. 2023) (noting that, pursuant to Local Rule 56.1, 56.1 statements "must be supported by citations to *specific evidence* of the kind required by Fed. R. Civ. P. 56(c)" (emphasis added) (quoting Pre-2024 Comm. Note to Local Civil Rule 56.1)).

Moreover, "evidence and statements that would be inadmissible at trial, such as inadmissible hearsay, cannot be used to support or oppose summary judgment." *Kozak v. CSX Transp., Inc.*, No. 20-CV-184, 2023 WL 2955851, at *6 (W.D.N.Y. Apr. 14, 2023) (citing *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004)); *see also Presbyterian Church of Sudan*, 582 F.3d at 264 ("[O]nly admissible evidence need by considered by the trial court in ruling on a motion for summary judgment." (citation and internal quotation marks omitted)). Plaintiffs' 99 exhibits are clearly introduced for the truth of information contained within, rendering them hearsay. *See* Fed. R. Evid. 801(c). Plaintiffs have not argued that any hearsay exception applies; rather, they contend that the information contained in their briefing and the exhibits are legislative facts that are not subject to the Federal Rules of Evidence. (*See, e.g.*, Pls' 56.1 at 1 n.1.) The Court will not consider such purported legislative facts that are mired in evidentiary issues, *see Or. Firearms Federation*, 682 F. Supp. 3d at 886 n.2 ("The legislative fact exhibits offered by Plaintiffs address factual questions that this Court must answer, including the commonality of [the firearms at issue], their use by ordinary citizens, and the relevancy of certain historical firearms regulations."), and is "not obliged to sift [Plaintiffs' 1,400-plus pages] for evidence . . . ," *Bruen*, 597 U.S. at 60.

Finally, even if the materials generally relied upon by Plaintiffs, or some portion of them, could be considered as admissible, they hardly put the fact disputes raised by Defendants through their own admissible exhibits beyond disputed. Whatever may be said of Plaintiffs' critique of

Defendants' experts and their supporting materials, their critique goes only to the weight of that evidence, not its admissibility. *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 381 (S.D.N.Y. 2023) (finding that plaintiff's argument that "some of [the expert's] contentions are themselves contradictory or unsupported . . . go to weight and not admissibility"); *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17-CV-7636, 2022 WL 902465, at *16 (S.D.N.Y. Mar. 28, 2022) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (quoting *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 670 (E.D.N.Y. 2013))); *see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 134 (2d Cir. 2006) ("To the extent that there are gaps or inconsistencies in [expert] testimony, those issues go to the weight of the evidence, not to its admissibility." (internal quotation marks omitted)).  In considering Plaintiffs' Motion, the Court is to construe the facts in a light favorable to Defendants as the non-movant and, in doing that, it cannot be said that there are no facts disputes.  *See Torcivia*, 17 F.4th at 354 (holding that, on summary judgment, the district court "must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor").

Thus, because they have relied on inadmissible evidence and otherwise have not complied fully with Rule 56.1, Plaintiffs have failed to carry their burden under *Bruen*.  *See Lamont*, 685 F. Supp. 3d at 89 ("*Bruen* and *Heller* make clear that Plaintiffs have the burden of making the initial showing that they are seeking to possess or carry firearms that are in common use today for self-defense and are typically possessed by law-abiding citizens for that purpose."). This does not mean, however, that there is no genuine dispute of material fact as to *Bruen* steps

one and two, as Defendants' Motion yet remains.  But Plaintiffs' loss does not entitle Defendants

to victory.

The leading treatise on federal practice notes that,

in situations in which the moving party seems to have discharged its burden of
demonstrating that no genuine issue of fact exists, the court retains some discretion
to deny a Rule 56 motion.  This is appropriate since even though the summary
judgment standard appears to have been met, the court should have the freedom to
allow the case to continue when it has any doubt as to the wisdom of terminating
the action prior to a full trial. . . . Judicial discretion also comes into play in
evaluating the material that has been made available to the court to resolve the legal
issues presented by the action. . . .  [A]lthough the general rule is that difficult legal
issues do not preclude summary judgment, it also has been held that difficult or
complicated legal issues should not be adjudicated upon an inadequate record.  As
a result, an appraisal of the legal issues may lead a court to exercise its discretion
and deny summary judgment in order to obtain the fuller factual foundation
afforded by a plenary trial.

10A Fed. Prac. & Proc. Civ. § 2728 (4th ed.)  The Court finds itself in the position of deciding

Defendants' Motion on an inadequate record that, by dint of Plaintiffs' failure to comply, as

opposed to an inability to comply, with the rules of evidence and civil procedure, does not

"adequately clarif[y] the complex . . . issues" that are present in this Action.  *Am. Mfrs. Mut. Ins.*

*Co. v. Am. Broad.-Paramount Theatres, Inc.*, 388 F.2d 272, 280 (2d Cir. 1967).  The Supreme

Court has noted that it is within a court's discretion to "deny summary judgment in a case where

there is reason to believe that the better course would be to proceed to a full trial." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249

(1948)).  The Court concludes that "this is one of those [rare] 'instances where summary

judgment is too blunt a weapon with which to win the day, particularly where so many

complicated issues of fact must be resolved in order to deal adequately with difficult questions of

law which remain in the case.'" *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 598 (S.D.N.Y.

1978) (quoting *Miller v. General Outdoor Advert. Co.*, 337 F.2d 944, 948 (2d Cir. 1964));

*Cortland Racquet Club v. Oy Saunatec, Ltd.*, No. 96-CV-1671, 2003 WL 1108740, at *5

(S.D.N.Y. Mar. 12, 2003) (same).  Accordingly, "the Court is persuaded that considerations of sound judicial administration warrant the denial of" Defendants' Motion.  *Chevron Corp. v. Donziger*, No. 11-CV-691, 2013 WL 4482691, at *5 (S.D.N.Y. Aug. 22, 2013).

*    *    *

It is almost three years since the Supreme Court "set out a new 'test rooted in the Second Amendment's text, as informed by history.'"  *Antonyuk*, 120 F.4th at 964 (quoting *Bruen*, 597 U.S. at 19)).  In *Bruen*'s wake, "courts, operating in good faith, are struggling at every stage of the *Bruen* inquiry," *United States v. Daniels*, 77 F.4th 337, 358 (5th Cir. 2023) (Higginson, J., concurring), *cert. granted, judgment vacated*, 144 S. Ct. 2707 (2024), and it appears that *Rahimi* has done little to settle the waters, *see United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024) (observing that "[t]he law of the Second Amendment is in flux, and courts . . . are grappling with many difficult questions in the wake of [*Bruen*] and [*Rahimi*]" (citations omitted)).  Indeed, some of the nation's highest jurists have noted the difficulty in applying Second Amendment jurisprudence.  *See Rahimi*, 602 U.S. at 736 (Kavanaugh, J., concurring) (characterizing the Court's decision in *Rahimi* as noting that "Second Amendment jurisprudence is still in the relatively early innings" and that "[d]eciding constitutional cases in a still-developing area of this Court's jurisprudence can sometimes be difficult"); *id.* at 739 (Barrett, J., concurring) (noting that "[c]ourts have struggled with th[e] use of history in the wake of *Bruen*"); *id.* at 741 (Jackson, J., concurring) (characterizing *Rahimi* as "highlight[ing] the apparent difficulty by judges on the ground" in "applying [*Bruen*'s] history-and-tradition test").  Against this background, the Court declines to dispense with this Action on what amounts to an insufficiently opposed motion for summary judgment.

23

<u>III.  Conclusion</u>

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment and

Defendants' Cross-Motion for Summary Judgment are denied.  The Clerk of the Court is

respectfully directed to terminate the pending Motions.  (Dkt. Nos. 71, 78.)  A telephonic status

conference is hereby scheduled for April 1, 2025, at 11:00 AM.

SO ORDERED.

Dated:    March 25, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge